UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

THOMAS CANGEMI and JODI CANGEMI,
MARIANN COLEMAN, FRANCIS J. DEVITO and
LYNN R. DEVITO, LEON KIRCIK and ELIZABETH
KIRCIK, CAROL C. LANG and TERRY S.
BIENSTOCK, DANIEL LIVINGSTON and VICTORIA
LIVINGSTON, ROBIN RACANELLI, JAMES E.
RITTERHOFF and GALE H. RITTERHOFF, ELSIE V.
THOMPSON TRUST, JOHN TOMITZ, and THELMA
WEINBERG TRUSTEE OF THE THELMA
WEINBERG REVOCABLE LIVING TRUST ,

                              12-cv-03989 (JS)(WDW)

                    Plaintiffs,

                              AMENDED COMPLAINT and
                              JURY DEMAND

        -against-

THE UNITED STATES OF AMERICA, THE U.S.
ARMY CORPS OF ENGINEERS, COL. JOHN R.
BOULE II, individually and in his official capacity,
THE TOWN OF EAST HAMPTON, WILLIAM J.
WILKINSON, individually and in his official capacity,
COUNTY OF SUFFOLK, THE STATE OF NEW
YORK, JOE MARTENS, Commissioner of the NEW
YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION, and CESAR
A. PERALES, Secretary of the NEW YORK STATE
DEPARTMENT OF STATE,

                    Defendants.

------------------------------------------------------------------x

        Plaintiffs THOMAS CANGEMI and JODI CANGEMI, MARIANN COLEMAN,

FRANCIS J. DEVITO and LYNN R. DEVITO, LEON KIRCIK and ELIZABETH KIRCIK,

CAROL C. LANG and TERRY S. BIENSTOCK, DANIEL LIVINGSTON and VICTORIA

LIVINGSTON, ROBIN RACANELLI, JAMES E. RITTERHOFF and GALE H.

RITTERHOFF, ELSIE V. THOMPSON TRUST, JOHN TOMOITZ, and THELMA

WEINBERG, Trustee of the THELMA WEINBERG REVOCABLE LIVING TRUST

1

(collectively hereinafter, "Plaintiffs"), by their attorneys, Sinnreich Kosakoff & Messina, LLP, for their Complaint herein, allege as follows:

<u>**Nature of the Action**</u>

1.      The purpose of this action is to redress the catastrophic and continuing damage to plaintiffs' real property and other legally protected interests caused by the Lake Montauk Harbor Jetties (the "Jetties").  The Jetties are owned by defendant Town of East Hampton and were constructed and have been maintained by defendant United States Army Corps of Engineers, (the "Corps of Engineers") pursuant to a permanent easement granted by the Town, with the active aid and assistance of all other defendants.

2.      Plaintiffs are the owners of waterfront real property located on Soundview Drive and Captain Kidd's Path in Montauk, New York along that reach of shoreline situated west of the Jetties and extending westerly to Culloden Point.

3.      Plaintiffs seek recovery for loss of real property, injury to real and personal property, loss of the quiet use and enjoyment of property, diminution of property value, and other damages caused by the negligent acts, omissions, and failures of the defendants herein, by the establishment and maintenance of a public and private nuisance, and by constitutional deprivations and other violations of law.

4.      Defendants, and each of them, have long been on notice and do not dispute the fact that the Jetties have created and continuously cause an interruption of the natural east-to-west littoral movement of sand along the beaches in the vicinity of the Jetties, such that the lands to the west of the Jetties, including plaintiffs' littoral properties, have experienced persistent and substantial scouring and shoreline recession.  In many cases, the plaintiffs' properties have been entirely stripped of their invaluable beach frontage.

5.    The ongoing and continuing scouring and recession of the down drift beaches caused by the Jetties has dramatically increased the vulnerability of plaintiffs' properties to storm damage, causing further substantial loss of beachfront and physical injury and damage to plaintiffs' homes and ancillary structures and improvements, including beach dunes, vegetation, bulkheads and other natural and man-made structures, as well as to the adjacent public beaches and to the entire reach of public foreshore extending from the Jetties to Culloden Point.

6.    It is not disputed that the Jetties are the cause of these ongoing and worsening problems.  The Corps of Engineers has publicly acknowledged that, as a direct and proximate result of the construction and maintenance of the Jetties, the shoreline of plaintiffs' properties was already in "critical condition" over  a decade ago. *See Shallow Draft Navigation Study For Lake Montauk Harbor, Long Island, New York, Reconnaissance Report,* United States Army Corps of Engineers, New York Division, May, 1995.

7.    Similarly, the Town has repeatedly recognized the Jetties as being responsible for the dramatic loss of property west of the Jetties.  For example, the Town's Planning Director wrote to the Corps of Engineers to report that "the Lake Montauk Harbor jetties have caused severe downdrift scouring on the beaches west of the jetties along Sound View Drive" and subsequently described the erosion caused by the Jetties as a "chronic problem."  Indeed, the Town's former Environmental Protection Director, Larry Penny, stated publicly in January 2008 that "[o]n the west side of the jetty, which has houses on Soundview Avenue [*sic*], the beach has disappeared and the dunes are being eaten away at a great rate" and predicted, with regrettably accurate foresight, that "a big storm would probably put a few in the ocean."

8.    In light of these undisputed facts, the New York State Supreme Court ruled earlier this year, in a related state court action against the same non-federal governmental defendants

that these circumstances state valid common law claims for public and private nuisance as a matter of New York State law (see paras. 36-39, below).

9.     Notwithstanding these dire and repeated warnings and judicial findings, the defendants have utterly failed, neglected and refused to take any effective action to remedy and abate the ongoing threat to plaintiffs' property and the adjacent public beaches and shoreline resulting from the presence of the Jetties, or to recompense the plaintiffs for their substantial injuries already incurred as a result of defendants' wrongful acts.

10.     In summary, although the "critical" situation created by the Jetties has been studied and acknowledged for years by all levels of government, defendants have utterly neglected and refused to take any meaningful action to permanently address, remedy, resolve and abate the problem. Accordingly, plaintiffs have no other choice than to seek redress in this Court.

## Jurisdiction

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1346(b), and 28 U.S.C. 2671.  The claims herein arise under, inter alia, the Federal Tort Claims Act, 28 U.S.C. 2671 et seq., the Administrative Procedures Act, 5 U.S.C. § 702, and 42 U.S.C. § 1983.

12.     The sole claim against the State defendants is for prospective injunctive and declaratory relief.  Plaintiffs do not seek monetary damages from the State defendants.

## Venue

13.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(e)(1), and § 1402(b).

## Parties

14.    Plaintiffs Thomas Cangemi and Jodi Cangemi are the owners as joint tenants in the entirety of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 98 Soundview Drive, Montauk, New York 11954 (the "Cangemi parcel").

15.    Plaintiff Mariann Coleman is the owner of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 132 Soundview Drive, Montauk, New York 11954 (the "Coleman parcel").

16.    Plaintiffs Francis J. DeVito and Lynn R. DeVito are the owners as tenants in common of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 16 Captain Kidd's Path, Montauk, New York 11954 (the "DeVito parcel").

