UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
THOMAS CANGEMI, JODI CANGEMI,
MARIANN COLEMAN, FRANCIS J. DEVITO,
LYNN R. DEVITO, LEON KIRCIK,
ELIZABETH KIRCIK, CAROL C. LANG,                    MEMORANDUM & ORDER
TERRY S. BIENSTOCK, DANIEL                          12-CV-3989(JS)(WDW)
LIVINGSTON, VICTORIA LIVINGSTON,
ROBIN RACANELLI, JAMES E.
RITTERHOFF, GALE H. RITTERHOFF,
ELSIE V. THOMPSON TRUST, JOHN TOMITZ,
and THELMA WEINBERG TRUSTEE OF THE
THELMA WEINBERG REVOCABLE LIVING
TRUST,

                        Plaintiffs,

            -against-

THE UNITED STATES OF AMERICA; THE
U.S. ARMY CORPS OF ENGINEERS; COL.
JOHN R. BOULE II, individually and
in his official capacity; THE TOWN
OF EAST HAMPTON; WILLIAM J.
WILKINSON, individually and in his
official capacity; COUNTY OF
SUFFOLK; THE STATE OF NEW YORK; JOE
MARTENS, Commissioner of the New
York State Department of
Environmental Conservation; and
CESAR A. PERALES, Secretary of the
New York State Department of State,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:        Jonathan Halsby Sinnreich, Esq.
                       Timothy F. Hill, Esq.
                       Sinnreich Kosakoff & Messina L.L.P.
                       267 Carleton Avenue, Suite 301
                       Central Islip, New York 11722

For Defendants:
The U.S.A., U.S.
Army Corps of
Engineers, and
Boule                    Vincent Lipari, Esq.
                         United States Attorney's Office
                         Eastern District of New York
                         610 Federal Plaza, 5th Floor
                         Central Islip, New York 11722

Town of East
Hampton and
Wilkinson                Anthony F. Cardoso, Esq.
                         Steven C. Stern, Esq.
                         Sokoloff Stern L.L.P.
                         179 Westbury Avenue
                         Carle Place, New York 11514

Suffolk County           Daniel A. Bartoldus, Esq.
                         Lewis Johs Avallone Aviles & Kaufman, L.L.P.
                         425 Broad Hollow Road
                         Melville, New York 11747

New York State,
Martens,
and Perales:             Gregory J. Nolan, Esq.
                         N.Y.S. Office of the Attorney General
                         Environmental Protection Bureau
                         120 Broadway
                         New York, New York 10271

SEYBERT, District Judge:

Plaintiffs Thomas Cangemi, Jodi Cangemi, Mariann Coleman, Francis J. Devito, Lynn R. Devito, Leon Kircik, Elizabeth Kircik, Carol C. Lang, Terry S. Bienstock, Daniel Livingston, Victoria Livingston, Robin Racanelli, James E. Ritterhoff, Gale H. Ritterhoff[1], Elise V. Thompson Trust, John Tomitz, and Thelma Weinberg as Trustee of the Thelma Weinberg

---

[1] The Clerk of the Court is directed to amend the caption to include Gale H. Ritterhoff as a plaintiff in this action.

revocable living trust (collectively "Plaintiffs") bring this suit against the United States of America; the United States Army Corps of Engineers; Col. John R. Boule II, individually and in his official capacity; the Town of East Hampton; William J. Wilkinson, individually and in his official capacity; the County of Suffolk; the State of New York; Joe Martens, Commissioner of the New York State Department of Environmental Conservation; and Cesar A. Perales, Secretary of the New York State Department of State (collectively "Defendants") to redress damage to Plaintiffs' real property that they allege has been caused by the Lake Montauk Harbor Jetties (the "Jetties"). Currently pending before the Court is a motion filed by the Town of East Hampton (the "Town") and William J. Wilkinson ("Wilkinson" and together with the Town, the "Town Defendants") to dismiss the Amended Complaint.[2] Also pending before the Court is a motion filed by the State of New York (the "State"); Joe Martens ("Martens"), Commissioner of the New York State Department of Environmental Conservation; and Cesar A. Perales ("Perales"), Secretary of State, New York State Department of State (collectively the "State Defendants") to dismiss this action in its entirety as against them. For the following reasons, the

---

[2] Plaintiffs and the Town Defendants agree that the motion to dismiss applies to the Amended Complaint, although technically filed before Plaintiffs amended. (Docket Entries 19-21.)

Town Defendants' motion is GRANTED IN PART and DENIED IN PART; the State Defendants' motion is GRANTED.

BACKGROUND

I.  Factual Background[3]

Plaintiffs originally commenced this action in the Southern District of New York on June 14, 2012.  (Docket Entry 1.)  Thereafter, the parties stipulated to transfer the action to this Court.  (Docket Entry 8.)

Plaintiffs own waterfront property located on Soundview Drive and Captain Kidd's Path in Montauk, New York, just west of the Jetties in Lake Montauk Harbor.[4]  (Am. Compl. ¶ 2.)

Private parties first constructed jetties in the area in the 1920s.  (Id. ¶ 41.)  These jetties quickly fell into disrepair, however.  Thus, in or about 1939, at the Town's request, the Army Corps of Engineers recommended to Congress a "repair and extension shoreward" of the Jetties.  (Id. ¶ 41-42.) To effectuate the project, "the Town obtained a conveyance of

---

[3] The following facts are taken from Plaintiffs' Amended Complaint (Docket Entry 18) and the documents attached thereto and are presumed to be true for the purposes of this Memorandum and Order.

[4] Plaintiffs' properties are bounded on the north by reference to the mean high water line of Block Island Sound, with the exception of the property owned by Robin Racanelli, which has a deeded right-of-way to the beach.  (Am. Compl. ¶ 43.)

title to and over the Jetties and the land under Lake Montauk Harbor" in 1941. (Id. ¶ 48.) The Town thereafter granted the federal government, or more specifically the Army Corps of Engineers, a permanent easement over the land and the Jetties. (Id. ¶¶ 49, 54.) As part of their agreement, the Town also "assured the United States of America that [it] would: 'Hold and save the United States free from claims for damages that may occur from the construction and maintenance' of the improvements authorized by the Rivers and Harbors Act." (Id. ¶ 52.) Despite this easement, the Town has always owned the land and Jetties, and retains a reversionary interest. (Id. ¶ 50.)

