UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
THOMAS CANGEMI, JODI CANGEMI,
MARIANN COLEMAN, FRANCIS J. DEVITO,
LYNN R. DEVITO, LEON KIRCIK,
ELIZABETH KIRCIK, CAROL C. LANG,                    MEMORANDUM & ORDER
TERRY S. BIENSTOCK, DANIEL                          12-CV-3989(JS)(SIL)
LIVINGSTON, VICTORIA LIVINGSTON,
ROBIN RACANELLI, JAMES E.
RITTERHOFF, GALE H. RITTERHOFF,
ELSIE V. THOMPSON TRUST, JOHN TOMITZ,
and THELMA WEINBERG TRUSTEE OF THE
THELMA WEINBERG REVOCABLE LIVING
TRUST,

                        Plaintiffs,

        -against-

THE UNITED STATES OF AMERICA; THE
U.S. ARMY CORPS OF ENGINEERS; COL.
JOHN R. BOULE II, individually and
in his official capacity; WILLIAM J.
WILKINSON, individually and in his
Official capacity; and THE TOWN
OF EAST HAMPTON,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiffs:         Jonathan Halsby Sinnreich, Esq.
                        Timothy F. Hill, Esq.
                        Sinnreich Kosakoff & Messina LLP
                        267 Carleton Ave., Suite 301
                        Central Islip, New York 11722

For Defendants:
The U.S.A., U.S.
Army Corps of
Engineers, and
Boule                   Vincent Lipari, Esq.
                        United States Attorney's Office
                        Eastern District of New York
                        610 Federal Plaza, 5th Fl.
                        Central Islip, New York 11722

```
Town of East
Hampton:              Anthony F. Cardoso, Esq.
                      Steven C. Stern, Esq.
                      Sokoloff Stern LLP
                      179 Westbury Ave.
                      Carle Place, New York 11514
```

SEYBERT, District Judge:

Plaintiffs bring this action against the United States of America, the U.S. Army Corps of Engineers ("USACE"), and Col. John R. Boule II, individually and in his official capacity, ("Col. Boule" and, collectively, the "Federal Defendants") as well as the other remaining defendant, the Town of East Hampton, to redress damage to Plaintiffs' real property that they allege has been caused by the Lake Montauk Harbor jetties (the "Jetties"). Currently pending before the Court is the Federal Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim. (Docket Entry 71.) For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

The Court assumes familiarity with the facts of this case, which are chronicled in the Court's Memorandum and Order

---

[1] The facts alleged in the Amended Complaint are presumed to be true for the purposes of this Memorandum and Order. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)).

dated March 29, 2013.  Cangemi v. United States, 939 F. Supp. 2d 188 (E.D.N.Y. 2013).  The salient details are discussed below.

Plaintiffs own waterfront property in Montauk, New York that is allegedly being damaged by the Jetties.  (Am. Compl., Docket Entry 18, ¶¶ 2, 68-70.)  As an initial point, private parties constructed the Jetties in the 1920s.  (Am. Compl. ¶ 41.) After the Jetties fell into disrepair, the USACE requested that Congress approve and fund a project for the "repair and extension" of the Jetties.  (Am. Compl. ¶¶ 41-42.)  Congress approved the project in 1945, directing the USACE to perform periodic dredging to maintain a navigational channel for Lake Montauk Harbor.  (Am. Compl. ¶¶ 54-55.)  The work was completed in 1968.  (May 1995 Project Study Plan, Lipari Decl. Ex. F, Docket Entry 73-6, at 10[2] (noting that the "[e]ast jetty repair and west jetty repair" was completed in 1968).)

Decades later, Congress directed the USACE to perform a planning study on the Jetties through a congressional resolution in 1991 and again in 2002 (the "1999 Resolution" and the "2002 Resolution," respectively).  (See 1999 Resolution, Lipari Decl. Ex. I, Docket Entry 73-9; 2002 Resolution, Lipari Decl. Ex. M, Docket Entry 73-13.)  The 1999 Resolution required the USACE "to

---

[2] For the purposes of this Memorandum and Order, the Court will use the page numbers generated by the Electronic Case Filing System when referring to the parties' exhibits.

determin[e] if further improvements for navigation are advisable."
(1999 Resolution at 2.)  Similarly, the 2002 resolution directed
the USACE "to determine the need for measures to address storm
damage reduction, shoreline protection, environmental restoration
and protection . . . in the vicinity of Lake Montauk Harbor."
(2002 Resolution at 2.)  As discussed below, the USACE needed to
perform a feasibility study to determine whether Congress would
fund and authorize a project.  (July 1, 2014 USACE Report, Lipari
Decl. Ex. J, Docket Entry 73-10, at 3 ("Congressional authorization
for construction is based on the feasibility study.").)  To date,
the feasibility study has not yet been completed.  (See Am. Compl.
¶¶ 80-81; see generally Sinnreich Decl., Docket Entry 80, ¶¶ 32-
46.)

