UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
THOMAS CANGEMI, JODI CANGEMI,
MARIANN COLEMAN, FRANCIS J. DEVITO,
LYNN R. DEVITO, LEON KIRCIK,
ELIZABETH KIRCIK, CAROL C. LANG,          MEMORANDUM & ORDER
TERRY S. BIENSTOCK, DANIEL                12-CV-3989(JS)(SIL)
LIVINGSTON, VICTORIA LIVINGSTON,
ROBIN RACANELLI, JAMES E.
RITTERHOFF, GALE H. RITTERHOFF,
ELSIE V. THOMPSON TRUST, JOHN TOMITZ,
and THELMA WEINBERG TRUSTEE OF THE
THELMA WEINBERG REVOCABLE LIVING
TRUST,

                        Plaintiffs,

          -against-

THE UNITED STATES OF AMERICA; THE
U.S. ARMY CORPS OF ENGINEERS; COL.
JOHN R. BOULE II, individually and
in his official capacity; THE TOWN
OF EAST HAMPTON; WILLIAM J.
WILKINSON, individually and in his
official capacity; THE STATE OF
NEW YORK; JOE MARTENS, Commissioner
of the New York State of Environmental
Conservation; and CESAR A. PERALES,
Secretary of the New York State
Department of State,

                        Defendants.
---------------------------------------X
APPEARANCES
For Plaintiffs:            Jonathan Halsby Sinnreich, Esq.
                           Timothy F. Hill, Esq.
                           Sinnreich Kosakoff & Messina LLP
                           267 Carleton Ave., Suite 301
                           Central Islip, New York 11722


For Defendants:
The U.S.A., U.S.
Army Corps of
Engineers, and
Col. John R. Boule II      Vincent Lipari, Esq.

United States Attorney's Office
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, New York 11722

Town of East
Hampton                    Anthony F. Cardoso, Esq.
                           Steven C. Stern, Esq.
                           Sokoloff Stern LLP
                           179 Westbury Avenue
                           Carle Place, New York 11514

SEYBERT, District Judge:

        Plaintiffs allege that their waterfront property has been damaged by two rock jetties (the "Jetties") owned by the Town of East Hampton (the "Town") and repaired by the U.S. Army Corps of Engineers (the "Corps"). Most recently, in a Memorandum and Order ("M&O") dated March 7, 2016, the Court granted and denied aspects of the Government's motion to dismiss. As a result, two defendants remain: the Town and the Government.[1]

        Five motions are pending before the Court. First, the Government urges the Court to reconsider its recent ruling. (Docket Entry 97.) Second, Plaintiffs request that the Court consider their supplemental submissions in opposition to the Government's reconsideration motion. (Docket Entry 117.)

---

[1] The Clerk of the Court is directed to terminate the following defendants: (1) the U.S. Army Corps of Engineers; (2) Col. John R. Boule, II, in his official and individual capacities; (3) William J. Wilkinson, in his official and individual capacities; (4) the State of New York; (5) Joe Martens; and (6) Cesar A. Perales. (See Mar. 2016 M&O, Docket Entry 95, at 26–27; Mar. 2013 M&O, Docket Entry 43, at 3, 41.)

Finally, the Government and the Town of East Hampton separately move for summary judgment (Docket Entries 107, 111) and Plaintiffs move for partial summary judgment (Docket Entry 114). For the reasons that follow, the Court has considered Plaintiffs' supplemental submissions. The Government's motions are GRANTED, and the remaining motions are DENIED.

<u>BACKGROUND</u>

The Court assumes familiarity with the facts and procedural history, which are referenced only as necessary to explain the Court's decision. (Mar. 2016 M&O at 3-6; Mar. 2013 M&O at 4-8.)[2]

I.   <u>The Facts</u>

Plaintiffs are property owners in Montauk, New York, which is located within the municipal boundaries of the Town. (Pls.' 56.1 Stmt., Docket Entry 114-5, ¶¶ 3-13, 16.) As alleged in their pleadings, the Jetties prevent the natural replenishment of sand and thus damage Plaintiffs' property through accelerated erosion. (Am. Compl, Docket Entry 18, ¶¶ 5, 70.)

Under the Rivers and Harbors Act of 1945, the Corps has exclusive authority over navigation and safety within the federal channel which runs between the Jetties. (Gov't's 56.1 Stmt.,

---

[2] The chronology of key dates is available at Docket Entry 125-56 at 6.

Docket Entry 108, ¶¶ 7, 9-10.)   Among other things, the Corps conducts feasibility studies to report to Congress and recommend whether a project should be approved and funded.[3]   (USACE Report at 3.)

In 1991 and again in 2002, Congress authorized the Corps "to determine the need for measures to address storm damage reduction, shoreline protection, environmental restoration and protection and other allied purposes in the vicinity of Lake