17.    Plaintiffs Leon Kircik and Elizabeth Kircik are the owners as joint tenants in the entirety of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 12 Captain Kidd's Path, Montauk, New York 11954 (the "Kircik parcel").

18.    Plaintiffs Carol C. Lang and Terry S. Bienstock are the owners as joint tenants in the entirety of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 140 Soundview Drive, Montauk, New York 11954 (the "Lang parcel").

19.    Plaintiffs Daniel Livingston and Victoria Livingston are the owners as joint tenants in the entirety of that certain parcel of littoral real property located in the Town of East

Hampton, New York having a street address of 24 Captain Kidd's Path, Montauk, New York 11954 (the "Livingston parcel").

20.     Plaintiff Robin Racanelli is the owner of that certain parcel of real property located in the Town of East Hampton, New York having a street address of 10 Captain Kidd's Path, Montauk, New York 11954 (the "Racanelli parcel"), and maintains a residence located in New York County, New York.

21.     Plaintiffs James E. Ritterhoff and Gale H. Ritterhoff are the owners as joint tenants in the entirety of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 32 Captain Kidd's Path, Montauk, New York 11954 (the "Ritterhoff parcel").

22.     Plaintiff John Tomitz is the owner of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 20 Captain Kidd's Path, Montauk, New York 11954 (the "Tomitz parcel").

23.     Plaintiff Elsie V. Thompson Trust is the owner of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 124 Soundview Drive, Montauk, New York 11954 (the "Thompson parcel").

24.     Plaintiff Thelma Weinberg, Trustee of the Thelma Weinberg Revocable Living Trust is the owner of that certain parcel of littoral real property located in the Town of East Hampton, New York having a street address of 28 Captain Kidd's Path, Montauk, New York 11954 (the "Weinberg parcel").

25.     The United States of America is a sovereign nation existing pursuant to and operating under the Constitution of the United States.

26.     The United States Army Corps of Engineers is an agency of the United States of America existing and operating within the Department of the Army.  The New York District of the United States Army Corps of Engineers is located at 26 Federal Plaza, New York, New York.

27.     Col. John R. Boule II is the Commander of the New York District of the United States Army Corps of Engineer, and is being sued in his individual and official capacities.

28.     The Town of East Hampton (the "Town")  is a municipal corporation duly organized and existing under the laws of the State of New York with executive offices located at 159 Pantigo Road, East Hampton, New York 11937.

29.     William J. Wilkinson is Town Supervisor of the Town of East Hampton, and is being sued in his individual and official capacities.

30.     The County of Suffolk ("Suffolk County") is a municipal corporation duly organized and existing under the laws of the State of New York with executive offices located at the H. Lee Dennison Building, 100 Veterans Memorial Highway, Hauppauge, New York 11788.

31.     The State of New York ("New York State") is a sovereign state of the United States of America, with executive office located at the State Capital Building, Albany, New York 12224.

32.     Joe Martens is the Commissioner of the New York State Department of Environmental Conservation ("NYSDEC"), an agency of the State of New York, with executive offices located at 50 Wolf Road, Albany, New York 12232.

33.     Cesar A. Perales is the Secretary of the New York State Department of State (Department of State"), an agency of the State of New York, with executive offices located at One Commerce Plaza, 99 Washington Avenue, Albany, New York 12231 and at 123 William Street, New York, New York 10038.

**Administrative Claims Filed**

34.     Pursuant to and in accordance and compliance with 28 U.S.C. § 2675, the plaintiffs, each and all, presented their respective claims for damages to the Corps of Engineers in writing on the following dates:

| | |
|---|---|
| Bienstock: | April 19, 2011 |
| Cangemi: | June 1, 2011 |
| Coleman: | April 19, 2011 |
| DeVito: | May 17, 2011 |
| Kircik: | April 28, 2011 |
| Livingston: | June 14, 2011 |
| Racanelli: | May 13, 2011 |
| Ritterhoff: | May 24, 2011 |
| Tomitz: | June 1, 2011 |
| Thompson: | April 19, 2011 |
| Weinberg: | April 26, 2011 |

35.     More than six months have elapsed since the filing of each of the plaintiffs' claims and, to date, the Corps of Engineers has failed to make a final disposition as to any of the plaintiffs' claims.

36.     Plaintiffs, each and all, have caused a Verified Notice of Claim to be served upon the Town for all claims, if any, for which a Notice of Claim is required pursuant to Section 50-i of the Town Law, and thirty (30) days have elapsed since the service of such notice and the adjustment or payment thereof has been neglected or refused.

**Previous State Court Action**

37.     On or about January 24, 2011, plaintiffs, among other parties, commenced an action in the Supreme Court of the State of New York, County of Suffolk, under Index No. 2825/2011 against the Town, the County, and the State, alleging claims for public and private

nuisance and deprivation of their federally-protected constitutional and civil rights, among other claims (the "State Court Action").

38. The Town moved to dismiss the Amended Complaint in the State Court Action on several grounds including that the Corps of Engineers is a necessary party, that the Complaint, as a whole, failed to state a claim upon which relief could be granted, and that certain claims were barred by the statute of limitations.

39. By order dated February 17, 2012, the Supreme Court (Pitts, J.) granted the Town's motion solely upon a finding that the Corps of Engineers is a necessary party.

40. However, the Supreme Court declined to dismiss any of plaintiffs' causes of action on the merits, and affirmatively held that the plaintiffs had "stated causes of action for continuing public and private nuisance." The Supreme Court further affirmatively held that plaintiffs properly plead a continuing nuisance and therefore that the nuisance claims were not barred by the applicable statutes of limitations. A copy of Justice Pitts' decision is annexed hereto as exhibit "A."

## FACTUAL ALLEGATIONS

### The Jetties

41. Lake Montauk Harbor opens to the north into Block Island Sound through an inlet stabilized by two jetties. Although smaller versions of the jetties were originally constructed by private interests in the 1920's, by the mid-1930's the original jetties had fallen into a state of severe disrepair and neglect.

42. In or about 1939, at the specific initiation and urging of the Town as "local interest," the Corps of Engineers recommended to Congress approval and funding of a project for the "repair and extension shoreward" of the Jetties. After receiving Congressional approval,

and subject to the intervening exigencies of World War II, the Corps of Engineers, with the active assistance and cooperation of the Town, redesigned, enlarged and reconstructed the Jetties, lengthening the Jetties from their original lengths of approximately 700 feet (west jetty) and 750 feet (east jetty), to their present lengths of 981 feet and 1100 feet, respectively; the height of the Jetties was raised to a uniform design height of 8 feet above mean low water; and the Jetties were restored and repaired, and the gaps in the armor plugged to prevent any further passage of sand through either Jetty.

*The Nature of Plaintiffs' Ownership*

43.     All of the plaintiffs' parcels of real property that are the subject of this lawsuit, with the exception of the Racanelli parcel, are bounded on the north by reference to the mean high water line of Block Island Sound.  The Racanelli parcel has a deeded right-of-way to the beach.

44.     As littoral owners, plaintiffs possess and retain title to all pre-existing uplands defined as lying within the original legal boundaries of their respective parcels, which have been submerged as a result of the Jetties and the conditions created by them.  Plaintiffs thus also retain the common law right to the restoration of said previously upland portions of their property, and to retain private ownership of the restored beach up the extent of their original private ownership.