The Army Corps of Engineers, "with the active assistance and cooperation of the Town," then redesigned, enlarged, and reconstructed the Jetties, lengthening them from 700 feet on the west and 750 on the east to 981 feet and 1100 feet respectively. (Id. ¶ 42.)

In addition, the Army Corps of Engineers is responsible for maintaining the navigation channel that connects Lake Montauk Harbor to nearby Block Island Sound. Pursuant to the Rivers and Harbors Act of March 2, 1945, the Army Corps of Engineers is authorized and directed to perform periodic dredging in order to maintain the channel. (Id. ¶¶ 54-55.) The existing federal project at Lake Montauk Harbor provides for a

channel 12 feet deep and 150 feet wide, along with other specifications. (Id. ¶ 56.)

Plaintiffs allege that the Jetties have created and continuously cause an interruption in the natural east-to-west littoral movement of sand along the beaches in the vicinity of the Jetties. (Id. ¶ 4.) Consequently, lands to the west of the Jetties, including Plaintiffs' properties, have "experienced persistent and substantial scouring and shoreline recession." (Id.) The Jetties, they allege, prevent the natural replenishment of sand onto their property and leave the properties vulnerable to further loss. (Id. ¶¶ 5, 70.) The result has been that Plaintiffs have lost "substantial portions" of the upland portions of their properties and "suffered millions of dollars in damages and loss and injury to property." (Id. ¶¶ 77-78.) Lands to the east of the Jetties, however, including Town and County-owned beaches, have benefitted from the collection and build-up of sand. (Id. ¶ 69.)

Despite these injurious conditions, Plaintiffs allege that Defendants have been aware of the state of affairs but refuse to remedy it. For example, "[t]he Corps of Engineers has publicly acknowledged that, as a direct and proximate result of the construction and maintenance of the Jetties, the shoreline of plaintiffs' properties was already in 'critical condition'

over a decade ago."  (Id. ¶¶ 6, 84.)  The Complaint goes on to allege that

> [s]imilarly, the Town has repeatedly recognized the Jetties as being responsible for the dramatic loss of property west of the Jetties . . . . Indeed, the Town's former Environmental Protection Director, Larry Penny, stated publicly in January 2008 that "[o]n the west side of the jetty, which has houses on Soundview Avenue, the beach has disappeared and the dunes are being eaten away at a great rate" and predicted . . . that "a big storm would probably put a few in the ocean."

(Id. ¶ 7.)  Additionally, "the State has admitted, acknowledged and conceded that the Jetties have caused and continue to cause severe shoreline recession in the areas west of the Jetties." (Id. ¶ 76.)

Plaintiffs also allege that the State Defendants have a statutory affirmative duty to actively participate in all federal programs affecting the coastal region in order to preserve and protect the coastal zone.  (Id. ¶¶ 59, 61.) Accordingly, in refusing to remedy the damage caused by the Jetties, "[t]he State has and continues to violate applicable law in failing to protect the shoreline." (Id. ¶ 65).

II. <u>Procedural Background</u>

On or about January 24, 2011, Plaintiffs commenced an action in New York State Supreme Court, County of Suffolk against many of the defendants named in the current action for

7

public and private nuisance and deprivation of their federally protected constitutional and civil rights (the "State Court Action"). (Id. ¶ 37.) The Town moved to dismiss the complaint. (Id. ¶ 38.)

By order dated February 17, 2012, the Supreme Court granted the Town's motion and dismissed the action because Plaintiffs had failed to name the Army Corps of Engineers as a necessary party. (Id. ¶ 39.) However, the court held that Plaintiffs had stated a cause for continuing public and private nuisance. (Am. Compl. Ex. A. at 3)

## DISCUSSION

The Amended Complaint raises various causes of action against the State and Town Defendants (together, the "Moving Defendants").[5] As against the Town Defendants, Plaintiffs assert claims for negligence, public and private nuisance, unjust enrichment, denial of due process, denial of equal protection, appropriation of resource, trespass, and federal and state takings. As against the State Defendants, the Amended Complaint does not assert any specific counts, but rather includes the State Defendants in their requests for injunctive and declaratory relief against all Defendants.

---

[5] The Amended Complaint also raises claims against other Defendants; the Court will summarize only those claims relevant to the pending motions.

The Court will first address the applicable legal standards before addressing the State Defendants' motion, followed by that of the Town Defendants.

I. Legal Standards

    A. Legal Standard of a Rule 12(b)(1) Motion

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 130 S. Ct. 2869, 177 L. Ed. 535 (2010). The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of plaintiffs because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists. Morrison, 547 F.3d at 170; see also Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004).

### B. Legal Standard on a Rule 12(b)(6) Motion

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all factual allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). Id. Determining whether a complaint does so is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## II. The State Defendants' Motion

State Defendants move to dismiss Plaintiffs' Amended Complaint on three grounds: first, because the State Defendants are immune from suit under the Eleventh Amendment, second, because the Coastal Zone Management Act does not provide a private right of action, and third, because the Plaintiffs have not set forth a claim for which the Court may grant the relief sought. As Plaintiffs' claims against the State Defendants are apparently based upon the Coastal Zone Management Act of 1972,

16 U.S.C. § 1451 et seq. (the "Act" or the "CZMA"), which does not provide a private cause of action, the Court need not address the State Defendants' remaining arguments.

Notably, the Amended Complaint asserts separate "counts" against all Defendants, including the State Defendants, for a mandatory injunction and declaratory relief. However, injunctive and declaratory relief are not separate causes of action. See In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); KM Enters., Inc. v. McDonald, No. 11-CV-5098, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) (citing Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.")). Thus, Plaintiffs must properly plead an underlying cause of action in order to seek such relief.