        Essentially, Plaintiffs contend that the Jetties have
caused  accelerated  erosion,  which  has  damaged  Plaintiffs'
waterfront properties.  (See, e.g., Am. Compl. ¶¶ 68-70.)  The
Jetties, they allege, prevent the natural replenishment of sand
onto their property and leave the properties vulnerable to further
damage.  (Am. Compl. ¶¶ 5, 70.)  Plaintiffs allegedly incurred
"millions of dollars in damages and loss and injury to [their]
property." (Am. Compl. ¶ 78.)  Plaintiffs assert that the Federal
Defendants and the Town of East Hampton are aware of the "negative
impacts of the Jetties upon plaintiffs' property . . . [but] have

failed to take timely and effective actions to resolve and/or mitigate the damage."  (Am. Compl. ¶¶ 80-81.)

Plaintiffs filed this lawsuit on April 17, 2014.  (Docket Entry 1.)  As relevant to the Federal Defendants, the Amended Complaint asserts eleven causes of actions.  Five counts arise under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 (collectively, the "FTCA Claims"): negligence (Count I), private nuisance (Count II), public nuisance (Count III), appropriation of resource – interference with property (Count VII), and trespass (Count IX).  (Am. Compl. ¶¶ 86-112, 131-40.)  Counts V, VI, and X allege that the Federal Defendants deprived Plaintiffs of, and unlawfully took, their property in violation of the Constitution (collectively, the "Taking Claims").  (Am. Compl. ¶¶ 118-126, 141-43.)  Count XII seeks, under the Administrative Procedure Act ("APA"), judicial review and injunctive relief (the "APA Claim").  (Am. Compl. ¶¶ 147-51.)  Finally, Counts XIII and XIV seek injunctive relief and a declaratory judgment, respectively.  (Am. Compl. ¶¶ 152-63.)

Defendants now move to dismiss the Amended Complaint.  (Docket Entry 71.)  In support, Defendants make three principal arguments: (1) the FTCA Claims are barred by the discretionary function exception (the "DFE"), and thus the Court does not have subject matter jurisdiction to adjudicate them (Defs.' Br., Docket Entry 72, at 3-19); (2) under the Tucker Act, the Federal Court of

Claims has exclusive jurisdiction over the Taking Claims (Defs.'
Br. at 20-22); and (3) the remaining claims--the APA Claim and
Counts XIII and XIV--fail to state a claim (Defs.' Br. at 23-26).

In opposition, Plaintiffs primarily attack the DFE,
arguing that the exception does not apply because the USACE
violated directives that were mandatory, not discretionary.
(Pls.' Br., Docket Entry 79, at 5-28.) Otherwise, to the extent
that the Amended Complaint fails to state a claim for the FTCA
Claims and all others, Plaintiffs seek permission to file a Second
Amended Complaint, which would "identif[y] more specifically the
statutes, regulations and policies . . . that give rise to
plaintiff's claims." (Pls.' Br. at 33-34.)

DISCUSSION

I.  <u>Legal Standards</u>

A.  <u>Legal Standard for a Rule 12(b)(1) Motion</u>

To survive a motion to dismiss under 12(b)(1), a
plaintiff must establish subject matter jurisdiction. <u>See</u>
<u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). In
resolving the motion, the Court may consider affidavits and other
materials beyond the pleadings to resolve jurisdictional
questions. <u>See</u> <u>id.</u> (citing <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d
1006, 1011 (2d Cir. 1986)). The Court must accept as true the
factual allegations contained in the Complaint, but it will not
draw argumentative inferences in favor of Plaintiffs because

subject matter jurisdiction must be shown affirmatively. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted).

B.    Legal Standard for a Rule 12(b)(6) Motion

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the Amended Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit,

materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted).

## II. The FTCA Claims

### A. Proper Defendants

As an initial matter, the United States is the only proper defendant for the FTCA Claims. See 28 U.S.C. §§ 1346(b)(1), 2679(b)(1). Indeed, the FTCA "authorizes suits only against the United States and not against federal agencies and federal officials acting in their official capacities." See, e.g., Barnes v. United States, No. 00-CV-3544, 2004 WL 957985, at *2 (E.D.N.Y. Apr. 12, 2004) (citations omitted). Thus, the FTCA Claims are DISMISSED as against the USACE and Col. Boule.