---

[3] When citing to any exhibits, the Court will use the page numbers assigned by the Case Management/Electronic Case Files (CM/ECF) system.  References are as follows: the Feasibility Cost Sharing Agreement between the Corps and the New York State Department of Environmental Conservation "FCSA" (Lipari Decl. Ex. N, Docket Entry 73); "1991 Resolution" (Lipari Decl. Ex. I, Docket Entry 73-9); July 1, 2014 USACE Report "USACE Report" (Lipari Decl. Ex. J, Docket Entry 73-10); "2002 Resolution" (Lipari Decl. Ex. M, Docket Entry 73-13); "June 27, 2006 Email" (Sinnreich Decl. Ex. 21, Docket Entry 80-19); "Dec. 4, 2009 Email" (Sinnreich Decl. Ex. 23, Docket Entry 80-21); the "3X3X3 Paradigm" (Feb. 2012 Memo., Sinnreich Decl. Ex. 27, Docket Entry 80-24); Anthony Ciorra's declaration "Ciorra Decl." (Docket Entry 109); the first amendment to the FCSA "FCSA Amendment" (Gov't's Decl. Ex. D, Docket Entry 109-4); a Project Management Plan updated on April 3, 2014 "PMP" (Gov't's Decl. Ex. E, Docket Entry 109-5); a Corps memorandum dated April 13, 2015 "Apr. 2015 Corps Memo." (Gov't's Decl. Ex. F, Docket Entry 109-6); Dr. Mark Byrnes's Deposition "Byrnes Dep." (Town's Br. Ex. SS, Docket Entry 112-45); Thomas Pfeifer's Deposition "Pfeifer Dep." (Docket Entry 114-8); Dr. Mark Byrnes's Report "Byrnes Report" (Docket Entry 114-24); "Town's Nov. 13, 1998 Ltr." (Town's Br., Docket Entry 125-15); "Town's June 14, 1999 Ltr." (Town's Br., Docket Entry 125-16); "Town's Oct. 10, 2000 Ltr." (Town's Br., Docket Entry 125-17); Larry Penny's Deposition "Penny Dep." (Town's Br., Docket Entry 125-20); "Town's Jan. 14, 2011 Email" (Town's Br., Docket Entry 125-22); "Plaintiffs' Invoices" (Town's Br., Docket Entry 125-53); and Plaintiffs' property documents "Pls.' Prop. Docs." (Docket Entry 125-54).

Montauk Harbor, East Hampton, New York." (2002 Resolution at 2; 1991 Resolution at 2.) To date, the feasibility study has not been completed. (Pls.' 56.1 Stmt. ¶ 139.)

## II. The Remaining Claims

Following previous motion practice, the remaining defendants are the Town and the Government. As for the Town, the remaining claims are: (1) private nuisance, (2) public nuisance, and (3) trespass. (Am. Compl. ¶¶ 100-12, 136-40.) As for the Government, the remaining claims are: (1) negligence, (2) private nuisance, (3) public nuisance, (4) appropriation of resources--interference with property, and (5) trespass. (Id. ¶¶ 100-12, 131-40.)

## III. The Pending Motions

### A. The Town's Motion

The Town has moved for summary judgment, contending that the material facts are undisputed. (See, Town's Summ. J. Mot., Docket Entry 111.) Plaintiffs oppose the motion, arguing that a reasonable factfinder could find that the Town shirked its responsibilities in erosion control. (Pls'. Opp'n Br., Docket Entry 125, at 1-4.)

### B. Motions Concerning the Government

For the remaining four motions, the centerpiece is the discretionary function exception to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671. The FTCA generally waives

the Government's sovereign immunity for monetary liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But the discretionary function exception to this waiver bars any claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Previously, the Government moved to dismiss the case for lack of subject matter jurisdiction based on the discretionary function exception. (See, Gov't's 2015 Mot., Docket Entry 71.) The Court permitted claims alleging that the Corps violated a mandatory duty to complete a feasibility study on two separate grounds: (1) a February 2003 Feasibility Cost Sharing Agreement with the New York State Department of Environmental Conservation (the "FCSA") and (2) a February 2002 Corps memorandum that sets forth a "3X3X3 Paradigm."[4] (Mar. 2016 M&O at 17–19.)

Now the Government urges the Court to reconsider its ruling because the Court overlooked the FCSA's termination provision, which the Corps may invoke at any time with thirty days'

---

[4] The Court also dismissed, among other things, a claim for injunctive relief under the Administrative Procedure Act ("APA"). (Mar. 2016 M&O at 24–25.)

notice.  (Gov't's Recons. Br., Docket Entry 98, at 1-5.)  As for the 3X3X3 Paradigm, the Government moves for summary judgment, contending that the Corps did not violate a mandatory directive because the completion date of the feasibility study has been moved to April 17, 2017.  (Gov't's Summ. J. Br., Docket Entry 110, at 10-11.)  Assuming without conceding that the Government's motions are successful, Plaintiffs filed supplemental letter briefs arguing that the Court has subject matter jurisdiction over the public nuisance claim under federal common law.  (See, e.g., Pls.' Aug. 29, 2016 Ltr., Docket Entry 120, at 1-2.)

Separately, Plaintiffs moved for partial summary judgment against the Government on the issue of causation--that is, whether the Jetties caused accelerated erosion.  (Pls.' Summ. J. Br., Docket Entry 114-1, at 7.)

DISCUSSION

I.    Reconsideration Motion

    A.    Standard of Review

A motion for reconsideration is appropriate if "'the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  Meyer v. Kalanick, 185 F. Supp. 3d 448, 451-52 (S.D.N.Y. 2016) (quoting Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

B.    <u>The Government's Motion</u>

The Government urges the Court to reconsider its ruling that the FCSA imposes a mandatory directive.[5]  (Gov't's Recons. Br. at 1-5.)  Three provisions of that agreement are relevant here:

> WHEREAS, the State and the Government understand that entering into this Agreement in no way obligates either party to implement a project . . . .
>
> *    *    *
>
> ARTICLE II - OBLIGATIONS OF PARTIES
>
> A. The Government, using funds and in-kind services provided by the State and funds appropriated by the Congress of the United States, <u>shall expeditiously prosecute and complete the Study</u>, in accordance with the provisions of this Agreement and Federal laws, regulations, and policies.
>
> *    *    *
>
> ARTICLE X - TERMINATION OR SUSPENSION
>
> A. This Agreement shall terminate at the conclusion of the Study Period, and neither the Government nor the State shall have any further obligations hereunder, except as provided in Article III.C.; provided, that prior to such time and <u>upon thirty (30) days written notice, either party may terminate or suspend this Agreement</u>. . . . <u>In the event that either party elects to terminate this</u>