45.     In the absence of such beach replenishment and restoration, as of the present time, plaintiffs have lost the use and enjoyment of the defining feature—beach—of their valuable waterfront homes and have each lost a substantial area of upland property which has become submerged as a direct result of the defendants' wrongful acts.

46.     Plaintiffs, deprived by the defendants' Jetties of the natural barriers and protections provided by the pre-existing dunes, uplands and submerged sand bars and shoals, are

subjected to the constant threat of further losses from storm events and an advancing Block Island Sound.

*The Town' Ownership of the Jetties*

47.     The Town is the owner in fee of the Montauk Jetties, as well as the underwater lands upon which the Jetties are situate.

48.     On or about February 17, 1941, in compliance with the Corps of Engineers' conditions for approval of the project to enlarge and restore the Jetties, the Town obtained a conveyance of title to and over the Montauk Jetties and the land under Lake Montauk Harbor by deed duly recorded in the Office of the Suffolk County Clerk on May 28, 1941, at Deed Book 2165, page 38.

49.     On or about August 15, 1942, the Town, while retaining title, conveyed to the federal government by deed duly recorded in the Office of the Suffolk County Clerk on March 9, 1943, at Deed Book 2275, page 241 (subsequently corrected by a correction deed duly recorded on July 25, 1962) a "permanent easement" over said underwater lands and structures, including the Montauk Jetties.

50.     The Town expressly retained, and still retains, legal title to said property, as well as a reversionary interest in any portion of said property not required by the federal government for purposes stated in the deed of conveyance.

51.     The Jetties, as redesigned, reconstructed and enlarged by the Corps of Engineers, remain the property of defendant Town, and continue to be maintained pursuant to the easement and license for their reconstruction, repair and maintenance granted by the Town to the United States.

52.     Further pursuant to express agreement entered into with the Corps of Engineers, the Town assured the United States of America that the Town would: "Hold and save the United States free from claims for damages that may occur from the construction and maintenance" of the improvements authorized by the Rivers and Harbors Act.

53.     Upon information and belief, the Town has been in frequent communication with the Corps of Engineers and the State DEC, including recently, regarding the negative environmental impact of the Jetties, including specifically the resultant scouring of beaches and private properties to the west thereof.

*The Army Corps of Engineers' Easement, Control and Federal Navigation Project*

54.     The Corps of Engineers holds a permanent easement over the Jetties, the underwater lands upon which they sit, and the navigation channel that connects Lake Montauk Harbor to Block Island Sound.

55.     Pursuant to the Rivers and Harbors Act of March 2, 1945, the Corps of Engineers is authorized and directed to perform periodic dredging in order to maintain a navigation channel for Lake Montauk Harbor.

56.     The existing Federal project at Lake Montauk Harbor provides for a channel 12 feet deep at MLW and 150 feet wide, extending about .7 miles from the 12 foot contour in Block Island Sound to the same depth in the yacht basin east of Star Island; a boat basin 10 feet deep, 400 feet wide, and 900 feet long, located northwest of Star Island; east and west jetties and; the addition of sport fishing facilities on top of both jetties.

57.     Upon information and belief, the periodic and ongoing dredging and other navigational improvements performed by the federal government pursuant to the Federal project are performed pursuant to the license, permits, consent, acquiescence and authority granted by

the Town, and with the participation and acquiescence of the State defendants in planning said dredging and maintenance operations, including the placement and disposal of dredge spoils, by the State defendants, pursuant to the New York State's obligations and authority under the federal Coastal Zone Management Act, 16 U. S. C. § 1451 et. seq.

58.     Upon information and belief, the State and County has at all times and continues to provide monetary or other forms of direct assistance in connection with the past and ongoing maintenance of the Jetties and harbor channel, including certain dredging and other shoreline activities.  The State and County have, however, failed and continue to fail to take effective action to abate the erosion problem caused by Jetties.

59.     The State is obligated to coordinate its handling of the well known shoreline issues complained of herein with the Corps of Engineers pursuant to the Coastal Zone Management Act but has failed to do so in a manner that provides any effective or responsible protection of the subject shoreline from the erosion caused by the Jetties.

60.     The Coastal Zone Management Act was enacted "to preserve, protect, develop, and where possible, to restore or enhance, the resources of the Nation's coastal zone for this and succeeding generations."

61.     The Coastal Zone management Act recognizes that "Because of their proximity to and reliance upon the ocean and its resources, the coastal states have substantial and significant interests in the protection, management, and development of the resources of the exclusive economic zone that can only be served by the active participation of coastal states in all Federal programs affecting such resources and, wherever appropriate, by the development of state ocean resource plans as part of their federally approved coastal zone management programs."

62.     The New York State Department of State has reviewed the determinations of the Corps of Engineers regarding the consistency of the Corps' actions and planned and ongoing actions concerning the Jetties, the channel, dredging of the channel, and the placement of sand upon beaches outside of the Jetties and has actively participated in the planning and design of such projects.  The State has concurred with the Corps' consistency determinations and, upon information and belief, in the absence of the injunctive relief sought herein, will continue to do so, notwithstanding that such endorsement and perpetuation of the status quo violates federal and state obligations to protect the shoreline and mitigate against known threats thereto.

63.     By participating in the planning and design of such projects, and by concurring with the Corps of Engineers, the State has acquiesced to and has effectively approved, and continues to endorse, the very acts and omissions of the Corps, as complained of herein, that have and continue to destroy and damage the public and private beaches and other natural resources which are the subject of this action.

64.     Upon information and belief, the State has also coordinated with local government including the Town and has thereby become further aware of and responsible for ongoing damage to the westerly shoreline caused by the Jetties.

65.     The State has and continues to violate applicable law in failing to protect the shoreline.

66.     While all of the defendants have paid lip service to the problem, none of the defendants, individually or collectively, have been willing to do what must be done to fix the problem.

### The Disastrous Impact of the Jetties

67.     Upon information and belief, the natural littoral direction of the movement of sand (the "littoral drift") along the beaches in the proximity of the Jetties, and in particular in the reach of beach adjacent to plaintiffs' properties, is east-to-west.

68.     Upon information and belief, by virtue and as a proximate result of the design, reconstruction, extension, maintenance and presence of the Jetties, the natural east-to-west littoral movement of the sand has been and is interrupted, with the following adverse results.

69.     Sand collects and builds up on the east side of the easterly jetty, with the result that the reaches of beach to the east of the eastern jetty, including the Town and County-owned beaches east of the eastern jetty, including the Town beach known as Gin Beach, and the County's Theodore Roosevelt Park, are benefited and have been enlarged.

70.     Sand that, but for the presence of the Jetties, would migrate from east to west and be deposited upon the beaches west of the western jetty, including upon plaintiffs' properties, is prevented by the design, reconstruction, extension, maintenance and continued presence of the Jetties from reaching said westerly beaches.  As a result, said westerly beaches are scoured and starved for sand and do not receive the natural and ongoing sand replenishment that would otherwise be available due to the natural littoral drift to replace sand lost via storms and other natural forces.

71.     The natural offshore sand bars that previously provided a buffer to and protection against beach erosion and storm damage to the beaches westerly of the Jetties have been damaged or destroyed, thus further exposing the beaches to loss and damage as a result of repeated acts of storm-caused avulsion.