Generously, the State Defendants assume that Plaintiffs intend to assert an underlying cause of action against the State Defendants for violation of the CZMA. While the Court agrees with this reading of the Amended Complaint, courts have consistently held that the Act does not provide a private right of action. In George v. N.Y.C. Department of City Planning, the Second Circuit looked to the text and structure of

the Act to determine whether it provided a private cause of action.  436 F.3d 102 (2d Cir. 2006).  The Court held that "[w]here the text explicitly contemplates public enforcement only, courts will assume Congress intended to preclude private enforcement."  Id. at 103.  In Town of North Hempstead v. Village of North Hills, the court decided that "[i]t is clear that CZMA . . . is neither a jurisdictional grant, nor a basis for stating a claim upon which relief can be granted."  482 F. Supp. 900, 905 (E.D.N.Y. 1979).  Although that case was brought against only the city and other municipal officials, the Second Circuit later extended the ruling's applicability to any federal, state, city, or private defendant.  George v. Evans, 311 F. App'x 426, 428 (2d Cir. 2009).

Therefore, to the extent that Plaintiffs assert a cause of action against the State Defendants for violation of the CZMA, such claims are DISMISSED WITH PREJUDICE.  The trouble here is that, while the Amended Complaint raises claims against the State Defendants based upon the CZMA, Plaintiffs' opposition brief arguably asserts claims for injunctive and declaratory relief against the State Defendants based upon other causes of action.  Thus, the Court cannot fully determine the extent to which the Eleventh Amendment applies or whether Plaintiffs' claim for declaratory relief is viable.  Under Federal Rules of Civil Procedure 15(a)(2), courts should grant parties leave to

amend their pleadings "when justice so requires." Accordingly, Plaintiffs are granted leave to amend their requests for injunctive and declaratory relief in order to properly plead and specify the underlying causes of action for which they seek such relief as against all Defendants.

III.  The Town Defendants' Motion

The Town Defendants seek to dismiss the Amended Complaint against them because, they argue: (1) Plaintiffs' state law claims are preempted; (2) the Town Defendants are entitled to immunity; (3) Plaintiffs' claims are time-barred; (4) Plaintiffs' have failed to state a claim for each of their causes of action against the Town Defendants; and (5) Plaintiffs have not properly alleged a claim against Defendant Wilkinson. The Court will address each of these arguments in turn.

A.  Preemption and Immunity

The Town Defendants maintain that Plaintiffs' state law claims regarding the Jetties are preempted entirely by federal law and should be dismissed. Specifically, they argue that the Rivers and Harbors Act of 1945 granted the Army Corps of Engineers the exclusive authority over maintenance of navigable waterways. Alternatively, the Town Defendants assert that they are entitled to immunity on the state law claims.

1. <u>Preemption</u>

"Consistent with the Supremacy Clause, state laws that interfere with or are contrary to the laws of Congress will not stand." <u>Richmond Boro Gun Club., Inc. v. City of N.Y.</u>, 97 F.3d 681, 687 (2d Cir. 1996). There is a strong presumption against preemption, however. <u>Id.</u> Further, there are three types of preemption: express, field, and conflict preemption. <u>Steel Inst. of N.Y. v. City of N.Y.</u>, 832 F. Supp. 2d 310, 321 (S.D.N.Y. 2011).

The Town Defendants assert conflict preemption because, they say, Plaintiffs' state law claims conflict with the objectives of the Rivers and Harbors Act of 1945. (Town Ds' Memo in Support, D.E. 13-5 at 9.) They maintain that Congress has granted the Army Corps of Engineers exclusive authority over the maintenance of navigable waterways. Furthermore, according to the Town Defendants, Congress authorized the federal project at Lake Montauk Harbor, thus manifesting an intent that the Jetties be put in place and that the Army Corps maintain them. (Id. at 10.)

"Conflict preemption 'occurs when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" <u>Spinrad v. Comair, Inc.</u>, 825 F. Supp. 2d 397, 405 (E.D.N.Y. 2011) (quoting <u>SPGGC,</u>

L.L.C. v. Blumenthal, 505 F.3d 183, 188 (2d Cir. 2007)). The Town Defendants essentially frame the issue as whether the Jetties can exist, as authorized by the Rivers and Harbors Act of 1945, and the Town can be held liable for state law torts. As Plaintiffs correctly note, however, the Rivers and Harbors Act of 1945 imposes minimal proscriptions regarding maintenance of the Jetties and the attendant navigable waterways. (Stern Decl. Ex. C., D.E. 13-4)

"The 'purpose of Congress is the ultimate touchstone of pre-emption analysis.'" Sprinrad, 825 F. Supp. 2d at 403 (quoting Cippollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)). Here, the Congressional purpose is to maintain navigability. (Stern Decl. Ex. C.) This has no apparent connection to whether the Moving Defendants can be held liable for state tort claims.

Furthermore, it is not impossible to comply with both federal and state law. While the federal project may authorize the existence of the Jetties, Plaintiffs have at least plausibly suggested that Defendants can maintain the Jetties without creating a nuisance or trespass by remedial actions. (Am. Compl. ¶ 45.) Where a defendant could comply with state and federal law by following the stricter state law requirements, there is no conflict preemption. See Steel Inst. of N.Y., 832 F. Supp. 2d at 331 ("Where, as here, it is possible for

Plaintiff's members to comply with both legal requirements, simply by obeying the stricter one, it is generally assumed that Federal regulation merely sets a 'floor,' over which States are free to impose additional regulations.").

Therefore, the Town Defendants' motion to dismiss Plaintiffs' state law claims as preempted is DENIED.

## 2. Immunity for Discretionary Acts

The Town Defendants also assert that they are entitled to immunity on Plaintiffs' state law claims because their actions involved the exercise of discretion. They correctly note that "when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action." Haddock v. City of N.Y., 75 N.Y.2d 478, 484, 553 N.E.2d 987, 554 N.Y.S.2d 439 (1990).