### B. Discretionary Function Exception

The Federal Defendants argue that the FTCA Claims must be dismissed against the United States for lack of subject matter jurisdiction under the DFE. (Defs.' Br. at 4-19); see 28 U.S.C. § 2680. The Court disagrees.

#### 1. Separation of Powers

As a preliminary matter, Plaintiffs request that the Court compel the USACE to take action:

> As far as anyone can perceive, the project continues to flounder in a cycle of negotiations and bureaucratic minutiae and

> will continue to do so <u>unless and until this</u>
> <u>Court compels the USACE to take final and</u>
> <u>effective action</u> to fulfill the Congressional
> mandate imposed upon it in 1991 to complete
> its study and fix the problem.

(Sinnreich Decl. ¶ 46 (internal quotation marks omitted; emphasis added).) That request is denied on two grounds. First, under the FTCA, Plaintiffs are entitled only to money damages, not injunctive relief. <u>See</u> <u>Rufu v. United States</u>, 876 F. Supp. 400, 406 (E.D.N.Y. 1994) ("The only form of relief provided in the Federal Tort Claims Act is money damages."). Second, as discussed further below, Plaintiffs' request is barred by the separation of powers doctrine.

Separation of powers mandates that "one branch of the Government may not intrude upon the central prerogatives of another." <u>Loving v. United States</u>, 517 U.S. 748, 757, 116 S. Ct. 1737, 1743, 135 L. Ed. 2d 36 (1996). As "[t]he wellspring of the discretionary function is the doctrine of separation of powers," <u>In re Joint E. & S. Dists. Asbestos Litig.</u>, 891 F.2d 31, 35 (2d Cir. 1989), this Court cannot decide questions reserved for Congress. <u>In re World Trade Ctr. Disaster Site Litig.</u>, 521 F.3d 169, 192 (2d Cir. 2008) ("[T]he discretionary function exception serves to protect the principles embodied in the separation of powers doctrine by keeping the judiciary from deciding questions consigned to the executive and legislative branches of the government." (internal quotation marks and citations omitted)).

Thus, the decision to approve a USACE project is for Congress, not the judiciary.  See Cty. of Vernon v. United States, 933 F.2d 532, 535 (7th Cir. 1991); see also State of Okla. v. Guy F. Atkinson Co., 313 U.S. 508, 527, 61 S. Ct. 1050, 1060, 85 L. Ed. 2d 1487 (1941) ("Such matters raise not constitutional issues but questions of policy.  They relate to the wisdom, need, and effectiveness of a particular project.  They are therefore questions for the Congress[,] not the courts.").[3]

"Congress directs the [USACE] through authorizations, appropriations, and oversight of its studies, construction projects, and other activities."  (July 1, 2014 USACE Report at 3.)  USACE activities proceed with the following process:

> Standard Project Development.  The standard process for a [USACE] project requires two separate congressional authorizations--one for investigation and one for construction-- as well as appropriations.  The investigation phase starts with Congress authorizing a study; if it is funded, the [USACE] conducts an initial reconnaissance study followed by a more detailed feasibility study. Congressional authorization for construction is based on the feasibility study.

---

[3] Various circuits have repeated this refrain.  See, e.g., Concerned Residents of Buck Hill Falls v. Grant, 537 F.2d 29, 35 (3rd Cir. 1976); United States v. White, 869 F.2d 822, 829 (5th Cir. 1989); Derryberry v. Tennessee Valley Auth., 182 F.3d 916 (Table), 1999 WL 519323, at *2 (6th Cir. 1999); Taylor Bay Protective Ass'n v. Adm'r, U.S. E.P.A., 884 F.2d 1073, 1080 (8th Cir. 1989); Guerrero v. Clinton, 157 F.3d 1190, 1195 (9th Cir. 1998); United States v. Erves, 880 F.2d 376, 380 (11th Cir. 1989); Natural Res. Def. Council, Inc. v. Hodel, 865 F.2d 288, 318-19 (D.C. Cir. 1998).

(July 1, 2014 USACE Report at 3); see also 33 U.S.C. § 2282(a)(1)

(requiring "specific authorization by Congress" for "any water

resources project-related study").  In sum, the Court will not

direct the USACE to complete the project.  See Rufu, 876 F. Supp.

at 406.  The Court must now analyze whether the DFE applies.