---

[5] The Government also groups together the "3X3X3 Paradigm," (Gov't's Recons. Br. at 5-7), but that document contains a separate mandatory directive that all feasibility studies should be completed within three years, (Feb. 2012 Memo. at 4-5, ¶¶ 5(a)(i)-(ii)).  Therefore, the Court will address the "3X3X3 Paradigm" with the Government's summary judgment motion where the Government presents evidence that the deadline to complete a feasibility study has changed.

> <u>Agreement</u>, both parties shall conclude their
> activities relating to the Study and proceed
> to a final accounting in accordance with
> Article III.C. and III.D. of this Agreement.
> . . .

(FCSA Preamble at 3, Art. II at 4, Art. X at 8) (emphasis added).[6]

In determining whether the discretionary function applies, the Court engages in a two-step inquiry: (1) whether the challenged action involves an "element of judgment or choice" and (2) whether the choice is "susceptible to policy analysis" and thus "of the kind that the discretionary function exception was designed to shield." <u>United States v. Gaubert</u>, 499 U.S. 315, 322–25, 111 S. Ct. 1267, 1273–75, 113 L. Ed. 2d 335 (1991). In its March 2016 M&O, the Court analyzed the first step and found that the FCSA issued a mandatory directive under Article II: "The operative word here is 'shall.' As the Second Circuit explained . . . the ordinary understanding of 'shall' describes a course of action that is mandatory." (Mar. 2016 M&O at 19) (internal quotation marks and citation omitted).

Upon review, the Court overlooked the FCSA's termination provision in Article X. That language, interpreted together with Article II, provide the Corps with discretion to terminate the FCSA at any time with thirty days' notice. Thus, under the first

---

[6] The FCSA was amended on March 31, 2014, but these cited provisions were not affected. (FCSA Amendment at 3, ¶ 6 ("All other terms and conditions of the Agreement remain unchanged.").)

step, the challenged action is discretionary because the FCSA's use of the word "shall" is qualified by Article X.[7]  As for the second step, the Court has already determined that "the challenged action is either grounded in policy concerns or, at the very least, susceptible to policy analysis."  (Mar. 2016 M&O at 13 n.4.)

Plaintiffs argue that Article X, which appears "some five pages after the express, unqualified directive at issue," cannot alter the obligations of the FCSA.  (Pls.' Opp'n Br. to Recons. Mot., Docket Entry 101, at 6.)  But this argument is without merit because "'a document should be read to give effect to all its provisions and to render them consistent with each other.'"  Perreca v. Gluck, 295 F.3d 215, 224 (2d Cir. 2002) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63, 115 S. Ct. 1212, 1219, 131 L. Ed. 2d 76 (1995)).

---

[7] Even if the FSCA did impose a mandatory directive, Article II's use of the word "expeditiously" is undefined and does not constitute "'a fixed or readily ascertainable standard' . . . to prevent the government's conduct from falling into the discretionary function exception."  DeVito v. United States, No. 95-CV-2349, 1997 WL 1038120, at *7 (E.D.N.Y. Sept. 5, 1997), report and recommendation adopted, 12 F. Supp. 2d 269 (E.D.N.Y. 1998) quoting Autery v. United States, 992 F.2d 1523, 1529 (11th Cir. 1993) (emphasis in original).  Moreover, to the extent Plaintiffs challenge the Corps's discretion in recommending a project to Congress, the Court already rejected that argument.  (Mar. 2016 M&O at 25 n.6) ("Even if Plaintiffs grounded their claim based on the USACE's alleged delay in failing to act, that argument would fail because 'a delay cannot be unreasonable with respect to action that is not required.'") (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 n.1, 124 S. Ct. 2373, 2379, 159 L. Ed. 2d 137 (2004)).

Accordingly, the Government's reconsideration motion is GRANTED.  The discretionary function exception applies to the FCSA, and thus Plaintiffs' claims against the Government are barred on this basis.  Plaintiffs correctly note that the 3X3X3 Paradigm forms a separate basis for subject matter jurisdiction.  (Pls.' Opp'n Br. to Recons. Mot. at 10.)  As discussed below, however, the summary judgment evidence shows that the Corps did not violate a mandatory directive under the 3X3X3 Paradigm, and Plaintiffs' claims against the Government must be dismissed for lack of subject matter jurisdiction.

C.   <u>Plaintiffs' Supplemental Letter Motion</u>

Plaintiffs urge the Court to consider their supplemental submissions in opposition to the Government's reconsideration motion.[8]  The Court will consider the filings but finds them unpersuasive.  Plaintiffs contend that even if the discretionary function exception applies, the Court has subject matter jurisdiction over the public nuisance claim under federal common

---

[8] As an initial matter, this letter was filed four months after Plaintiffs submitted their opposition brief to the Government's reconsideration motion.  In total, the parties each filed two letters.  (Docket Entries 117, 119, 120, 121.)  Despite the delay, the issue concerns subject matter jurisdiction, which "may be raised at any time," so the Court will consider Plaintiffs' arguments.  <u>See</u> <u>Ward v. Brown</u>, 22 F.3d 516, 519 (2d Cir. 1994).  The Government requests leave to file a more comprehensive response.  (Gov't's Aug. 30, 2016 Ltr., Docket Entry 121, at 3.)  As discussed below, however, that request is moot.

law.  (Pls.' Aug. 18, 2016 Ltr. Mot., Docket Entry 117, at 1.)
Critically, however, Plaintiffs have not shown a basis, nor
demonstrated a need, for the application of federal common law.
See Am. Elec. Power Co., Inc. v. Connecticut, 564 U.S. 410, 422,
131 S. Ct. 2527, 2536, 180 L. Ed. 2d 435 (2011) ("Absent a
demonstrated need for a federal rule of decision, the Court has
taken the prudent course of adopting the readymade body of state
law as the federal rule of decision until Congress strikes a
different accommodation.") (alteration, citation, and internal
quotation marks omitted).