72.     As a result of these circumstances, the width of beach in the reaches westerly of the western jetty, including the property of plaintiffs, has receded and diminished, resulting in substantial losses of plaintiffs' valuable waterfront property and rendering plaintiffs' property more vulnerable to storm damage, and resulting in substantial damage and injury to the homes and other structures and improvements of plaintiffs.

73.     Further as a result of these circumstances, the public beach and other public facilities and resources immediately to the west of the western jetty, as well as the public foreshore along the entire reach of beach from the western jetty to Culloden Point, have also been damaged, deteriorated or destroyed.

74.     The Corps of Engineers and the Town have repeatedly admitted, acknowledged and conceded that the Jetties have caused and continue to cause severe shoreline recession in the areas west of the Jetties.

75.     Upon information and belief, the County has admitted, acknowledged and conceded that the Jetties have caused and continue to cause severe shoreline recession in the areas west of the Jetties.

76.     Upon information and belief, the State has admitted, acknowledged and conceded that the Jetties have caused and continue to cause severe shoreline recession in the areas west of the Jetties.

77.     As a result of the detrimental effect of the Jetties on the westerly shoreline, the plaintiffs have lost substantial portions of the upland portions of their properties and the value, use, possession and enjoyment thereof.

78.     As a result of the detrimental effect of the Jetties on the westerly shoreline, the plaintiffs have suffered millions of dollars in damages and loss and injury to property.

79.    The detrimental effect of the Jetties and the shoreline recession caused by their presence affects the public at-large in addition to owners of private property: the public beach to the immediate west of the west jetty has largely disappeared, having receded to the roadway. The public roadway and other public facilities have been damaged, and the public's access to and use of the foreshore has been correspondingly compromised and diminished.

**Defendants' Failure to Take Action to Abate and Mitigate the Impacts of the Jetties**

80.    Although the negative impacts of the Jetties upon plaintiffs' property has been known to and acknowledged by defendants for many years, and notwithstanding frequent, repeated and persistent public and private pleas by governmental officials and agencies and private individuals and organizations to take action to abate and mitigate these impacts, defendants have failed to take effective action and, by their inaction, have further contributed to and exacerbated these destructive impacts.

81.    Defendants have knowingly disregarded the ongoing and worsening conditions created by their own nuisance, negligence and omissions, and have failed to take timely and effective actions to resolve and/or mitigate the damage to plaintiffs' property caused by such negligence and the nuisance they perpetuate.

82.    Section 111 of the Rivers and Harbors Act of 1968 authorizes the Secretary of the Army "to investigate, study, and construct projects for the prevention or mitigation of shore damages attributable to Federal navigation works."

83.    Although the Federal project is concerned with the maintenance of the navigability of the jetty-lined channel into the harbor, the Corps of Engineers has acknowledged the detrimental effect of the Jetties on the properties to the west and has incorporated those concerns into its administration of the Federal project.  Notwithstanding this recognition, the

Corps of Engineers' actual response to this known harm has been minimal and ineffectual—consisting solely of endless "studies" without action and the occasional depositing of insignificant amounts of dredge spoils to the west of the west jetty.

84.     The defendants have become aware of, studied, identified and acknowledged the detrimental effects of the Jetties.  Indeed, in its own 1995 Reconnaissance Study, the Corps of Engineers identified and described "severe erosion downdrift of the inlet."  It described the area west of the Jetties as "critically eroding" and observed that, notwithstanding the occasional placement of dredged materials on the affected shoreline, the western shoreline was receding at a substantial annual rate (then 5.7 feet or 8000 cubic yards per year).  The shoreline, as the Corps of Engineers acknowledged in 1995, was "in critical condition" and experienced "consistent erosion and shoreline recession due to the interruption of the natural sediment supply caused by the inlet jetties."

85.     In fact, the Corps of Engineers recognized and predicted in 1995 that, absent ameliorative actions, "the western shoreline will continue to recede."  The erosion and recession—i.e., the loss of sand, beach and dunes, as well as the depletion of offshore sand bars—caused by the Corps of Engineers has removed natural protective barriers and, as a result, the plaintiffs have suffered property loss and damage on a massive scale and are subject to risk of catastrophic losses from storm events.

86.     Despite their own acute knowledge of both the cause and effect of these harmful circumstances, and their responsibility for same, the defendants have neglected and failed to meaningfully address the situation or to abate, mitigate or discontinue the known causes thereof.

87.     The minimal, initial and ineffectual steps taken to date by the defendants have served only to induce the plaintiffs to rely upon a promised course of remedial action that has never come to fruition.

88.     The defendants' acts and omissions have caused, contributed to, and continued a nuisance that negatively affects the plaintiffs' property.

89.     Plaintiffs have reasonably relied in good faith upon the promises, representations and assurances of defendants of their intention to address and resolve the problem presented by the Jetties, to their detriment.

90.     The interference with plaintiffs' use and enjoyment of their property caused by the Jetties is substantial: plaintiffs have lost significant portions of their upland property and thousands of cubic yards of sand; their land is literally underwater and thus useless; they have lost the invaluable amenity of a sandy beach; they have been forced to install at great expense bulkheads and/or other erosion control measures that detract from the functionality and aesthetics of the properties.

91.     The defendants' interference is intentional, negligent, and unreasonable.

92.     The defendants' actions and inactions have been taken for the purpose of causing the conditions about which the plaintiffs complain; to wit, the blockage of the natural littoral sand flow.

93.     The defendants' actions and inactions have been engaged in with full knowledge of the detrimental consequences thereof.

94.     The interference is a direct result of the defendants' acts and failures to act.

95.     Plaintiffs are entitled to an award of their attorneys fees and expenses pursuant to 42 U.S.C.§ 1988.

## COUNT I
### (Negligence – Federal and Town Defendants)

96.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 86 above, as though fully set forth herein.

97.     Defendants owe, and have owed, plaintiffs a duty of care under common and statutory law to not create an unreasonable risk of harm, to not create a dangerous condition, to protect and mitigate against known causes of harm, to mitigate, protect against and correct damaging conditions they have created, and to appropriately address conditions that they have assumed responsibility for, exerted control over, or otherwise expressly or implicitly gave assurances that they were or would be addressing.

98.     Defendants have breached their duties through their acts and omissions.

99.     As a direct and proximate result of the defendants' negligent acts and omissions, Plaintiffs have suffered damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars.

## COUNT II
### (Private Nuisance – Federal and Town Defendants)

100.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 90 above, as though fully set forth herein.

101.    The Town is the owner of the Jetties and of the underwater real property upon which the Jetties were constructed and are situated.  The Town is also the owner of the land under Lake Montauk, including the navigable channel.

102.    The Corps of Engineers holds an easement over the Jetties

103.    The Jetties substantially and unreasonably interfere with and adversely affect plaintiffs' rights to the quiet and peaceful enjoyment of their property.

20

104.    The defendants' activities have been negligent unreasonable under the totality of the circumstances.

105.    The aforementioned actions of the defendants are continuing.

106.    The aforementioned actions of the defendants have already caused substantial injury and loss to plaintiffs' property and will continue to cause substantial injury and loss to the plaintiffs unless discontinued and abated.