However, the Town Defendants mischaracterize their alleged role. While the Town may or may not have exercised discretion in the decision to have the Army Corps of Engineers take over the Jetties, that is not Plaintiffs' sole allegation against the Town Defendants. Plaintiffs also allege that the Town Defendants are liable for "the Town's ongoing inaction or omissions and the continuing damages that result to this day." (Ps' Opp. Br. to Town, Docket Entry 29, at 34.) Such actions

would not be subject to immunity. See Searles v. Town of Horicon, 116 A.D.2d 93, 95, 500 N.Y.S.2d 402 (3d Dep't 1986) (Town would be liable for improper methodology in executing plans regarding construction of a dam and its maintenance and operation of the dam); E.B. Metal & Rubber Indus. v. Cnty. of Wash., 102 A.D.2d 599, 601, 479 N.Y.S. 2d 794 (3d Dep't 1984) ("The town would be entitled to immunity in its lawful exercise of sovereign power in the planning and design of the dike, but would be subject to liability when damage is occasioned because of improper methodology in carrying the plan into execution.").

Thus, the Town Defendants' motion to dismiss Plaintiffs' state law claims on immunity grounds is DENIED.

B.  Timeliness

The Town Defendants also assert that Plaintiffs' claims are time-barred.

1.  Plaintiffs' Federal Claims

The Court will first address the timeliness of Plaintiffs' federal claims before addressing the timeliness of Plaintiffs' state law claims.

With respect to Plaintiffs' federal claims pursuant to 42 U.S.C. § 1983, the applicable statute of limitations is three years. See Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997). According to the Town Defendants, the Complaint alleges that any destructive impact from the Jetties dates back longer than three

years, and Plaintiffs do not allege that the Town took any unconstitutional action within the past three years to violate Plaintiffs' due process or equal protection rights or to effect a taking. (Town Ds' Memo in Supp. at 12, D.E. 13-5.)

a.  Plaintiffs' Takings Claims

Plaintiffs maintain that the takings involved in this action are of an ongoing and continuous nature and therefore do not accrue until the continuous takings become stabilized. This theory, sometimes referred to as the "stabilization doctrine," originated in United States v. Dickinson, 331 U.S. 745, 749, 67 S. Ct. 1382, 91 L. Ed. 1789 (1947) ("An owner of land flooded by the Government would not unnaturally postpone bringing a suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck."). Under the doctrine, "a claim stabilizes when the 'permanent nature' of the taking is evident." Banks v. United States, 314 F.3d 1304, 1309 (Fed. Cir. 2003) (internal quotation marks and citation omitted); see also Mildenberger v. United States, 643 F.3d 938, 945 (Fed. Cir. 2011) ("The stabilization doctrine recognizes that determining the exact point of claim accrual is difficult when the property is taken by a gradual physical process rather than a discrete action undertaken by the Government such as a condemnation or regulation.").

Although the stabilization doctrine has been applied to factual scenarios similar to the case at bar, see Banks, 314 F.3d at 1310, other courts have noted its limited applicability, see Mildenberger, 643 F.3d at 946 (Dickinson holding regarding stabilization applies to actions under the Tucker Act for a taking by flooding). Even if the doctrine applied here, however, and even though the taking may be of a continuous nature, "the predictability [and permanence] of the extent of damage to the [plaintiffs'] land" occurred years ago. Banks, 314 F.3d at 1309 (internal quotation marks and citation omitted). Here, Plaintiffs' allegations acknowledge that the Army Corps of Engineers noted that the shoreline of Plaintiffs' properties was in "'critical condition' over a decade ago" (Am. Compl. ¶¶ 6, 84) and that in 2008 a Town official publicly stated that "the beach [on the west side of the Jetties] has disappeared and the dunes are being eaten away at a great rate" (id. ¶ 7). As such, Plaintiffs could have known years ago that the conditions were such that their alleged damage was permanent.

Therefore, Plaintiffs' federal takings claims against the Town Defendants are DISMISSED WITH PREJUDICE as barred by the statute of limitations.

### b. Plaintiffs' Due Process Claim

Plaintiffs' federal claim for violation of due process is likewise time-barred, and therefore DISMISSED WITH PREJUDICE. Plaintiffs' claim for violation of due process is minimal, and essentially states only that "Defendants, by their ownership, operation and control of the Jetties, have deprived plaintiffs of their property without due process of law, in violation of the plaintiff's rights as protected and secured under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (Town)." (Am. Compl. ¶ 119). As the Court reads this claim, it is similar to Plaintiffs' takings claims--namely that the relevant defendants have essentially "taken" Plaintiffs' property without affording them due process of law. Such a claim is a "single event [that] gives rise to continuing injuries," Willets Point Indus. & Realty Ass'n v. City of N.Y., No. 08-CV-1453, 2009 WL 4282017, at *11 (E.D.N.Y. Nov. 25, 2009) (quoting Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001), and therefore is not timely).

### c. Plaintiffs' Equal Protection Claim

Additionally, Plaintiffs' equal protection claim is also time-barred. "The Equal Protection clause is the requirement that all similarly-situated individuals be treated alike." Id. at *4. Plaintiffs assert that they have been treated differently than other similarly situated private

waterfront landowners. (Am. Compl. ¶ 122-123.) Essentially, Plaintiffs argue that the Town Defendants have acted improperly for the "purpose of benefitting itself at the direct expense of the Plaintiffs." (Ps' Memo of Law in Opp. at 47, D.E. 29.) In other words, the Town Defendants have discriminated against Plaintiffs with the result of damage to Plaintiffs' property while the Town Defendants simultaneously benefit from accretion to Town-owned beaches.

Plaintiffs' claim of equal protection arguably raises the "continuing violation" theory.[6] For example, they allege that "while the defendants' acts, omissions, and nuisance complained of herein have significantly damaged plaintiffs' properties and interests, the Town and State, in their proprietary capacity as landowners, benefit from their own negligence and ongoing nuisance as the Jetties have substantially enlarged the uplands east of the Jetties." (Am. Compl. ¶ 124.) "Under the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory

_____

[6] In fact, Plaintiffs argue that all of their federal claims are based upon continuing wrongs. (Ps' Memo of Law in Opp. at 18-19, D.E. 29.) The Amended Complaint alleges the continuing violation theory most explicitly with respect to the equal protection claim. In any event, the Court rejects Plaintiffs' assertion that the federal claims are continuing.

act in furtherance of it.'" Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)).