### 2.  The Discretionary Function Exception

Generally, the FTCA has waived sovereign immunity for

any claims against the United States for recovery:

> for injury or loss of property, or personal
> injury or death caused by the negligent or
> wrongful act or omission of any employee of
> the Government while acting within the scope
> of his office or employment, under
> circumstances where the United States, if a
> private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  One exception to this waiver, however, is

the DFE, which bars "[a]ny claim  . . . based upon the exercise or

performance or the failure to exercise or perform a discretionary

function."  28 U.S.C. § 2680(a); accord 28 U.S.C. §§ 1346(b)(1).

The purpose of this exception is to balance "Congress' willingness

to impose tort liability upon the United States and its desire to

protect certain governmental activities from exposure to suit by

private individuals."  United States v. S.A. Empresa de Viaco Aerea

Rio Grandense (Varig Airlines), 467 U.S. 797, 808, 104 S. Ct. 2755,

2762, 81 L. Ed. 2d 660 (1984).  In keeping with Congress's intent,

"'the FTCA, as a remedial statute, should be construed liberally,

and its exceptions should be read narrowly.'" Cohen v. United States, No. 98-CV-2604, 2004 WL 502924, at *7 (E.D.N.Y. Jan. 29, 2004) (quoting O'Toole v. United States, 295 F.3d 1029, 1037 (9th Cir. 2002)); see Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1999) ("[I]f the word 'discretionary' is given a broad construction, it could almost completely nullify the goal of the [FTCA]." (internal quotation marks in original)).

Plaintiffs bear the initial burden of proving that their claims fall outside the scope of the DFE. Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013). If the DFE applies, the Court is deprived of subject matter jurisdiction, and the case must be dismissed. See Caban v. United States, 671 F.2d 1230, 1235 n.5 (2d Cir. 1982) (citations omitted); FED. R. CIV. P. 12(b)(1).

Through a pair of cases, the Supreme Court articulated a two-prong test to assess whether the DFE applies: Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S. Ct. 1954, 1958-59, 100 L. Ed. 2d 531 (1988) and United States v. Gaubert, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 1273-74, 113 L. Ed. 2d 335 (1991). As the Second Circuit summarized, the two requirements are as follows: "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or

12

susceptible to policy analysis." <u>Coulthurst v. United States</u>, 214 F.3d 106, 109 (2d Cir. 2000) (internal quotation marks and citations omitted).

This Court's analysis begins and ends with the first prong.[4] Simply stated, an act is discretionary if the employee's conduct is "the product of judgment or choice." <u>See</u> <u>Berkovitz</u>, 486 U.S. at 536, 108 S. Ct. at 1959. On the other hand, an employee has no discretion "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and thus "the employee has no rightful option but to adhere to the directive." <u>Id.</u>, 108 S. Ct. at 1958-59.

---

[4] The Court notes, however, that the challenged action is either grounded in policy concerns or, at the very least, susceptible to policy analysis. <u>Gaubert</u>, 499 U.S. at 324-25, 111 S. Ct. at 1274-75; <u>see also</u> <u>In re Joint E. & S. Dists. Asbestos Litig.</u>, 891 F.2d at 37 ("[I]t is unimportant whether the government actually balanced economic, social, and political concerns in reaching its decision."). One of the primary purposes of the federal improvements was to provide a safe harbor for commercial vessels, sport-fishing vessels, and recreational crafts. (H.R. Doc. No. 369, Lipari Decl. Ex. C, Docket Entry 73-3, at 3, ¶ 3; <u>see</u> Lipari Decl., Docket Entry 73, ¶ 36.) The federal improvements also provided commercial benefits because commercial fishermen, with a safe harbor, could operate year-round without the need to transfer their activities during the winter. (H.R. Doc. No. 369 at 19, ¶ 63 ("These fishermen are handicapped, particularly during the winter months, due to the unprotected nature of Fort Pond Bay.").) Moreover, Congress specifically authorized the USACE "to determine the need for measures to address storm damage reduction, shoreline protection, environmental restoration and protection and other allied purposes in the vicinity of Lake Montauk Harbor, East Hampton, New York." (2002 Resolution, at 2.)

This Court has already recognized that the USACE has broad discretion in managing any water resources-related project. See DeVito v. United States, No. 95-CV-2349, 1997 WL 1038120, at *10 (E.D.N.Y. 1997), R&R adopted by, 12 F. Supp. 2d 269 (E.D.N.Y. 1998). Indeed, Congress has delegated this discretionary duty to the USACE, in part, through Title 33, Section 1 of the United States Code, which spell out the USACE's duties:

> It shall be the duty of the Secretary of the Army to prescribe such regulations for the use, administration, and navigation of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement . . . .

33 U.S.C. § 1 (emphasis added). Thus, "Congress . . . has given the [USACE] broad discretion to manage its navigational civil works." Slappey v. United States Army Corps. of Engineers, 571 F. App'x 855, 858 (11th Cir. 2014)

Without a congressional directive, Plaintiffs claim that the USACE violated various regulations and guidelines: (1) USACE Regulation ER 1105-2-100, Section 4-1(a)(2); (2) Water Resources Development Act of 2007; (3) project "milestones;" (4) Section 111 of the River and Harbor Act of 1968; (5) 3 X 3 X 3 Paradigm; and (6) Feasibility Cost Sharing Agreement (the "FCSA"). (Pls.' Br. at 14-20); accord Berkovitz, 486 U.S. at 536, 108 S. Ct. at 1958 ("[T]he discretionary function exception will not apply when a

federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.").[5]  The Court will address each one in turn.

Plaintiffs' first argument--that USACE regulations required the feasibility study to be completed within thirty-six months--is meritless.  (Pls.' Br. at 14-15.)  Section 4-1(a)(2) of the USACE Regulation provides that "[t]he objective of feasibility studies is to investigate and recommend solutions to water resources problems. . . . <u>Typical studies should be completed in 18-36 months.</u>"  (USACE Regulation ER 1105-2-100, Sinnreich Decl. Ex. 29, Docket Entry 80-25, at 2 (emphasis added).)  Of course, a "typical" study does not mean every study, nor does the word "should" issue a mandatory command.  <u>See</u> <u>United States v. Maria</u>, 186 F.3d 65, 70 (2d Cir. 1999) ("[T]he common meaning of 'should' suggests or recommends a course of action . . . .").

The next argument offered by Plaintiffs--that the USACE violated the Water Resources Development Act of 2007 by failing to complete the feasibility studies within two or four years--is likewise without merit.  (Pls.' Br. at 15-16.)  The Water Resources Development Act of 2007 provides, in pertinent part:

---

[5] Although the Amended Complaint does not discuss all of these regulations and guidelines, the Court is permitted to review evidence outside the complaint to determine whether the Court has subject matter jurisdiction.  <u>See</u> <u>Makarova</u>, 201 F.3d at 113 (citing <u>Kamen</u>, 791 F.2d at 1011).

> The Chief of Engineers shall establish, <u>to the extent practicable</u>, under paragraph (1) benchmark goals for completion of feasibility studies for water resources projects <u>generally within 2 years</u>. In the case of feasibility studies that the Chief of Engineers determines may require additional time based on the project type, size, cost, or complexity, the benchmark goal for completion shall be <u>generally within 4 years</u>.

33 U.S.C. § 2282a(c)(2) (emphasis added). Courts in this Circuit and elsewhere have determined that the phrase "to the extent practicable" or its derivatives do not constitute a prescribed course of action. <u>See, e.g.</u>, <u>DeVito</u>, 1997 WL 1038120 at *7 (finding that a provision requiring compliance "to the maximum extent practicable" provided "some degree of latitude" and thus was not an "absolute mandate"); <u>Rosebush v. United States</u>, 119 F.3d 438, 442 (6th Cir. 1997) ("Decisions concerning what constitutes 'practicable' require the exercise of discretion which is protected by FTCA § 2680(a)." (internal quotation marks in original)); <u>Aragon v. United States</u>, 146 F.3d 819, 824 ("'As may be practicable' is a prime example of discretionary language, which gave federal agencies a choice or judgment on what action to take, <u>if any</u>." (internal quotation marks and emphasis in original; alteration omitted)).

Plaintiffs also claim that certain project "milestones" provide a mandatory timeline to complete a feasibility study. (Pls.' Br. at 17-19.) But none of these milestones appear to

contain any provisions that make the proposed completion dates mandatory. (See, e.g., May 1995 Project Study Plan; Aug. 2002 Project Mgmt. Plan, Sinnreich Decl. Ex. 14, Docket Entry 80-12, at 3.)

Nor is there merit to Plaintiffs' argument concerning Section 111 of the River and Harbor Act of 1968. (Pls.' Br. at 19-20.) Rather, the Court embraces the insights articulated in Save the Dunes Council v. Alexander, in which the Seventh Circuit analyzed Section 111's applicable statute--33 U.S.C. § 426i--to determine whether it authorized discretionary actions. 584 F.2d 158, 161 (7th Cir. 1978). Ultimately, the court determined that "the language of [§] 426i and the congressional intent in enactment grant and authorize only discretionary decision of action or non-action." Id. at 165. The Court follows the Seventh Circuit's lead and finds that Section 111 is discretionary, not mandatory.