It is true that in limited circumstances, "the federal
courts may fashion 'specialized' federal common law--substantive
rules of decision not expressly authorized by either the
Constitution or any Act of Congress--that supplant state law."  19
CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4514 (3d ed. 2017
update).  This issue is one of first impression in this Circuit,
so Plaintiffs primarily rely on a line of authority by the Seventh
Circuit: Michigan v. U.S. Army Corps of Engineers, No. 10-CV-4457,
2010 WL 5018559 (N.D. Ill. Dec. 2, 2010), aff'd on other grounds,
667 F.3d 765 (7th Cir. 2011) ("Michigan I"), later proceedings at
758 F.3d 892 (7th Cir. 2014) ("Michigan II").  But the Seventh
Circuit itself made an important caveat: "We have not discovered
any case in which the Supreme Court has expressly authorized a
public nuisance action against the United States in its sovereign

12

capacity." Michigan, 667 F.3d at 773–74; see also El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 853 (D.C. Cir. 2010) (Kavanaugh, J., concurring) ("[T]he Court has not endorsed any federal common-law causes of action against the Government during the post-Erie period.").

In the Michigan line of authority, five states and an Indian tribe sued the Corps and the Water Reclamation District of Greater Chicago for public nuisance under the federal common law, requesting declaratory and injunctive relief to prevent an invasive fish species from entering the Great Lakes. Michigan I, 667 F.3d at 768–69. The Seventh Circuit found a federal common law nuisance claim against the United States, in part, because interstate nuisances require "'the need for a uniform rule of decision.'" Id. at 770 (quoting Illinois v. City of Milwaukee, 406 U.S. 91, 105 n.6, 92 S. Ct. 1385, 1393, 31 L. Ed. 2d 712 (1972)). In any event, the Corps argued that "the United States has not waived its sovereign immunity for this kind of claim." Id. at 774. The Seventh Circuit then analyzed the interplay between the APA and the FTCA and rejected the immunity defense on two grounds: (1) although the FTCA does not authorize equitable relief, the APA does, and (2) if the FTCA, by its terms, "does not apply to any federal common-law tort claim," "there is no reason to think that it implicitly forbids a particular type of relief for a claim outside its scope." Id. at 776.

Here, two distinctions are critical. First, this case concerns a local dispute, not an interstate problem. For example, in Keltner v. SunCoke Energy, Inc., No. 14-CV-1374, 2015 WL 3400234 (S.D. Ill. May 26, 2015), private citizens sued private entities for negligence, nuisance, and trespass based on local air pollution. Id. at *1. The issue was that the plaintiffs' complaint asserted common law claims without reference to state or federal law. Id. at *2. The defendants argued that Michigan II mandated the application of federal common law, not state law. Id. at *3. But the Southern District of Illinois recognized a key distinction in Michigan II: the interstate threat posed to the Great Lakes. Id. ("In the instant case, private plaintiffs are asserting state common law claims against private entities. Moreover the alleged harm is local and does not--in any way--involve an interstate nuisance."). Therefore, state law applied. Id.; see also Michigan I, 667 F.3d at 770 (recognizing "the need for a federal common law to govern interstate disputes over nuisances") (emphasis added).

Second, this Court has dismissed Plaintiffs' claims for injunctive relief. (Mar. 2016 M&O at 24) ("Where, as here, a plaintiff's APA claim arises under the FTCA, the APA is inapplicable."). Plaintiffs have not requested reconsideration, so this aspect of the Seventh Circuit's ruling does not apply.

Plaintiffs, moreover, have applied New York substantive law thus far. (See, e.g., Pls.' Opp'n Br. to Town's Mot. to Dismiss, Docket Entry 29, at 35-43; Mar. 2013 M&O at 28-39.) The Court sees no reason to change course.

Plaintiffs' two remaining arguments are without merit. First, Plaintiffs argues that the Court has subject matter jurisdiction over the public nuisance claim because it is a federal question under 28 U.S.C. § 1331. (Pls.' Aug. 18, 2016 Ltr. Mot. at 1-2.) But "Section 1331 is in no way a general waiver of sovereign immunity. Such a waiver, if it exists at all, must be sought in the statute giving rise to the cause of action." Doe v. Civiletti, 635 F.2d 88, 94 (2d Cir. 1980). And as the Second Circuit made clear, "waivers of sovereign immunity must be unequivocally expressed in statutory text, and cannot simply be implied." Binder & Binder, P.C. v. Colvin, 818 F.3d 66, 70 (2d Cir. 2016) (internal quotation marks and citation omitted). Here, the FTCA has not waived sovereign immunity for tort claims falling under the discretionary function exception. (Mar. 2016 M&O at 12) ("If the DFE applies, the Court is deprived of subject matter jurisdiction, and the case must be dismissed.").