107.    By reason of the foregoing, plaintiffs have suffered and will continue to suffer special damages for loss of property and the reduced value of their real property, and for damages and injury to their property, in amounts to be determined at trial but presently estimated to aggregate an amount in excess of $25,000,000, and plaintiffs are entitled to entry of a preliminary and permanent injunction ordering the defendants to abate, mitigate and discontinue the public nuisance.

## COUNT III
### (Public Nuisance – Federal and Town Defendants)

108.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 98 above, as though fully set forth herein.

109.    The design, construction, maintenance and continued presence of the Jetties constitutes, and has resulted in, an absolute public nuisance.

110.    The design, construction, maintenance and continued presence of the Jetties is the result of the knowing and intentional actions of the Town and Corps of Engineers.

111.    The absolute public nuisance created by the design, construction, maintenance and continuing presence of the Jetties has caused, and is continuing to cause, particular injury to plaintiffs as a result of their unique location as littoral property owners immediately to the west and down drift of the Jetties.

112.    By reason of the foregoing, plaintiffs have suffered and will continue to suffer special damages for loss of property and the reduced value of their real property, and for damages and injury to their property, in amounts to be determined at trial but presently estimated to aggregate an amount in excess of $25,000,000, and plaintiffs are entitled to entry of a preliminary and permanent injunction ordering the defendants to abate, mitigate and discontinue the public nuisance.

### COUNT IV
### (Unjust Enrichment – Town and County Defendants)

113.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 103 above, as though fully set forth herein.

114.    The Town and County have  been unjustly enriched at the expense of plaintiffs by virtue of the taking, appropriation, sequestration and withholding for their own use of sand belonging to plaintiffs.

115.    The Town has been further unjustly enriched at the expense of plaintiffs by virtue of the tax receipts and other direct and indirect Town revenues and economic benefits realized by the Town as a result of the improvements on and surrounding Lake Montauk.

116.    By reason of the foregoing, plaintiffs are entitled to judgment for the monetary value of the unjust benefit and enrichment obtained by the defendants at plaintiffs' expense.

117.    Plaintiffs have no adequate remedy at law.

### COUNT V
### (Denial of Due Process – Federal and Town Defendants)

118.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 108 above, as though fully set forth herein.

119.    Defendants, by their ownership, operation and control of the Jetties, have deprived plaintiffs of their property without due process of law, in violation of the plaintiffs' rights as protected and secured under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (Town).

120.    By reason of the foregoing, plaintiffs have suffered and will continue to suffer damages in amounts to be determined at trial but presently estimated to aggregate an amount in excess of $25,000,000, and plaintiffs are entitled to reimbursement of their reasonable and legitimate attorneys fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

## COUNT VI
## (Denial of Equal Protection – Federal and Town Defendants)

121.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 111 above, as though fully set forth herein.

122.    Plaintiffs are similarly situated to other private waterfront landowners in the Town of East Hampton and in the vicinity of other Federal projects in the United States.

123.    Defendants have without basis treated plaintiffs differently than those similarly situated.

124.    Additionally, while the defendants' acts, omissions, and nuisance complained of herein have significantly damaged plaintiffs' properties and interests, the Town and State, in their proprietary capacity as landowners, benefit from their own negligence and ongoing nuisance as the Jetties have substantially enlarged the uplands east of the Jetties.

125.    Defendants have thereby denied plaintiffs the equal protection of the laws, as protected and secured under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (Town).

126.    By reason of the foregoing, plaintiffs have suffered and will continue to suffer damages in amounts to be determined at trial but presently estimated to aggregate an amount in excess of $25,000,000, and plaintiffs are entitled to reimbursement of their reasonable and legitimate attorneys fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

**COUNT VII**
**(<u>Aiding and Abetting – County</u>)**

127.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 117 above, as though fully set forth herein.

128.    Upon information and belief, Suffolk County has, at all relevant times, aided, abetted, supported, cooperated and participated in the design, construction and maintenance of the Jetties and the dredging and maintenance of the navigable channel, and all other wrongful actions of the defendants complained of herein.

129.    Without limiting the generality of the foregoing, upon information and belief, Suffolk County has provided funding and other material support for the continued maintenance of the Jetties and the navigable channel.

130.    By reason of the foregoing, plaintiffs are entitled to entry of a permanent injunction ordering the Suffolk County to abate, mitigate and discontinue the private and public nuisance, and to cease and desist from any further acts aiding or abetting the continued maintenance of said nuisance, and plaintiffs are entitled to monetary damages against Suffolk County to compensate plaintiffs for their economic losses and injury ancillary to the private and public nuisance, in amounts to be determined at trial but presently estimated to aggregate an amount in excess of $25,000,000.

## COUNT VIII
### (Appropriation of Resource – Interference with Property – Federal and Town Defendants)

131.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 125 above, as though fully set forth herein.

132.   Plaintiffs are owners of parcels of real property bounded by Block Island Sound and, as such littoral landowners, have the common law right to the use and benefit of the physical components, i.e., sand, of the natural littoral drift, and to the uninterrupted natural processes that form, define, benefit and preserve the coastal boundary of their respective parcels.

133.   The defendants have intentionally, negligently and unreasonably caused the diversion, detention and retention of sand and other natural resources in the area of the Jetties and the land and beaches east thereof, and the defendants has wrongfully and unreasonably appropriated such resources for themselves and to the detriment of the plaintiffs herein.

134.   The defendants have unreasonably and negligently interfered with the natural shoreline, thereby depriving the downdrift littoral landowners, the plaintiffs herein, of the physical components, i.e., sand, of the natural littoral drift, and have uninterrupted the natural processes that form and define the coastal boundary of their respective parcels.

135.   As a result of the defendants' acts, the plaintiffs have been damaged in an amount to be determined at trial but estimated to be in excess of $25 million dollars.

## COUNT IX
### (Trespass – Federal and Town Defendants)

136.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 130 above, as though fully set forth herein.

137.   The defendants' conduct with respect to the Jetties has been willful or so negligent as to constitute willfulness.

138.     The Jetties have caused the unauthorized entry and acceleration of waters upon the uplands owned by the Plaintiffs and have unlawfully interfered with the Plaintiffs' right of possession.

139.     The defendants own, occupy and control the Jetties and the land upon which they sit.

140.     As a result of the defendants' acts, the plaintiffs have been damaged in an amount to be determined at trial but estimated to be in excess of $25 million dollars.

## COUNT X
### (Federal Takings – Federal and Town Defendants)

141.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 135 above, as though fully set forth herein.

142.     The aforementioned acts and omissions by the defendants have caused the loss of plaintiffs' upland property, deprived the plaintiffs of the use and enjoyment thereof, and otherwise rendered some or all of plaintiffs' property unusable so as to constitute an unlawful taking of property for which plaintiffs are entitled to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution.

143.     By reason of the unlawful taking by the defendants, plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial but believed to be in excess of $25 million dollars.

## COUNT XI
### (State Takings – Federal and Town Defendants)

144.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 138 above, as though fully set forth herein.

145.    The aforementioned acts and omissions by the defendants have caused the loss of plaintiffs' upland property, deprived the plaintiffs of the use and enjoyment thereof, and otherwise rendered some or all of plaintiffs' property unusable so as to constitute an unlawful taking of property for which plaintiffs are entitled to just compensation under Article 1, section 7 of the New York State Constitution.