To bring a claim under the continuing violation doctrine, Plaintiffs must allege an underlying discriminatory policy or practice and an action taken pursuant to that policy during the statutory period. See S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme, 539 F. Supp. 2d 547, 557 (D. Conn. 2008). Here, however, Plaintiffs have failed to allege a discriminatory practice or policy. Therefore, Plaintiffs have not sufficiently alleged a "continuing violation" and their equal protection claim is time-barred.[7]

Accordingly, Plaintiffs' equal protection claim against the Town Defendants is DISMISSED WITH PREJUDICE.

---

[7] In fact, Plaintiffs' equal protection claim is apparently based on a "class of one theory." "'[C]lass-of-one' equal protection claims are recognized where, rather than alleging membership in a particular protected group, a plaintiff instead alleges (1) that he or 'she has been intentionally treated differently from others similarly situated and [(2)] that there is no rational basis for the difference in treatment.'" Willets Point Indus. & Realty Ass'n, 2009 WL 4282017, at *4 (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). Plaintiffs, however, have also failed to allege any lack of a rational basis. See 33 Seminary LLC v. City of Binghamton, 869 F. Supp. 2d 282, 309 (N.D.N.Y. 2012) ("[P]laintiffs must adequately plead that any differential treatment was without a rational basis.").

## 2. Plaintiffs' State Law Claims

The Town Defendants claim that Plaintiffs failed to serve a timely notice of claim within 90 days of when they assert their claims arose, as required by Town Law § 67 and General Municipal Law § 50-e. (Ds' Memo of Law in Supp. at 12, D.E. 13-5.) They further argue that, even if Plaintiffs did provide the requisite notice, Plaintiffs' state law claims are otherwise untimely under the relevant statutes of limitations.[8]

---

[8] The Town Defendants also argue that all of Plaintiffs' claims are barred by laches. Plaintiffs counter that the Town Defendants should be collaterally and equitably estopped from raising their statute of limitations and laches arguments. The Court finds neither contention meritorious. "Laches is defined as such neglect or omission to assert a right as . . . operates as a bar in a court of equity. The essential element of this equitable defense is delay prejudicial to the opposing party. Schulz v. State of N.Y., 81 N.Y.2d 336, 348, 599 N.Y.S.2d 469 (1993) (internal quotation marks and citation omitted). The Town Defendants, however, have not argued any real prejudice. See Skrodelis v. Norbergs, 272 A.D.2d 316, 316, 707 N.Y.S.2d 197 (2d Dep't 2000) ("The mere lapse of time without a showing of prejudice will not sustain a defense of laches.").

In addition, collateral estoppel "applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding, and the issue has been necessarily decided in the prior action, is decisive of the present action, and the litigant had a full and fair opportunity in the prior action to contest the decision." 33 Seminary LLC, 869 F. Supp. 2d at 298. Here, there was no full and fair opportunity to litigate because there was no opportunity to appeal. See Johnson v. Watkins, 101 F.3d 792, 796 (2d Cir. 1996) ("Because there was no opportunity to appeal this adverse finding, that issue was not fully and fairly litigated."); Tinnell v. Invacare Corp., 819 F. Supp. 2d 192, 197 (W.D.N.Y. 2011) (same).

a. <u>Notice</u>

General Municipal Law § 50-e requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation." N.Y. GEN. MUN. LAW § 50-e(1). General Municipal Law § 50-i provides that "the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." <u>Id.</u> § 50-i(1). Town Law § 67 requires compliance with the notice requirements of General Municipal Law § 50 for "any claim for damages for wrong or injury to person or property." N.Y. TOWN LAW § 67.

Plaintiffs filed a notice of claim (Stern Decl. Ex. E, D.E. 13-4), but not until May 2011, which the Town Defendants claim is not timely. Plaintiffs, however, were not required to provide notice for their nuisance, trespass, and unjust enrichment claims. Notice is not necessary for equitable claims, such as unjust enrichment. <u>See</u> <u>Schneider v. Town of Orangetown</u>, 175 Misc. 2d 899, 900, 673 N.Y.S.2d 281 (2d Dep't 1998) (Plaintiffs' "claim is clearly based on the theory of

Finally, Plaintiffs have not specifically pointed to any false promises or affirmative wrongdoing to support their equitable estoppel argument. <u>See</u> <u>Franco v. Roman Catholic Diocese of Las Vegas</u>, 24 Misc. 3d 1205(A), *1, 889 N.Y.S.2d 882 (N.Y. Sup. Ct. Queens Cnty. 2009).

unjust enrichment. Therefore, the notice of claim requirements of the General Municipal Law do not apply."); <u>see also</u> E. Williamson Roofing & Sheet Metal Co., Inc. v. Town of Parish, 139 A.D.2d 97, 109, 530 N.Y.S. 2d 720 (4th Dep't 1988) (unjust enrichment is equitable in nature).

Nor is it required "to restrain a continuing wrong by the municipality, and the money damages sought are merely incidental." <u>Picciano v. Nassau Cnty. Civil Serv. Comm'n</u>, 290 A.D.2d 164, 172, 736 N.Y.S.2d 55 (2d Dep't 2001). For instance, in <u>Stanton v. Town of Southold</u>, the New York State Appellate Division, Second Department held that the plaintiffs' failure to comply with General Municipal Law § 50-e did not bar their suit for nuisance regarding erosion from a jetty because money damages were incidental to their requested injunctive relief. 266 A.D.2d 277, 278, 698 N.Y.S.2d 258 (2d Dep't 1999).

In contrast, Plaintiffs' negligence and appropriation of resource claims are not timely. <u>See</u> <u>Stone v. Town of Clarkstown</u>, 82 A.D.3d 746, 747, 918 N.Y.S.2d 167 (2d Dep't 2011) (where claims sounded primarily in negligence, General Municipal Laws §§ 50-e, 50-i required notice). "A cause of action for negligence accrues when the act constituting the negligence produce[s] an injury, to wit: when all the elements of the tort can be alleged in the complaint." <u>Ross Network, Inc. v. RSM McGladrey, Inc.</u>, 11 Misc. 3d 1089(A), *4, 819 N.Y.S.2d 851 (N.Y.