But the Court is persuaded that the 3 X 3 X 3 Paradigm and the FCSA provide a "prescribe[d] . . . course of action." Berkovitz, 486 U.S. at 536, 108 S. Ct. at 1958; (Pls.' Br. at 16-17, 19). First, under the 3 X 3 X 3 Paradigm, all feasibility studies must be completed within three years, cost no more than $3 million, and require three levels of review by the vertical team. (Feb. 8, 2012 Mem., Sinnreich Decl. Ex. 27, Docket Entry 80-24, at 4-5, ¶¶ 5(a)(i)-(ii).) The 3 X 3 X 3 Paradigm provides, in relevant part, the following:

> 5. Conduct of Ongoing Feasibility Studies –
> Section 2033(c) of the Water Resources
> Development Act of 2007 directs that the
> benchmark goal for feasibility study
> completion be within 2 years, or generally up
> to 4 years subject to the Chief determining
> that the additional time is required due to
> the project type, size, cost, or complexity.
> Assuming adequate and timely appropriation of
> funding, these requirements are consistent
> with the principles of the new Planning
> Paradigm and with our current Planning
> Guidance (Par 4-1a(2) of ER 1105-2-100) which
> states that typical feasibility studies should
> be completed in 18-36 months. Therefore, the
> following changes will be applied to <u>all
> feasibility studies that have not reached a
> Feasibility Scoping Meeting (FSM) by 31
> December 2011</u>:
>
>> a. <u>All feasibility studies will follow a
>> 3x3x3 rule and will be completed in a
>> target goal of 18 months but no more than
>> three years</u>; cost no greater than $3M and
>> a reasonable report size.

(Feb. 8, 2012 Mem. at 4 (emphasis added).) As the Federal

Defendants correctly point out, the 3 X 3 X 3 Paradigm is designed

to be consistent with the Water Resources Development Act of 2007

and USACE Regulation ER 1105-2-100, Section 4-1(a)(2)--both of

which do not issue mandatory timelines. (Defs.' Reply Br., Docket

Entry 85, at 16.) But in the very last sentence of Section 5(a),

the 3 X 3 X 3 Paradigm unambiguously states that if a Feasibility

Scoping Meeting was not conducted by December 31, 2011, "[a]ll

feasibility studies . . . will be completed in a target goal of 18

months but no more than three years . . . . ." (Feb. 8, 2012 Mem.

at 4.) Based on the record, the Court does not see that the

Federal Defendants reached a Feasibility Scoping Meeting during the applicable timeframe.  Thus, since the memorandum is dated February 8, 2012, the Federal Defendants were required to complete the feasibility study by February 8, 2015, the three-year outer limit.  By doing so, the Amended Complaint and Plaintiffs' outside evidence plausibly allege that the Federal Defendants violated a mandatory directive.

Moreover, the FCSA provides that "[t]he Government, using funds and in-kind services provided by the State and funds appropriated by the Congress of the United States, <u>shall</u> expeditiously prosecute and <u>complete the [feasibility] Study</u>." (FCSA, Lipari Decl. Ex. N, Docket Entry 73-14, at 4, Article II. A.)  The operative word here is "shall."  As the Second Circuit explained in <u>Maria</u>, "the ordinary understanding of 'shall' describes a course of action that is mandatory."  186 F.3d at 70 (internal quotation marks in original).  Thus, the Federal Defendants' motion to dismiss is DENIED as to the FTCA Claims against the United States.

III. <u>The Taking Claims</u>

The Taking Claims assert that the Federal Defendants: (1) "deprived plaintiffs of their property without due process of law," (Am. Compl. ¶ 119); (2) "treated plaintiffs differently than . . . similarly situated" waterfront landowners, (Am. Compl. ¶¶ 122-23); and (3) thus, caused "an unlawful taking of property

for which plaintiffs are entitled to just compensation under the Fifth and Fourteenth Amendments to the United States Constitution" (Am Compl. ¶ 142). All three counts seek damages in excess of $25 million. (Am. Compl. ¶¶ 120, 126, 143.)

A. Sovereign Immunity

To the extent that the Taking Claims assert constitutional tort claims, they are barred by sovereign immunity. Absent a waiver, sovereign immunity insulates the United States and its agencies from suit. Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005) (citations omitted). The United States has not waived its sovereign immunity for any constitutional tort claims against itself or its agencies. (Defs.' Br. at 20 (citing Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994))). "Because sovereign immunity is jurisdictional in nature," these claims would be dismissed for lack of subject matter jurisdiction. See Hollman v. Lindsay, No. 08-CV-1417, 2009 WL 3112076, at *8 (E.D.N.Y. Sept. 25, 2009).