Second, Plaintiff asserts that the Amended Complaint put the Government on notice of a public nuisance claim under federal common law. (Pls.' Aug. 18, 2016 Ltr. Mot. at 2-3 (citing Connecticut v. Am. Elec. Power Co., Inc., 582 F.3d 309 (2d Cir.

15

2009)).  Putting aside the Supreme Court's reversal, the Second Circuit's decision is not applicable because it did not reach any issues concerning the discretionary function exception in a case such as this.  Accord Michigan, 758 F.3d at 902 (explaining that "the Supreme Court held that the [American Electric Power case] could not proceed on other grounds, and so the Court had no occasion to address the federal government's appearance as a defendant").  In fact, Second Circuit precedent dictates a different outcome than the Michigan line of authority.  See Birnbaum v. United States, 588 F.2d 319, 327-28 (2d Cir. 1978) (observing that "Congress expressly negated any possible inference that federal courts were to exercise any common lawmaking power to fashion torts under the Act in the interest of national uniformity"); see also Devlin v. United States, 352 F.3d 525, 532 (2d Cir. 2003) ("[T]he FTCA's basic thrust was decidedly not to create a federal common law of torts.").

Thus, the Court finds that Plaintiffs' supplemental submissions are unpersuasive.

II.  Summary Judgment Motions

A.    Standard of Review

A district court will grant summary judgment only if the records reveals no genuine issues of material fact.  Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 39 (2d Cir. 2015) (citing FED. R. CIV. P. 56(a)).  "Material facts are those which 'might

16

affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Coppola v. Bear Stearns & Co.</u>, 499 F.3d 144, 148 (2d Cir. 2007) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).

When multiple parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" <u>Coutard v. Mun. Credit Union</u>, 848 F.3d 102, 114 (2d Cir. 2017) (quoting <u>Schwabenbauer v. Bd. of Educ.</u>, 667 F.2d 305, 314 (2d Cir. 1981)). Yet "[t]he fact that both sides have moved for summary judgment does not guarantee that there is no material issue of fact to be tried and that one side or the other is entitled to relief." <u>Id.</u>

B.    <u>The Government's Motion</u>

In moving for summary judgment, the Government's lead argument is that the 3X3X3 Paradigm does not impose a mandatory duty that the Corps violated. (Gov't's Summ. J. Br. at 10–11.) The Court agrees.[9]

---

[9] Contrary to Plaintiffs' assertions, a law of the case argument is unavailing because "questions of subject matter jurisdiction are generally exempt from law of the case principles." <u>See</u> <u>Walsh v. McGee</u>, 918 F. Supp. 107, 112 (S.D.N.Y. 1996).

The 3X3X3 Paradigm earns its name from its requirements-
-all feasibility studies should be completed within three years
for no more than three million dollars and with three levels of
review.  (Feb. 2012 Memo. at 4-5, ¶¶ 5(a)(i)-(ii).)  These
requirements applied to all feasibility scoping meetings that were
not conducted by December 31, 2011.  (Id. at 4.)  On that basis,
the Court previously found that the 3X3X3 Paradigm issued a
mandatory directive: "Based on the record, the Court does not see
that the [Government] reached a Feasibility Scoping Meeting during
the applicable timeframe.  Thus, since the memorandum is dated
February 8, 2012, the Federal Defendants were required to complete
the feasibility study by February 8, 2015, the three-year outer
limit."  (Mar. 2016 M&O at 17-18.)

The summary judgment evidence shows that the time to
complete the feasibility study has been extended to April 17, 2017.
Anthony Ciorra, Chief of the Coastal Restoration Branch, states
the following under penalty of perjury:

> [T]he Lake Montauk Harbor feasibility study
> was "grandfathered," i.e., excepted, from the
> 3 X 3 X 3 paradigm, because a feasibility
> scoping meeting (P7 of the scheduling
> milestones) had been reached in
> September 2006.
>
> [T]he time for the completion of the Lake
> Montauk Harbor feasibility study has been set
> as commencing on April 14, 2014 and ending on
> April 14, 2017.

(Ciorra Decl. ¶¶ 4, 6.)  A Project Management Plan dated April 2014 and a Corps memorandum dated April 2015 corroborate Ciorra's statements.    (PMP at 17 ("3X3X3 Complaint: Project is grandfathered, P7 met in 2006."); Apr. 2015 Corps Memo. at 4 (proposing a start date of April 14, 2014).)  In response, Plaintiffs cite two emails that do not address Ciorra's statements.  (Pls.' Opp'n Br. to Gov't's Summ. J. Mot., Docket Entry 126, at 9-10; see also June 27, 2006 Email at 2; Dec. 4, 2009 Email at 2.)  This is insufficient to defeat summary judgment.  See Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (noting that the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts") (internal quotation marks and citation omitted).  Therefore, the Corps could not violate a mandatory directive at this time.

In any event, Plaintiffs did not file their administrative claim "within two years after such claim accrues."  28 U.S.C. § 2401(b) (emphasis added).  Plaintiffs concede that they filed their administrative complaints at various dates in 2011, (Pls.' 56.1 Stmt. ¶ 14), but the 3X3X3 Paradigm was filed in 2012, (Feb. 2012 Memo. at 2).    Thus, Plaintiffs failed to exhaust administrative remedies.  See Tarafa v. B.O.P. MDC Brooklyn, No. 07-CV-0554, 2007 WL 2120358, at *3 (E.D.N.Y. July 23, 2007) ("[A]lthough it is this court's view that dismissing [plaintiff's] FTCA claim and requiring him to refile is the ultimate exercise of

form over substance, this court must dismiss [the] FTCA claim.") (internal quotation marks and citations omitted).