146.    By reason of the unlawful taking by the defendants, plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial but believed to be in excess of $25 million dollars.

## COUNT XII
### (Judicial Review of Agency Action & Prayer for Injunctive Relief – Federal Defendants)

147.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 141 above, as though fully set forth herein.

148.    Plaintiffs are persons that have suffered legal wrong through the actions and inactions of the Corps of Engineers.

149.    The Corps of Engineers' discharge of its duties in connection with the Federal Navigation project at Lake Montauk Harbor, including its failure to act in the face of well recognized shoreline damage resulting from the project, has been arbitrary, capricious and not in accordance with law.

150.    The Corps of Engineers' acts and failures to act cause and contribute to the maintenance of an ongoing nuisance.

151.    By virtue of the foregoing, plaintiffs are entitled, pursuant to 5 U.S.C. § 701 et seq. to entry of a mandatory permanent injunction against the Corps of Engineers ordering and mandating said defendant to proceed with all necessary actions within its lawful powers and authority necessary and sufficient to abate, mitigate, and permanently remedy and prevent the

further destructive impact of the Jetties on plaintiffs' properties and the public beaches and foreshore, including, without limitation, the funding and implementation of an immediate beach replenishment project sufficient to restore the beach and dune system to its full extent as it existed prior to the Town's acquisition of the Jetties, and implementation of an on-going sand replenishment and bypass program sufficient to maintain the beaches and dunes in said original condition.

## COUNT XIII
### (Mandatory Injunction – All Defendants)

152.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 146 above, as though fully set forth herein.

153.    By virtue of the foregoing, plaintiffs are entitled to entry of a mandatory permanent injunction against defendants, and each of them, ordering and mandating said defendants (a) to discontinue the acts and omissions complained of herein known to have caused and to be continuously causing the active and ongoing destruction of Plaintiffs' property; (b) to proceed with all necessary actions within their lawful powers and authority necessary and sufficient to abate, mitigate, and permanently remedy and prevent the future destructive impact of the Jetties on plaintiffs' properties and the public beaches and foreshore; (c) to implement immediate and such future beach replenishment projects as are sufficient and required to restore the beach and dune system to its full extent as it existed prior to the Town's acquisition of the Jetties, and to maintain an on-going sand replenishment and bypass program sufficient to maintain the beaches and dunes in said original condition.

154.    Plaintiffs have no adequate remedy at law.

## COUNT XIV
### (Declaratory Judgment – All Defendants)

155.    Plaintiffs repeat and re-allege each and every allegation  contained in paragraphs 1 through 149 above , as though fully set forth herein.

156.    Upon information and belief, substantial quantities of sand that has been caused to be eroded from plaintiffs' beaches and the foreshore adjacent to plaintiffs properties by reason of the impact of the Jetties remain naturally stockpiled underwater in shoals and sand bars submerged under the waters of Block Island Sound, including shoals and sand bars under the waters immediately westerly and southwesterly of Culloden Point (hereinafter, the "submerged sand").

157.    All title and ownership of the submerged sand, to the extent that such submerged sands were eroded from the plaintiffs' beaches, continues to vest in plaintiffs.

158.    The submerged sand constitutes a ready source of clean available sand that can be readily utilized for replenishment of plaintiffs' beaches, without any adverse environmental or other adverse consequences.

159.    Plaintiffs have a common law right to replevy the portions of the stockpiled sand taken from plaintiffs as a result of the wrongful actions and inaction of plaintiffs, for use in replenishment of plaintiffs' beaches.

160.    Upon information and belief, defendant State of New York has wrongfully and without just cause prohibited the Corps of Engineers or any other party from utilizing the submerged sand as a source for beach replenishment in the vicinity of plaintiffs properties.

161.    An actual case or controversy exists, within the meaning of 28 U.S.C § 2201 concerning the lawful availability of the submerged sand for use as a source for replenishment of plaintiffs' beaches and the adjacent public beaches.

162.    Plaintiffs have no adequate remedy at law.

163.    Wherefore, plaintiffs are entitled to entry of a declaratory judgment declaring that the submerged sand maybe utilized by the Corps of Engineers for purposes of replenishment of plaintiffs' beaches and the adjacent public beaches, including, without limitation, any such replenishment ordered by this court pursuant to this action.

## JURY DEMAND

Plaintiffs demand trial by jury of all claims triable by jury.

**WHEREFORE,** plaintiffs demand judgment against defendants as follows:

(i)     On Count I hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars;

(ii)    On Count II hereof, entry of a preliminary and permanent injunction ordering the defendants to abate, mitigate and discontinue the public nuisance and damages associated therewith in an amount to be determined at trial but presently estimated to aggregate in excess of $25 million dollars.

(iii)   On Count III hereof, entry of a preliminary and permanent injunction ordering the defendants to abate, mitigate and discontinue the public nuisance and damages associated therewith in an amount to be determined at trial but presently estimated to aggregate in excess of $25 million dollars.

(iv)    On Count IV hereof, judgment for the monetary value of the unjust benefit and enrichment obtained by the defendants at plaintiffs' expense.

(v)     On Count V hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars together with reimbursement of

their reasonable attorneys fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

(vi)     On Count VI hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars together with reimbursement of their reasonable attorneys fees and other litigation expenses herein pursuant to 42 U.S.C. § 1988.

(vii)    On Count VII hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars.

(viii)   On Count VIII hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars.

(ix)     On Count IX hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars.

(x)      On Count X hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars.

(xi)     On Count XI hereof, damages in an amount to be proved at trial but believed to be, in the aggregate, in excess of $25 million dollars.

(xii)    On Count XII hereof, entry of a mandatory permanent injunction against the Corps of Engineers ordering and mandating said defendant to proceed with all necessary actions within its lawful powers and authority necessary and sufficient to abate, mitigate, and permanently remedy and prevent the further destructive impact of the Jetties on plaintiffs' properties and the public beaches and foreshore, including, without limitation, the funding and implementation of an immediate beach replenishment project sufficient to restore the beach and dune

system to its full extent as it existed prior to the Town's acquisition of the Jetties, and implementation of an on-going sand replenishment and bypass program sufficient to maintain the beaches and dunes in said original condition.

(xiii)   On Count XIII hereof, entry of a mandatory permanent injunction against defendants, and each of them, ordering and mandating said defendants (a) to discontinue the acts and omissions complained of herein known to have caused and to be continuously causing the active and continuous destruction of Plaintiffs' property; (b) to proceed with all necessary actions within their lawful powers and authority necessary and sufficient to abate, mitigate, and permanently remedy and prevent the further destructive impact of the Jetties on plaintiffs' properties and the public beaches and foreshore; (c) to implement an immediate beach replenishment project sufficient to restore the beach and dune system to its full extent as it existed prior to the Town's acquisition of the Jetties, and to maintain an on-going sand replenishment and bypass program sufficient to maintain the beaches and dunes in said original condition.

(xiv)   On Count XIV hereof, entry of a declaratory judgment declaring that the submerged sand as herein defined maybe utilized by the Corps of Engineers for purposes of replenishment of plaintiffs' beaches and the adjacent public beaches, including, without limitation, any such replenishment ordered by this court pursuant to this action.