Sup. Ct. Nassau Cnty. 2006). As the Court noted with respect to Plaintiffs' federal takings claims, the elements to many of Plaintiffs' claims could have been pled years ago. Therefore, Plaintiffs' negligence claim is DISMISSED WITH PREJUDICE.

In addition, Plaintiffs' notice of claim did not include a cause of action for "appropriation of resource." (Stern Decl. Ex. E, D.E. 13-4) Accordingly, this claim is also DISMISSED WITH PREJUDICE.

b. Statutes of Limitations

The Town Defendants further assert that, even if Plaintiffs provided proper notice, their state law claims are barred by the relevant statutes of limitations. The Court agrees with the Town Defendants that Plaintiffs' state takings and unjust enrichment claims are untimely. The Court disagrees, however, with respect to Plaintiffs' claims for nuisance and trespass.

i. State Takings

Similar to their federal takings claim, Plaintiffs' allege that Defendants' actions constitute an unlawful taking of property for which Plaintiffs are entitled to just compensation under Article 1, section 7 of the New York State Constitution. However, for the same reasons applicable to their federal takings claim, Plaintiffs' state takings claim is time-barred.

Accordingly, Plaintiffs state takings claim is DISMISSED WITH PREJUDICE.

### ii.  Unjust Enrichment

"A cause of action for unjust enrichment accrues 'upon the occurrence of the wrongful act giving rise to a duty of restitution.'"  Elliott v. Qwest Commc'ns Corp., 25 A.D.3d 897, 898, 808 N.Y.S.2d 443 (3d Dep't 2006) (quoting Congregation Yetev Lev D'Satmar v. 26 Adar N.B. Corp., 192 A.D.2d 501, 503, 596 N.Y.S.2d 435 (1993)).  Just as Plaintiffs' takings claims accrued years ago so too did any potential duty of restitution. Plaintiffs allege that "by virtue and as a proximate result of the design, reconstruction, extension, maintenance and presence of the Jetties . . . [s]and collects and builds up on the east side of the easterly jetty."  (Am. Compl. ¶¶ 68-69.)  Relatedly, "westerly beaches are scoured and starved for sand."  (Id. ¶ 70.)  Just as the "critical condition" of the westerly beaches and property was apparent in 1995 (id. ¶ 6), so too were the benefits conferred on the easterly beaches.  Accordingly, Plaintiffs' claims for unjust enrichment are now time-barred and are therefore DISMISSED WITH PREJUDICE.

### iii.  Nuisance and Trespass

In contrast, Plaintiffs' nuisance and trespass claims allege continuing wrongs, which accrue anew each day.  See Cnty. of Suffolk, N.Y., v. Travelers Ins. Co., 267 F. Supp. 2d 288,

27

296 (E.D.N.Y. 2003); Bloomingdales, Inc. v. N.Y.C. Transit Auth., 52 A.D.3d 120, 125, 859 N.Y.S.2d 22 (1st Dep't 2008). Indeed, the facts of this case mirror those in many similar cases in which courts have found that alleged continuing wrongs of nuisance and trespass were not time-barred. See, e.g., Kennedy v. United States, 643 F. Supp. 1072, 1079 (E.D.N.Y. 1986) (claims that jetties blocked normal replenishment of sand were not barred by the statute of limitations); Stanton, 266 A.D.2d at 278 (claims regarding jetty that allegedly blocked natural coastal process of sand replenishment stated claim for continuing nuisance that was not time-barred).

Therefore, the Town Defendants' motion to dismiss Plaintiffs' nuisance and trespass claims against them as time-barred is DENIED.

C. Failure to State a Claim

As the Court has not wholly adopted the Town Defendants' foregoing arguments, the analysis next turns to whether Plaintiffs have stated a claim with respect to their remaining causes of action.

1. Private Nuisance

To adequately plead the tort of private nuisance, a plaintiff must allege: "(1) an interference substantial in nature; (2) intentional [or negligent] in origin; (3) unreasonable in character; (4) with plaintiff's right to use and

enjoy land; (5) caused by defendant's conduct in acting or failing to act." Stanley v. Amalithone Realty, Inc., 31 Misc. 3d 995, 1002, 921 N.Y.S.2d 491 (N.Y. Sup. Ct. New York Cnty. 2011); see Taunus Corp. v. City of N.Y., 279 F. Supp. 2d 305, 312 (S.D.N.Y. 2003).

As a threshold matter, the Town Defendants maintain that they had a prescriptive easement to maintain the alleged private nuisance. The Court disagrees.

"An easement by prescription requires proof of the adverse, open, notorious, and continuous use of another's land for the prescriptive period." Greenhill v. Stillwell, 306 A.D.2d 434, 435, 761 N.Y.S.2d 498 (2d Dep't 2003). The Town Defendants argue that they have gained a prescriptive easement because the Jetties have been in existence for over 70 years, and any nuisance (or trespass) that they have caused has occurred for longer than the prescriptive period of ten years. "However, in order for . . . use of another's property to ripen into an easement by prescription, the party asserting the easement must make a showing 'by clear and convincing evidence' that the use" was adverse, open, notorious, and continuous. Zutt v. State of N.Y., 50 A.D.3d 1133, 1133, 856 N.Y.S.2d 245 (2d Dep't 2008). As the Town Defendants have not put forth any "clear and convincing evidence," such argument is not

appropriate at this stage in the litigation, and the Town's motion in this respect is DENIED.

With respect to the elements of a private nuisance, the Court can resolve most of the elements relatively quickly. First, Plaintiffs have alleged a substantial interference, insofar as they allege that their homes are in significant danger of essentially washing away. See, e.g., Camarda v. Vanderbilt, 100 A.D.2d 836, 836, 473 N.Y.S. 2d 831 (2d Dep't 1984) (amended complaint that alleged, inter alia, substantial interference with use and enjoyment of properties was sufficient on its face).

Second, Defendants' arguments regarding a failure to allege a property interest are based upon the premise that Plaintiffs cannot show a property interest in accretion of sand. However, Plaintiffs' nuisance claims are based upon their right to use and enjoy their own land; whether they have an interest in sand accretion does not directly pertain to this inquiry.