B. The Tucker Act

But even if the Taking Claims assert non-constitutional tort claims, they must also be dismissed for lack of subject matter jurisdiction. The Tucker Act vests the Unites States Court of Federal Claims with exclusive jurisdiction over non-tort claims seeking more than $10,000 in damages:

> The United States Court of Federal Claims
> shall have jurisdiction to render judgment
> upon any claim against the United States
> founded either upon the Constitution, or any
> Act of Congress or any regulation of an
> executive department, or upon any express or
> implied contract with the United States, or
> for liquidated or unliquidated damages in
> cases not sounding in tort.

28 U.S.C. § 1491(a); Bang Shun Lin v. Napolitano, No. 12-CV-5951, 2013 WL 866506, at *1 (E.D.N.Y. Mar. 8, 2013) ("Since plaintiffs seek more than $10,000 in damages, exclusive jurisdiction lies in the Court of Federal Claims under the Tucker Act."). Here, all three counts of the Taking Claims seek well over $10,000 in damages. (Am. Compl. ¶¶ 120, 126, 143.) Thus, as to the United States and the USACE, the Taking Claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. See JetBlue Airways Corp. v. CopyTele Inc., No. 15-CV-0086, 2015 WL 6161774, at *1 (2d Cir. Oct. 21, 2015) ("'Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.'") (quoting Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999)).

Anticipating the Court's ruling, Plaintiffs request that the Court transfer the Taking Claims against the United States to the Court of Federal Claims. (Pls.' Br. at 32-33.) The applicable statute provides that:

> [t]he United States Court of Federal Claims
> shall not have jurisdiction of any claim for
> or in respect to which the plaintiff or his

> assignee has pending in any other court any
> suit or process against the United States or
> any person who, at the time when the cause of
> action alleged in such suit or process arose,
> was, in respect thereto, acting or professing
> to act, directly or indirectly under the
> authority of the United States.

28 U.S.C. § 1500. The purpose of the statute was "to prevent the United States from having to litigate and defend against the same claim in [two] courts." Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004). The Court of Federal Claims has no jurisdiction to hear the suit "if the same claim is pending in another court at the time the complaint is filed in the Claims Court." UNR Indus., Inc. v. United States, 962 F.2d 1013, 1021 (Fed. Cir. 1992). As the Federal Circuit clarified, "two lawsuits involve the same claim if they are based on the same operative facts." Id. (internal quotation marks omitted). Here, the FTCA Claims, the Taking Claims, and the APA Claim arise out of the same allegation--that the Federal Defendants were aware of the "negative impacts of the Jetties upon plaintiffs' property . . . [but] have failed to take timely and effective actions to resolve and/or mitigate the damage." (Am. Compl. ¶¶ 80-81.) Thus, the Court will not transfer the Taking Claims because the Court of Federal Claims does not have jurisdiction.

C.   Individual Liability under Section 1983

To the extent that the Taking Claims rely on individual liability under Section 1983, they must be dismissed against Col.

22

Boule. "[A] Section 1983 claim does not exist against federal agents because they are not state actors for purposes of Section 1983." Faison v. Maccarone, No. 11-CV-0137, 2012 WL 681812, at *11 (E.D.N.Y. Mar. 1, 2012). Rather, allegations that a government official violated the Constitution are properly brought through a claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). Accord Iqbal, 556 U.S. at 676, 129 S. Ct. at 1948 (To state a Bivens claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). But even if this Court construed the claim under Bivens, it still fails. The Amended Complaint lacks any allegations that Col. Boule was personally involved in any constitutional deprivation. (See generally Am. Compl.) In fact, the Amended Complaint only references Col. Boule once—by identifying him as a Commander of the USACE. (Am. Compl. ¶ 27.) Thus, as to Col. Boule, the Taking Claims are DISMISSED.

IV.  The APA Claim

Through the APA Claim, Plaintiffs seek judicial review that the USACE's actions were "arbitrary, capricious and not in accordance with law." (Am. Compl. ¶ 149.) Plaintiffs contend that the USACE "cause[d] and contribute[d] to the maintenance of an ongoing nuisance." (Am. Compl. ¶ 150.) Plaintiffs argue that the APA entitles them to a "mandatory permanent injunction"

ordering the USACE "to abate, mitigate, and permanently remedy and prevent the further destructive impact of the Jetties on plaintiffs' properties and the public beaches and foreshore." (Am. Compl. ¶ 151.)