Accordingly, the Court need not reach the parties' remaining arguments, and the Government's motion for summary judgment is GRANTED.

C.   The Town's Motion[10]

The Town moves for summary judgment and argues that: (1) Plaintiffs' state law claims are preempted by the Rivers and Harbors Act of 1945; (2) the Town is immune from liability for discretionary actions; (3) Plaintiffs' claims are untimely; and (4) the summary judgment evidence precludes Plaintiffs' claim under New York substantive law. (Town's Summ. J. Br., Docket Entry 113, at 3-35.)   As a threshold matter, the Court essentially rejected these four arguments on the Town's motion to dismiss. (Mar. 2013 M&O at 16-17, 28, 40-41.)   In so holding, the Court addressed the heart of Plaintiffs' defense:

> While the federal project may authorize the existence of the Jetties, Plaintiffs have at least plausibly suggested that Defendants can maintain the Jetties without creating a nuisance or trespass by remedial actions.
>
> *   *   *
>
> Plaintiffs also allege that the Town Defendants are liable for the Town's ongoing

___

[10] As an initial matter, to the extent the Sinnreich Declaration violates the Local Rules, the Court will overlook the infringement based on its discretionary authority.   See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001).

> inaction or omissions and the continuing damages that result to this day. Such actions would not be subject to immunity.

(Id. at 15–17) (internal quotation marks and citation omitted). Reviewing the admissible portions of the record, the Court finds genuine issues of material fact concerning the Town's alleged actions or omissions.

### 1. Preemption

The Town first argues that state law is preempted by federal law. (Town's Summ. J. Br. at 31–35.) "Conflict preemption 'occurs when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" Spinrad v. Comair, Inc., 825 F. Supp. 2d 397, 405 (E.D.N.Y. 2011) (quoting SPGGC, L.L.C. v. Blumenthal, 505 F.3d 183, 188 (2d Cir. 2007)); Geier v. Am. Honda Motor Co., 529 U.S. 861, 873, 120 S. Ct. 1913, 1921, 146 L. Ed. 2d 914 (2000) (applying conflict preemption when "state law penalizes what federal law requires"). As the Court previously noted, the primary purpose of the Jetties is to maintain navigability, and "it is not impossible to comply with both federal and state law" because "the Rivers and Harbors Act of 1945 imposes minimal proscriptions regarding maintenance of the Jetties and the attendant navigable waterways." (Mar. 2013 M&O at 15.)

The parties arrive at starkly different conclusions with respect to the Town's role and the congressional objectives. (See, e.g., Sinnreich Decl., Docket Entry 125-4, ¶¶ 31-35) (asserting that the Town had an independent capability and responsibility to remedy any nuisance or trespass independent of federal involvement). For instance, former Town employee Larry Penny suggests that the Town could exercise its discretion in erosion control and proceed with a sand bypass project.[11]  (Penny Dep. 14:19-25, 287:8-13.)  If the jury were to credit Plaintiffs' summary judgment evidence, it would find that the Town is liable for its actions and omissions.  In other words, the jury could find that the Town could maintain the Jetties in some form without committing a tort.  Thus, the Court rejects the Town's preemption argument.

2. Immunity for Discretionary Acts

Next, the Town argues that it is immune from Plaintiffs' common law claims because its actions were discretionary. (Town's Summ. J. Br. at 11-12.)  Under New York law, a municipality is immune from tort liability if the alleged conduct is (1) a discretionary act that is not entirely ministerial or (2) a

---

[11] The Court previously agreed with Plaintiffs that "the navigability of the channel and the protection of the Plaintiffs' properties are not mutually exclusive options." (Mar. 2013 M&O at 30) (internal quotation marks and citation omitted).

governmental function and no special relationship exists between the injured party and the municipality. Lemery v. Vill. of Cambridge, 290 A.D.2d 765, 765–66, 736 N.Y.S.2d 503, 505 (3d Dep't 2002). "When a municipality acts in a proprietary capacity, however, it is generally subject 'to the same duty of care as private individuals and institutions engaging in the same activity.'" Id. at 766, 736 N.Y.S.2d at 505 (quoting Schrempf v. State of N.Y., 66 N.Y.2d 289, 294, 487 N.E.2d 883, 886, 496 N.Y.S.2d 973 (1985)); see also Gilberti v. Town of Spafford, 117 A.D.3d 1547, 1548–49, 985 N.Y.S.2d 787, 789 (4th Dep't 2014) ("If the municipality acted in a proprietary role . . . ordinary rules of negligence apply.").

Critically, though, a municipality does not have "'any immunity from legal responsibility for creating or maintaining nuisances.'" Musumeci v. State of N.Y., 43 A.D.2d 288, 292, 351 N.Y.S.2d 211, 216 (4th Dep't 1974) (quoting Noonan v. City of Albany, 79 N.Y. 470, 476 (1880)). In fact, the Second Department rejected a version of Plaintiffs' argument in Volunteer Fire Association of Tappan, Inc. v. County of Rockland, 101 A.D.3d 853, 855, 956 N.Y.S.2d 102, 105 (2d Dep't 2012), which found that "a municipality may be found liable for trespass and a private nuisance." Id. (citing Ebbets v. City of N.Y., 111 A.D. 364, 365–66, 97 N.Y.S. 833, 834 (2d Dep't 1906) (noting that municipal liability "cannot be extended . . . for acts which result in the

invasion of private property or the creation of public or private nuisances")).