(xv)   Awarding plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise permitted by law.

(xvi)    Granting such other and further relief as the Court deems just and proper.


Dated:  Central Islip, New York
        September 13, 2012

> **SINNREICH KOSAKOFF & MESSINA LLP**
>
> **By:** _____
>                    Jonathan Sinnreich
>          *Attorneys for Plaintiffs*
>          267 Carleton Avenue, Suite 301
>          Central Islip, New York 11722
>          631-650-1200 (tel)
>          631-650-1207 (fax)

# EXHIBIT A

SHORT FORM ORDER           INDEX No. ___11-2825___

SUPREME COURT - STATE OF NEW YORK
I.A.S. PART 43 - SUFFOLK COUNTY

*PRESENT:*

Hon. ____ARTHUR G. PITTS____
    Justice of the Supreme Court

MOTION DATE __9-26-11__
ADJ. DATE ____11-3-11____
Mot. Seq. # 003 - MG; CASEDISP

---X

THOMAS CANGEMI and JODI CANGEMI,
MARIANN COLEMAN, FRANCIS J. DEVITO
and LYNN R. DEVITO, LEON KIRCIK and
ELIZABETH KIRCIK, CAROL C. LANG and
TERRY S. BIENSTOCK, DANIEL
LIVINGSTON and VICTORIA LIVINGSTON,
PAMELA PETERSON, ROBIN RACANELLI,
JAMES E. RITTERHOFF and GALE H.
RITTERHOFF, JOHN TOMITZ, JOSEPH VON
ZWEHL, and THELMA WEINBERG, TRUSTEE
OF THE THELMA WEINBERG REVOCABLE
LIVING TRUST,
                         Plaintiffs,

- against -

TOWN OF EAST HAMPTON, COUNTY OF
SUFFOLK, STATE OF NEW YORK, JOE
MARTENS, Acting Commissioner of the NEW
YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION and
RUTH NOEMI COLON, Acting Commissioner of
the NEW YORK STATE DEPARTMENT OF
STATE,
                         Defendants.

---X

SINNREICH KOSAKOFF & MESSINA, LLP
Attorney for Plaintiffs
267 Carleton Avenue, Suite 301
Central Islip, New York  11722

SOKOLOFF STERN LLP
Attorney for Defendant Town of East Hampton
355 Post Avenue, Suite 201
Westbury, New York  11590

LEWIS JOHS AVALLONE & AVILES, LLP
Attorney for Defendant County of Suffolk
425 Broad Hollow Road
Melville, New York  11747-4712

ERIC T. SCHNEIDERMAN, ESQ.
New York State Attorney General
Attorney for Defendants State of New York,
Joe Martens & Ruth Noemi Colon
120 Broadway, Room 26-134
New York, New York  10271

Upon the following papers numbered 1 to 21 read on this motion to dismiss ; Notice of Motion/ Order to Show Cause and supporting papers 1 - 15 ; Notice of Cross Motion and supporting papers _____ ; Answering Affidavits and supporting papers 16 - 17 ; Replying Affidavits and supporting papers 18 - 19 ; Other 20 - 21 ; (and after hearing counsel in support and opposed to the motion) it is,

*ORDERED* that this motion by defendant Town of East Hampton for dismissal of the amended complaint is granted, and although no cross motions on behalf of the other defendants have been filed, the court, on its own motion, *sua sponte,* hereby dismisses the complaint as against all defendants.

Cangemi v Town of Easthampton
Index No. 11-2825
Page No. 2

Plaintiffs commenced this action to recover damages and obtain injunctive relief alleging that the actions as well as inaction of defendants deprived them of property rights and caused severe erosion to their properties. Plaintiffs are owners of properties located on Soundview Drive and Captain Kidd's Path fronting Block Island Sound in the Hamlet of Montauk, Town of East Hampton, New York. The properties are located west of two jetties, each extending from one side of the mouth of Lake Montauk Harbor out into Block Island Sound.

A Federal navigation project at Lake Montauk Harbor was authorized by the River and Harbor Act of March 1945. The May 1995 report of the Shallow Draft Navigation Study for Lake Montauk Harbor by the United States Army Corps of Engineers (Corps of Engineers), New York District, indicates that the existing project provides for the repair and shoreward extensions of the two jetties.

Plaintiffs allege that the jetties have been owned by defendant Town of East Hampton (Town) since 1941. According to plaintiffs, the Town's ownership and granting of a permanent easement to the Federal government in 1943, were required preconditions for obtaining approval of a project initiated and promoted by the Town for the restoration, enlargement and extension of the jetties by the Corps of Engineers to benefit the Town's favored private commercial interests. The jetties were extended by the Corps of Engineers from their original lengths of 700 feet for the west jetty and 750 feet for the east jetty to their present lengths of 981 feet for the west jetty and 1100 feet for the east jetty, and the height of the jetties was raised to a uniform design height of eight feet above mean low water.

Plaintiffs also allege that the jetties, as reconstructed and presently maintained, form a littoral barrier that interrupts the natural east to west littoral movement of sand along the beaches in the vicinity of the jetties. According to plaintiffs, this littoral barrier has caused beaches to the east of the jetties to retain sand and expand while the beaches to the west of the jetties, including plaintiffs' properties and adjacent public beaches, have undergone chronic scouring and catastrophic receding of the shoreline. Plaintiffs claim to have lost substantial portions of the upland areas of their properties and the value, use, possession and enjoyment of those areas. Plaintiffs further allege that defendants have failed, neglected and refused to take any effective action to remedy and abate the ongoing threat of imminent total loss and destruction of their homes and properties caused by the jetties, and that the damage reached a crisis point during the "nor'easter" storm of December 26, 2010.

By their amended complaint, plaintiffs allege causes of action for private and public nuisance, appropriation of resource and interference with property, trespass of waters onto plaintiffs' properties, and conversion of and unjust enrichment by, sand that rightfully belonged to plaintiffs with the natural littoral drift. In addition, plaintiffs allege denial of due process and equal protection by delaying or denying timely processing of permits for construction of structures to protect their properties from damage in violation of the Fourteenth Amendment of the United States Constitution, and taking of upland property without just compensation in violation of the Fifth Amendment of the United States Constitution and Article 1, section 7 of the New York State Constitution. They also seek mandatory injunctions requiring defendants to proceed with all necessary actions to abate, mitigate and permanently remedy and prevent the further destructive impact of the jetties on their properties and the public beaches.

Cangemi v Town of Easthampton
Index No. 11-2825
Page No. 3

· The Town now moves for dismissal of the complaint as against it pursuant to CPLR 3211 (a) (1), (5), (7), and (10) and pursuant to CPLR 1001 (a). The Town argues that the complaint must be dismissed for failure to join the Corps of Engineers as a necessary party inasmuch as it, rather than the Town, operates, maintains and controls the subject area and the jetties. The Town emphasizes that plaintiffs fail to allege that the Town had any role in repairing, maintaining or extending the jetties; that it has no authority or involvement in the maintenance or control of the jetties pursuant to federal statute; and that the Federal government has maintained exclusive control over the jetties pursuant to Federal statutory authority since at least the 1940's. In addition, the Town asserts that plaintiffs' claims are barred by the one-year-and-90-day statute of limitations of General Municipal Law § 50-i for state law claims and the three year statute of limitations for Federal claims. With respect to the causes of action alleging public and private nuisance, appropriation of resource, conversion and trespass and taking, the Town asserts that they must be dismissed as plaintiffs do not have any property rights to accretions of sand to the east that never accumulated on their properties to the west of the jetties.