Third, with respect to whether the nuisance is unreasonable in character, the Court agrees with Plaintiffs that "the navigability of the channel and the protection of the Plaintiffs' properties are not mutually exclusive options." (Ps' Memo of Law in Opp. at 4, D.E. 29.) The Town Defendants maintain that its actions, if any, are not unreasonable in character because the Jetties were created under a government

policy of, _inter alia_, maintaining navigability of the Lake Montauk Harbor. (Town Ds' Memo of Law in Supp. at 30, D.E. 13-5.) This argument is more directly applicable to the Army Corps of Engineers as they have primary (or arguably exclusive) responsibility for the construction of the Jetties. In any event, the Town Defendants make an inferential leap, arguing that the creation of the Jetties in order to maintain navigability means that the Town's alleged conduct in potentially contributing to the state of affairs and failing to engage in remedial projects is reasonable. The Town's characterizations of the Amended Complaint simply do not accord with Plaintiffs' actual allegations.

The additional elements--_i.e._, whether the Town Defendants acted intentionally or negligently and whether they can be said to be a cause of the alleged nuisance--require a lengthier discussion. The Town Defendants essentially assert that the Town has not acted intentionally or negligently to cause any alleged harm because the Town's only involvement was to permit, promote, or otherwise acquiesce in the construction of the Jetties by the Army Corps of Engineers. (Id. at 20-21.) If those were the only actions by the Town, the Court would agree.

Here, however, Plaintiffs allege more than the Town's acquiescence in the initial construction of the Jetties.

Plaintiffs allege that the Town owns the land and the Jetties, the Town retains a reversionary interest in said property, and the Army Corps of Engineers maintains the Jetties pursuant to the license and easement of the Town. (Am. Compl. ¶ 51.) The Town has also agreed to '[h]old and save the United States free from claims for damages that may occur from the construction and maintenance' of the improvements authorized by the Rivers and Harbors Act." (Id. ¶ 52.) Furthermore, the Plaintiffs allege that the Town has been in frequent communication with the Army Corps of Engineers regarding the Jetties and the resultant conditions, and have made public statements, presumably to its waterfront residents.

Such actions constitute intentional conduct. "An interference is intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct." Berenger v. 261 W. L.L.C., 93 A.D.3d 175, 183, 940 N.Y.S.2d 4 (1st Dep't 2012) (internal quotation marks omitted). Here, Plaintiffs allege that the Town was aware, or was substantially certain, of the conditions, but did nothing. (Am. Compl. ¶ 7 ("[T]he Town has repeatedly recognized the Jetties as being responsible for the dramatic loss of property west of the Jetties.").) Thus, Plaintiffs have adequately alleged intentional conduct. See Chelsea 18 Partners, LP v. Sheck Yee Mak, 90 A.D.3d 38, 933

N.Y.S.2d 204 (1st Dep't 2011) ("[I]n many cases of private nuisance the intentional element is satisfied simply by a defendant's knowledge that interference with use and enjoyment will be the result of his/her intentional act.") (emphasis omitted).

Even if the Town Defendants' conduct was not intentional, Plaintiffs have also sufficiently alleged a claim for private nuisance based upon negligence. To adequately plead such a claim, the Plaintiffs must plead all elements of common-law negligence. See Taunus Corp., 279 F. Supp. 2d at 312. The elements of a common-law negligence claim are duty, breach, causation, and damages. See Doolittle v. Ruffo, 882 F. Supp. 1247, 1259 (N.D.N.Y. 1994).

The Town Defendants also maintain that Plaintiffs have not "plausibly alleged" causation.[9] (Town Ds' Memo of Law in Supp. at 24, D.E. 13-5.) Again, however, the Town Defendants rely on their assertion that the Town merely acquiesced in the construction of the Jetties. (Id. at 24-25.) The Court has rejected this characterization of Plaintiffs' allegations. Plaintiffs have sufficiently pled that the Town has been involved in, and perhaps even contributed to, the alleged

_____

[9] The Town Defendants also assert that it did not have a duty to Plaintiffs. However, the Court finds that this argument fails because, as noted with regard to whether the Town Defendants' conduct was intentional, their role was not as a "mere instrumentality," as the Town Defendants claim.

nuisance. (See Ps' Memo of Law in Opp. at 37, D.E. 29, ("The Amended Complaint repeatedly alleges and describes the Town's intentional and negligent conduct in terms of instigating, demanding and creating the Jetties in their present form, for its own benefit, failing to act notwithstanding the Town's acute knowledge of the problem and the particularly grave threats posed to the Plaintiffs' property interests herein, and in repeatedly offering false and ultimately unfulfilled promises and assurances to Plaintiffs that the Town would address the issue."). Whether Plaintiffs' have shown proximate cause is quite a different inquiry, and one the Court will not address on a motion to dismiss. See Pironti v. Leary, 42 A.D.3d 487, 489, 840 N.Y.S.2d 98 (2d Dep't 2007) ("Generally, issues of proximate cause are to be decided by the jury.").

Thus, the Town Defendants' motion to dismiss Plaintiffs' private nuisance claim is DENIED.

2. Public Nuisance

The Town Defendants further argue that Plaintiff's public nuisance claims suffer from the same deficiencies as their private nuisance claims. The elements for public and private nuisance are generally the same. See Suffolk Cnty. Water Auth. v. Dow Chem. Co., 30 Misc. 3d 1202(A) (Sup. Ct. Suffolk Cnty. 2010). Thus, for the same reasons addressed with

respect to the private nuisance claims, the Court finds that Plaintiffs have also stated a claim for public nuisance.

The Town Defendants also assert, however, that Plaintiffs lack standing to bring their public nuisance claims. A nuisance is public if "a public right or privilege common to every person in the community is interrupted or interfered with" or when it is "committed in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community." NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 448 (E.D.N.Y. 2003).

The Town Defendants assert that Plaintiffs lack standing to bring their public nuisance claim because they have not alleged an injury different from others. See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y.2d 280, 292, 750 N.E. 2d 1097, 727 N.Y.S. 2d 49 (2001) ("A public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large.").