Plaintiffs assert that the United States has waived sovereign immunity under the APA. (Pls.' Br. at 29-32.) Not so. The scope of the waiver under the APA is limited to equitable relief. 5 U.S.C. § 702 ("[A] claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States."); see also 5 U.S.C. § 706(a)(1) (providing that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed"). By contrast, "[t]he FTCA limits its waiver of sovereign immunity to plaintiffs seeking monetary relief." Diaz-Bernal v. Myers, 758 F. Supp. 2d 106, 119 (D. Conn. 2010).

Where, as here, a plaintiff's APA claim arises under the FTCA, the APA is inapplicable. Beale v. Dep't of Justice, No. 06-CV-2186, 2007 WL 327465, at *6-7 (D.N.J. 2007) ("[A]lthough the [APA] generally waives the United States' immunity for 'nonstatutory' equitable actions . . . . Plaintiffs' claims are statutorily derived from the FTCA and thus, the [APA] is not applicable" (internal quotation marks in original); see also Smith v. Potter, 187 F. Supp. 2d 93, 98 (S.D.N.Y. 2001) ("Congress has

not waived the government's sovereign immunity for tort claims, like the plaintiffs' public nuisance claim, that seek injunctive relief[, which] is not appropriate based on a public nuisance theory."). Counts II and III of the FTCA Claims are based on a private and public nuisance theory, respectively. (See Am. Compl. ¶¶ 100-112.) The APA Claim is based on those same theories, as it discusses how the USACE's "acts and failures to act cause[d] and contribute[d] to the maintenance of an ongoing nuisance"--that is, "the further destructive impact of the Jetties on plaintiffs' [private] properties and the public beaches and foreshore." (Am. Compl. ¶¶ 150-51.) Thus, since the APA Claim is statutorily derived from the FTCA Claims, it is DISMISSED WITH PREJUDICE.[6]

---

[6] Alternatively, Plaintiffs fail to state a claim against the USACE. "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64, 124 S. Ct. 2373, 2379, 159 L. Ed. 2d 137 (2004) (emphasis in original).

Plaintiffs' only authority in the Amended Complaint--that "Section 111 of the Rivers and Harbors Act of 1968 authorizes the Secretary of the Army to investigate, study, and construct protects for the prevention or mitigation of shore damages attributable to Federal navigation works"--is unpersuasive. (Am. Compl. ¶ 82 (internal quotation marks omitted).) As noted above, supra 17-18, the Court embraces the reasoning of the Seventh Circuit in Save the Dunes Council, which determined that Section 111 authorizes a discretionary decision. 584 F.2d at 165. Thus, the Amended Complaint does not allege that the USACE failed to take a requested course of action. Even if Plaintiffs grounded their claim based on the USACE's alleged delay in failing to act," that argument would fail because "a delay cannot be unreasonable with respect to action that is not required." Norton, 542 U.S. at 63 n.1, 124 S. Ct. at 2379.

V.    Injunctive Relief and Declaratory Judgment

        The Amended Complaint asserts separate "counts" against the Federal Defendants for injunctive relief and declaratory judgment. (Am. Compl. ¶¶ 152-63.)  But as this Court previously stated, injunctive and declaratory relief are remedies, "not separate causes of actions." Cangemi, 939 F. Supp. 2d at 196 (citing In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993)).  Thus, Counts XIII (injunctive relief) and XIV (declaratory judgment) are DISMISSED WITH PREJUDICE.

VI.  Leave to Amend

        Although the Court's general practice is to grant leave to amend the complaint when granting a motion to dismiss, "the district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).  The Court finds that leave to replead the APA Claim and Counts XIII (injunctive relief) and XIV (declaratory judgment) would be futile, and thus, leave to replead is denied.

CONCLUSION

        The Federal Defendants' motion to dismiss the Amended Complaint (Docket Entry 71) is GRANTED IN PART and DENIED IN PART. First, the FTCA Claims are DISMISSED as against the USACE and Col.

Boule.  Second, the Taking Claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, and the Court will not transfer the Taking Claims to the Court of Federal Claims because that court does not have jurisdiction.  Third, the APA Claim is DISMISSED WITH PREJUDICE.  Finally, Counts XIII (injunctive relief) and XIV (declaratory judgment) are DISMISSED WITH PREJUDICE.  Thus, as to the Federal Defendants, Plaintiffs' FTCA Claims against the United States are the only claims that move forward.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March __7__, 2016
          Central Islip, New York