As discussed above, Plaintiffs have presented genuine issues of material fact as to the Town's role in contributing to shoreline recession and creating nuisances. (Sinnreich Decl. ¶¶ 31-35.) Thus, the Court rejects the Town's municipal immunity argument.

   3. <u>Timeliness</u>

The Town argues that no damages occurred during the statutory period: October 27, 2009 through January 25, 2011. (Town's Summ. J. Br. at 3-9.) But there is a genuine issue of fact as to whether Plaintiffs have incurred over $2.5 million in out-of-pocket expenses, among other damages, during the time period relevant to the case. To support this position, Plaintiffs provided invoices and various documents. (<u>See</u> <u>generally</u> Pls.' Invoices; Pls.' Prop. Docs. at 3.) Sure enough, the Town casts doubt on various aspects of Plaintiffs' claims, including an expert's opinion on property values, the presence of intervening causes, and the erosion decrease during the statutory period. (Town's Summ. J. Br. at 4, 7-9.) On summary judgment review, however, the Court must draw all inferences favorable to Plaintiffs and assume that a reasonable factfinder would resolve the case in their favor. <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997) ("The court's function is not to resolve disputed issues of fact

but only to determine whether there is a genuine issue of material fact to be tried."). Thus, the Court rejects the Town's damages argument.

### 4. New York Substantive Law

As for its substantive arguments, the Town asserts that there is no genuine issue of material fact on Plaintiffs' remaining claims of private nuisance, public nuisance, and trespass. (Town's Summ. J. Br. at 13–31.)

#### a. Private Nuisance

"A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." Copart Indus., Inc. v. Consolidated Edison Co. of N.Y., Inc., 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169 (1977) (citations omitted). Under New York law, a plaintiff may show that the defendant's interference was either "(1) intentional and unreasonable" or "(2) negligent or reckless."[12] Id. at 569, 362 N.E.2d at 972. An invasion is "intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct." Id. at 571, 362 N.E.2d at 972–73. On the other hand, "whenever a nuisance has its origin in

---

[12] A third method of proof--whether the defendant's interference was "actionable under the rules governing liability for abnormally dangerous conditions or activities"--is not applicable. Copart, 41 N.Y.2d at 569, 362 N.E.2d at 972.

negligence, negligence must be proven." Id. at 569, 362 N.E.2d at 972 (internal quotation marks and citations omitted).

     As an initial matter, the Town maintains that it had a prescriptive easement to maintain the alleged private nuisance. (Town's Summ. J. Br. at 9-11.) "An easement by prescription requires proof of the adverse, open, notorious, and continuous use of another's land for the prescriptive period." Greenhill v. Stillwell, 306 A.D.2d 434, 435, 761 N.Y.S.2d 498 (2d Dep't 2003). The Court notes that under New York law, a party can obtain a prescriptive right for a private nuisance but not a public nuisance. Iannucci v. City of N.Y., No. 02-CV-6135, 2006 WL 13029, at *3 (E.D.N.Y. Jan. 3, 2006).

     "Applying these principles, the defendant could acquire an easement only equal in width to that portion of the subject property actually used during the prescriptive period." Zutt v. State, 50 A.D.3d 1133, 1133, 856 N.Y.S.2d 245, 247 (2d Dep't 2008). But the Court finds no evidence of a prescriptive easement to exact specifications because the Jetties allegedly continue to encroach on Plaintiffs' property during the prescriptive perios. See id. at 1133-34. ("Since the defendant failed to show what portion of the [plaintiffs'] land was actually used during the prescriptive period, it failed to establish its entitlement to a prescriptive easement by clear and convincing evidence."); Essa Realty Corp. v. J. Thomas Realty Corp., 31 Misc. 3d 1235(A), at *4, 932 N.Y.S.2d

26

760 (Table) (S. Ct., N.Y. Cty., 2011) (finding that if "the encroachment was progressive, and has enlarged during the prescriptive period," every "encroachment would restart the statutory period in which plaintiff is entitled to bring an action to recover property from defendant").

"The issue of whether a use constitutes a private nuisance ordinarily turns on questions of fact." Pilatich v. Town of New Baltimore, 133 A.D.3d 1143, 1145, 20 N.Y.S.3d 695, 697 (3d Dep't 2015) (internal quotation marks and citation omitted). Here, Plaintiffs have asserted that the Town "owns the jetties and the land upon which they sit" as well as "the accreting beach (Gin Beach) to the east of the jetties and the decimated public beach to the west of the jetties." (See, e.g., Sinnreich Decl. ¶ 31.) Nevertheless, Plaintiffs claim, the Town has not independently provided a remedy to protect its property owners. See State of N.Y. v. Shore Realty Corp., 759 F.2d 1032, 1051 (2d Cir. 1985) ("Liability of a possessor of land is not based upon responsibility for the creation of the harmful condition, but upon the fact that he has exclusive control over the land and the things done upon it and should have the responsibility of taking reasonable measures to remedy conditions on it that are a source of harm to others.") (alteration, citation, and internal quotation marks omitted). Moreover, former Corps employee Thomas Pfeifer reviewed a draft report and concurred with its assessment that, absent a project,

"public health and safety would be threatened for damages to or loss of at least a portion of West Lake Drive." (Pfeifer Dep. 11:15-20, 156:10-24); (see also Pfeifer Dep. 154:8-157:18) (concurring with other portions of the draft report). At this stage, the Court must assume that a factfinder fully credits Plaintiffs' evidence and weighs all of the conflicting evidence in their favor. Fischl, 128 F.3d at 55 ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). Therefore, the Court DENIES the Town's motion for summary judgment on the private nuisance claim.