In opposition to the motion, plaintiffs contend that the Corps of Engineers is not a necessary party inasmuch as the injunctive and monetary relief sought by plaintiffs is available through judgment against the Town and other defendants and will not affect any protected interests of the Corps of Engineers or the Federal government, and the Town may implead the Corps of Engineers as a third-party defendant. Plaintiffs also contend that their claims are timely, that the Town's statute of limitations defense is barred by the doctrine of equitable estoppel, and that the Town does not have a laches defense.

In reply, the Town argues that the Corps of Engineers is indispensable inasmuch as plaintiffs' direct claims are against the Corp of Engineers, which maintains, constructs and operates the jetties, and are merely indemnification claims based on old hold harmless agreements as against the Town. In addition, the Town argues that plaintiff's equitable claims seriously impact the rights of the Federal government which has exclusive control over the jetties, and contrary to plaintiffs' assertions, the Corps of Engineers cannot be impleaded into this state court action. Among the town's other arguments are that the continuing violation doctrine is inapplicable inasmuch as plaintiffs concede that their damages flow from discrete storm events that caused independent avulsive losses of property.

. A motion to dismiss a cause of action pursuant to CPLR 3211(a) (7) should not be granted "'if, taking all facts alleged as true and according them every possible inference favorable to the plaintiff, the complaint states in some recognizable form any cause of action known to our law'" (*Sonne v Board of Trustees of Vil. of Suffern*, 67 AD3d 192, 200, 887 NYS2d 145 [2d Dept 2009], quoting *Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 38, 827 NYS2d 231 [2d Dept 2006]; *see Dana v Shopping Time Corp.*, 76 AD3d 992, 993-994, 908 NYS2d 114 [2d Dept 2010]).

Here, a review of plaintiffs' amended complaint reveals that they have stated causes of action for continuing public and private nuisance (*see Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 568-569, 394 NYS2d 169 [1977]; *Incorporated Vil. of Asharoken v Long Is. Lighting Co.*, 57 AD3d 735, 736, 869 NYS2d 590 [2d Dept 2008]). The alleged acts of continuous nuisance give rise to successive causes of action under the continuous wrong doctrine (*see Lucchesi v Perfetto*, 72 AD3d 909, 912, 899 NYS2d 341 [2d Dept 2010]). Plaintiffs have stated an equitable claim based on continuing nuisance "for

Cangemi v Town of Easthampton
Index No. 11-2825
Page No. 4

which a cause of action accrues anew each day" (*Rapf v Suffolk County of New York*, 755 F2d 282, 292 [2d Cir 1985]; *see Stanton v Town of Southold*, 266 AD2d 277, 278, 698 NYS2d 258 [2d Dept 1999]; *Kennedy v U.S.*, 643 F Supp 1072 [ED NY 1986]; *Sova v Glasier*, 192 AD2d 1069, 596 NYS2d 228 [4th Dept 1993]; *State of New York v Schenectady Chems.*, 103 AD2d 33, 479 NYS2d 1010 [3d Dept 1984]; *compare Lockman v Town of Southold*, 108 AD2d 900, 485 NYS2d 784 [2d Dept 1985]). Only those acts of nuisance alleged to have occurred more than three years before the action was commenced would be time-barred (*see Lucchesi v Perfetto, supra*).

A CPLR 3211 (a) (1) motion to dismiss a complaint on the ground that a defense is founded on documentary evidence may be appropriately granted where the documentary evidence utterly refutes the plaintiff's allegations, conclusively establishing a defense as a matter of law (*see Peter Williams Enterprises, Inc. v New York State Urban Dev. Corp.*, 90 AD3d 1007, 935 NYS2d 624 [2d Dept 2011]). The May 1995 report of the Shallow Draft Navigation Study for Lake Montauk Harbor by the Corp of Engineers submitted by the Town and referred to by plaintiffs in their amended complaint clearly indicates that the Corps of Engineers is responsible pursuant to the Federal navigation project for the repair and shoreward extension of the subject jetties.

A party may move for dismissal on the ground that the court should not proceed in the absence of a person who should be a party (CPLR 3211 [a], [10]). CPLR 1001 (a) provides that parties are necessary and should be joined in the action "if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action." The failure to join a necessary party under CPLR 1001 is a ground for dismissal of an action without prejudice pursuant to CPLR 1003 (*see* 1003).

Here, the entity that performed the repairs and extensions of the jetties pursuant to the Federal navigation project and would be involved in mitigation measures, the Corps of Engineers, is not a party to this action. To the extent that plaintiffs are arguing that the jetties have caused their damages, the Corp of Engineers is a necessary party to this action, and complete relief cannot be obtained amongst the current parties absent its joinder (*see generally Incorporated Vil. of Atlantic Beach v Pebble Cove Homeowners' Assn.*, 139 AD2d 627, 527 NYS2d 429 [1988]). Also, contrary to plaintiffs' contentions, the Corps of Engineers cannot be impleaded. The United States and its agencies cannot be impleaded as third-party defendants in state court tort actions (*Keene Corp v United States*, 700 F 2d 836, 843 n 10 [2d Cir 1983]; *Harris v G.C. Servs. Corp.*, 651 F Supp 1417, 1418 [SD NY 1987]; *see Singleton v Elrac, Inc.*, US Dist Ct, SD NY, 03 Civ 4979, Keenan, J., 2004; *Matter of Schmoll, Inc. v Federal Reserve Bank of N.Y.*, 286 NY 503 [1941], *cert den* 315 US 818, 62 S Ct 905 [1942]). In such an event, this Court would not have jurisdiction over the Corps of Engineers (*see Singleton v Elrac, Inc., supra*).

Moreover, pursuant to the Federal Tort Claims Act ("FTCA"), 28 USC § 1346 (b), "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" (*see* 28 USC § 1346 [b], [1]; *see*

Cangemi v Town of Easthampton
Index No. 11-2825
Page No. 5

*also Reichhart v U.S.*, 408 Fed Appx 441 [2d Cir 2011]; *Ireland v Suffolk County of New York*, 242 F Supp 2d 178 [ED NY 2003]; *Devito v U.S.*, 12 F Supp 2d 269 [ED NY 1998]; *Kennedy v U.S., supra*). Therefore, dismissal of the action is warranted based upon plaintiffs' failure to join a necessary party to the action (*see* CPLR 1001 [a]; CPLR 3211 [a], [10]; *Riback v Margulis*, 43 AD3d 1023, 842 NYS2d 54 [2d Dept 2007]).

Accordingly, the motion by the Town is granted and the complaint is dismissed in its entirety. By extension, since all co-defendants are similarly situated, the complaint is also dismissed as to them.

Dated:  February 17, 2012

_____
J.S.C.

___X___ FINAL DISPOSITION     _____ NON-FINAL DISPOSITION