Here, Plaintiffs have alleged that "[t]he absolute public nuisance created by . . . the Jetties has caused, and is continuing to cause, particular injury to plaintiffs as a result of their unique location as littoral property owners immediately to the west and down drift of the Jetties." (Am. Compl. ¶ 111.)

"The question here is whether plaintiffs have suffered a special injury beyond that of the community so as to support their damages claims for public nuisance." 532 Madison Ave. Gourmet Foods, Inc., 96 N.Y.2d at 293. The Court finds that Plaintiffs here have adequately alleged special injury.

Contrary to the Town Defendants' suggestion, the proper inquiry is not whether Plaintiffs have alleged an injury different in kind from other property owners on the shore west of the Jetties. (See Town Ds' Memo of Law in Supp. at 32, D.E. 13-5, (Plaintiffs "do not allege how they are situated any differently than many other individuals and entities, not named as plaintiffs, who own property on the shore to the west of the jetties.").) Rather, it is whether Plaintiffs have alleged an injury different in kind from the community at large. See Wheeler v. Lebanon Valley Auto Racing Corp., 303 A.D.2d 791, 793, 755 N.Y.S.2d 763 (3d Dep't 2003) ("[W]here the claimed injury is 'common to the entire community,' a private right of action is barred.").

Plaintiffs' allegations demonstrate potential impacts upon the community at large, such as, for instance, changes in beaches and effects on navigability and fishing in the Lake Montauk Harbor area. Injury to Plaintiffs' real property, though, differs both in kind and degree from that of the community as a whole. See Black v. George Weston Bakeries,

Inc., No. 07-CV-0853, 2008 WL 4911791, at *7 (W.D.N.Y. Nov. 13, 2008) ("Pleading a diminution in value of one's home and property qualifies as special damages for purposes of establishing standing in a public nuisance suit."); Iannucci v. City of N.Y., No. 02-CV-6135, 2006 WL 1026432, at *4 (E.D.N.Y. Apr. 19, 2006) ("While the entire community is injured in that its access to public streets and sidewalks is restricted due to defendants' illegal parking, plaintiff has sustained 'special injuries' in that his driveways and parking lots are blocked and the value of his properties has decreased as a result of the parking.").

Accordingly, the Town Defendants' motion to dismiss Plaintiffs' public nuisance claim is DENIED.

### 3. Trespass

Next, the Town Defendants maintain that Plaintiffs have failed to state a claim for trespass because "erosion along the ocean does not affect a trespass" and plaintiffs "fail to allege the requisite level of intent.[10]" (Town Ds' Memo of Law in Opp. at 34.) "Under New York law, trespass is the intentional invasion of another's property." Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996).

---

[10] The Town Defendants also argue that they did not "purposefully direct the oceans currents onto plaintiffs' property through a system of pipes or ditches." (Town D's Memo of Law in Opp. at 34.) The Court reads this to be a reiteration of their argument that Plaintiffs have not alleged intent.

With respect to the Town Defendants' assertion that "erosion along the ocean does not affect a trespass," (Town Ds' Memo of Law in Opp. at 34) Plaintiffs apparently do not base their trespass claim on this premise.  Instead, they claim that the Town has trespassed through the entry of waters onto Plaintiffs' land.  See Berenger, 93 A.D. 3d at 181 (noting that trespass includes entry of water onto land).

With respect to the Town Defendants' arguments regarding intent, "[i]ntent is defined as intending the act which produces the unlawful intrusion, where the intrusion is an immediate or inevitable consequence of that act."  Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland, 101 A.D.3d 853, 855, 956 N.Y.S.2d 102 (2d Dep't 2012).  Plaintiffs' allegations, which the Court assumes are true on a motion to dismiss, state that the Town acted with the intent to cause the "'repair and extension shoreward' of the Jetties."  (Am. Compl. ¶ 42.)  They have also alleged that the Town, although it may not have been involved in the exact design and specifications of the project, intended to restore the Jetties, including preventing the further passage of sand through them.  (Id.)  Whether Plaintiffs' allegations ultimately demonstrate the Town's involvement to a level justifying liability is not before the Court at this time.  At this stage, on a motion to dismiss, Plaintiffs have alleged the requisite intent.

Thus, the Town Defendants' motion to dismiss Plaintiffs' trespass claims is DENIED.

D.  Individual Liability of Wilkinson for Section 1983 Claims

Finally, the Town Defendants maintain that Plaintiffs have failed to allege any individual liability by Defendant Wilkinson, and therefore Plaintiffs' Section 1983 claims against him should be dismissed.  The Court agrees.

In order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation.  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  The Supreme Court held in Iqbal, that "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  556 U.S. at 676.  A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law.  See Johnson v. Barney, 360 F. App'x 199 (2d Cir. 2010).

Nowhere in the Amended Complaint do Plaintiffs allege any personal involvement by Wilkinson and his name is almost completely absent from the Complaint in general.  Therefore,

Plaintiffs' Section 1983 claims against Wilkinson (Counts V and VI) are DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is GRANTED and the Town Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Town Defendants' motion is DENIED as to Plaintiffs' nuisance and trespass claims against them, and GRANTED as to Plaintiffs' federal claims, state takings, negligence, unjust enrichment, and appropriation of resource claims. The State Defendants' motion is GRANTED.

However, as previously noted, the Second Circuit has stated that "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court grants Plaintiffs leave to amend to assert a claim of individual liability against Wilkinson under 42 U.S.C. § 1983. In addition, Plaintiffs are granted leave to amend to clarify their claims for injunctive and declaratory relief as against Defendants, and to specify the specific causes of action under

which they seek such relief to the extent such causes of action remain viable.

If Plaintiffs wish to file a Second Amended Complaint, they must do so on or before May 1, 2013. If Plaintiffs do not file a Second Amended Complaint by the specified date, the State Defendants and Defendant Wilkinson will be dismissed as defendants in this action.

Furthermore, the Clerk of the Court is directed to amend the docket to include Gale H. Ritterhoff as a plaintiff in this action.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:    March   29  , 2013
          Central Islip, New York