### b.  Public Nuisance

A public nuisance "is an offense against the State" and "consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to . . . endanger or injure the property, health, safety or comfort of a considerable number of persons." Copart, 41 N.Y.2d at 568, 362 N.E.2d at 971 (citations omitted). In other words, the issue is "whether plaintiffs have suffered a special injury beyond that of the community so as to support their damages claims for public nuisance." 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y.2d 280, 293, 750 N.E.2d 1097, 1104, 727 N.Y.S.2d 49 (2001); see also City of N.Y. v.

Beretta U.S.A. Corp., 315 F. Supp. 2d 256, 278 (E.D.N.Y 2004) ("If a defendant becomes aware . . . that harm is resulting from its conduct and continues to act in the same manner, it may have acted with the requisite intent to contribute to a public nuisance.").

As with the private nuisance claim, the Court finds genuine issues of material fact. See Shore Realty, 759 F.2d at 1051 (finding that a landowner "is subject to liability for either a public or private nuisance on its property upon learning of the nuisance and having a reasonable opportunity to abate it"). The Town was ostensibly aware of the effect of erosion and did not intervene. (See generally Town's Nov. 13, 1998 Ltr.; Town's June 14, 1999 Ltr.; Town's Oct. 10, 2000 Ltr); (see also Town's Jan. 14, 2011 Email at 1) ("The bottom-line is that we cannot afford to wait any longer."). Moreover, the record can support an inference that Plaintiffs suffered a special injury as compared to the community at large. (See generally Pls.' Invoices; Pls.' Prop. Docs. at 3); see also (Pfeifer Dep. 156:10-24) (agreeing that, absent a project, "storm damages would impact property owners along the western shoreline") (internal quotation marks omitted). This fact-intensive inquiry on the Town's role is best left for a jury. Accordingly, the Court DENIES the Town's motion for summary judgment on the public nuisance claim.

c.   <u>Trespass</u>

"Under New York law, trespass is the intentional invasion of another's property." <u>Scribner v. Summers</u>, 84 F.3d 554, 557 (2d Cir. 1996). "Intent is defined as intending the act which produces the unlawful intrusion, where the intrusion is an immediate or inevitable consequence of that act." <u>Volunteer Fire Ass'n</u>, 101 A.D.3d at 855, 956 N.Y.S.2d at 105.

For the same reasons discussed with the nuisance claims, whether the Town's actions constituted a trespass is a question that cannot be resolved as a matter of law at this stage. <u>See Schillaci v. Sarris</u>, 122 A.D.3d 1085, 1088, 997 N.Y.S.2d 504, 509 (3d Dep't 2014) (affirming the lower court's denial of summary judgment on private nuisance and trespass claims because the record contained "conflicting proof as to the substantiality and unreasonableness of defendants' alleged interference with plaintiffs' use and enjoyment of their property and/or defendants' actual intrusion thereon"). Thus, the Court DENIES the Town's motion for summary judgment on the trespass claim.

D.   <u>Plaintiffs' Motion</u>

Plaintiffs move for partial summary judgment against the Government on the issue of causation: whether the Jetties cause

accelerated erosion--that is, "erosion above and beyond natural, background erosion."[13]  (Pls.' Summ. J. Br. at 7.)

A district court may grant partial summary judgment "to streamline the litigation process by narrowing the triable issues."  D'Iorio v. Winebow, Inc., 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014) (internal quotation marks and citations omitted); see also FED. R. CIV. P. 56(g).  The decision to grant such a motion is left in the court's discretion.  D'Iorio, 68 F. Supp. 3d at 356.

Yet the Court dismissed the Government for want of subject matter jurisdiction, and Plaintiffs moved for partial summary judgment solely against the Government.  Thus, Plaintiffs' motion is DENIED AS MOOT.

To be sure, the Court could exercise its discretion and rule on the causation issue as it concerns the Town.  But Plaintiffs and the Town vigorously dispute the impact of the Jetties.  (Compare Town's 56.1 Counterstmt., Docket Entry 91-1, ¶ 26, with Pls.' 56.1 Stmt. ¶ 26.)  For example, Dr. Mark Byrnes

---

[13] Plaintiffs contend that the Town has not challenged the causation issue.  (Pls.' Reply Br. to Partial Summ. J. Mot., Docket Entry 132, at 9) ("The Town has not opposed the instant motion.") (emphasis in original).  That is not true.  To set the context, Plaintiffs requested a pre-motion conference to file their partial summary judgment motion.  (Pls.' Aug. 19, 2015 Ltr., Docket Entry 90, at 1.)  One day later, the Town filed its response.  (Town's Aug. 20, 2015 Ltr., Docket Entry 91, at 1.)  Plaintiffs then objected to the filing, arguing that the causation issue has no bearing on the Town.  (Pls.' Aug. 21, 2015 Ltr., Docket Entry 92, at 1.)

testified that net beach erosion reduced substantially in the post-Jetties period. (Byrnes Dep. 201:21-205:16; Byrnes Report at 24.) In other words, even if the Court construed this motion as against the Town, the summary judgment evidence reveals that there are genuine issues of material fact.

CONCLUSION

The Court has considered Plaintiffs' supplemental submissions and thus their Letter Motion is GRANTED, (Docket Entry 117). The Government's motions are GRANTED, (Docket Entries 97, 107), and the remaining motions are DENIED, (Docket Entries 111, 114). The Clerk of the Court is directed to terminate all Defendants with the exception of the Town of East Hampton (see supra 2 n.1, 8-11, 17-20).

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March   31  , 2017
           Central Islip, New York