UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
THOMAS CANGEMI, JODI CANGEMI,
MARIANN COLEMAN, FRANCIS J. DEVITO,
LYNN R. DEVITO, LEON KIRCIK,
ELIZABETH KIRCIK, CAROL C. LANG,          <u>MEMORANDUM & ORDER</u>
TERRY S. BIENSTOCK, DANIEL LIVINGSTON,    12-CV-3989(JS)(SIL)
VICTORIA LIVINGSTON, ROBIN RACANELLI,
JAMES E. RITTERHOFF, THELMA WEINBERG
TRUSTEE OF THE THELMA WEINBERG
REVOCABLE LIVING TRUST, and
GALE H. RITTERHOFF,

                         Plaintiffs,

        -against-

THE TOWN OF EAST HAMPTON,

                         Defendant.
------------------------------------X
APPEARANCES
For Plaintiffs:     Jonathan Halsby Sinnreich, Esq.
                    Timothy F. Hill, Esq.
                    Sinnreich Kosakoff & Messina LLP
                    267 Carleton Avenue, Suite 301
                    Central Islip, New York 11722

For Defendant:      Steven C. Stern, Esq.
                    Anthony F. Cardoso, Esq.
                    Chelsea Ella Weisbord, Esq.
                    Kevin Levine, Esq.
                    Mark A. Radi, Esq.
                    Sokoloff Stern LLP
                    179 Westbury Avenue
                    Carle Place, New York 11514

SEYBERT, District Judge:

        In 2012, Plaintiffs, who own waterfront property in

Montauk, New York, commenced this action against several parties,

including Defendant the Town of East Hampton (the "Town" or

"Defendant"). After motion practice, the Town became the sole defendant. The parties proceeded to trial and the jury found the Town liable for private nuisance and trespass. Before the Court is the Town's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59. Plaintiffs have not moved for any post-trial relief.

For the following reasons, Defendant's motion for judgment as a matter of law is GRANTED.

<u>BACKGROUND</u>

The Court assumes familiarity with the background of the case and will only discuss the evidence at trial necessary to its analysis. Briefly, Plaintiffs own beachfront homes in Montauk, New York, next to two jetties. The jetties, which were originally built in 1926 to maintain the inlet near Plaintiffs' properties, have allegedly stopped the flow of sand to Plaintiffs' beaches and caused them to erode. Plaintiffs seek monetary and equitable relief.

Plaintiffs commenced this action in June 2012 against the United States of America (the "United States"); the United States Army Corps of Engineers (the "Army Corps"); Colonel John R. Boule, Commander of the New York District of the Army Corps, individually and in his official capacity ("Boule"); the Town; William J. Wilkinson, Supervisor of the Town, individually and in

his official capacity ("Wilkinson"); the County of Suffolk (the "County"); the State of New York ("the State"); Joe Martens, Commissioner of the New York State Department of Environmental Conservation ("DEC") ("Martens"); and Cesar A. Perales, Secretary of the New York State Department of State ("Perales"). (Compl., D.E. 1.) Plaintiffs filed an Amended Complaint in September 2012. (Am. Compl., D.E. 18.)

The Town and Wilkinson (collectively, the "Town Defendants) filed a motion to dismiss the Amended Complaint, (Town Mot. to Dismiss, D.E. 13), the State, Martens, and Perales (collectively, "the State Defendants") separately moved to dismiss, (State Mot. to Dismiss, D.E. 32).[1] This Court granted the State Defendants' motion in its entirety, removing them from the case, and granted the Town Defendants' motion to the extent that it granted their request to dismiss several claims against them and dismissed the claims against Wilkinson. Cangemi v. United States, 939 F. Supp. 2d 188 (E.D.N.Y. 2013) (Mar. 2013 Order, D.E. 43) ("Cangemi I").

The United States, the Army Corps, and Boule (collectively, the "Federal Defendants") moved to dismiss the Amended Complaint for lack of subject matter jurisdiction and

---

[1] The Town Defendants filed their Motion to Dismiss before Plaintiffs filed the Amended Complaint, but the parties agreed that the motion would apply to the Amended Complaint. (Letters, D.E. 19, 20; Sept. 2012 Order, D.E. 21.)

failure to state a claim. (Fed. Mot. to Dismiss, D.E. 71.)  The

Court granted the motion in part and denied it in part.  <u>Cangemi</u>

<u>v. United States</u>, 2016 WL 915173 (E.D.N.Y. Mar. 7, 2016) (Mar.

2016 Order, D.E. 95) ("<u>Cangemi II</u>").  Upon reconsideration, the

Court granted the Federal Defendants' motion in its entirety and

terminated all Defendants except the Town.  <u>Cangemi v. United</u>

<u>States</u>, 2017 WL 1274060 (E.D.N.Y. Mar. 31, 2017) (Mar. 2017 Order,

D.E. 134) ("<u>Cangemi III</u>").  <u>Cangemi III</u> also denied the Town's

motion for summary judgment.

     The parties presented the case to a jury from June 4 to

June 29, 2018.[2]

     The Town made Rule 50 arguments at the close of

Plaintiffs' case and the close of its case, and the Court reserved

decision.  (Trial Tr. 2507, 2700.)

     The jury found for the Plaintiffs on private nuisance

and trespass and for the Town on public nuisance.  It awarded

$355,961.27 in compensatory damages to Plaintiffs.  (Verdict

Sheet, D.E. 201, at 1-11.)  The Town now moves for judgment as a

matter of law or, alternatively, a new trial.

---

[2] The trial transcripts, which span many dates, have
consecutively numbered pages.  The Court will refer to the
transcripts by page numbers only, without dates.

DISCUSSION

I.   Rule 50 Motion

     A.   Standard

          If a party believes that "a reasonable jury would not
have a legally sufficient evidentiary basis" to find for its
adversary on a particular issue, it may move for judgment as a
matter of law during trial under Federal Rule of Civil Procedure
50(a) and renew the motion after trial under Rule 50(b).  FED. R.
CIV. P. 50(a)-(b).  In an order determining a Rule 50(b) motion,
the district court may: "(1) allow judgment on the verdict, if the
jury returned a verdict; (2) order a new trial; or (3) direct the
entry of judgment as a matter of law."  FED. R. CIV. P. 50(b).

          The district court may only grant a Rule 50(b) motion
when "'there exists such a complete absence of evidence supporting
the verdict that the jury's findings could only have been the
result of sheer surmise and conjecture, or the evidence in favor
of the movant is so overwhelming that reasonable and fair-minded
[persons] could not arrive at a verdict against [it].'"
Protostorm, LLC v. Antonelli, Terry, Stout & Krauss, LLP, No. 08-
CV-0931, 2015 WL 3605143, at *2 (E.D.N.Y. June 5, 2015) (quoting
Kinneary v. City of N.Y., 601 F.3d 151, 155 (2d Cir. 2010))
(alterations in original).  In other words, judgment as a matter
of law is appropriate only when "'a reasonable juror would have
been compelled to accept the view of the moving party.'"  Id. at

                              5

*1 (quoting <u>This is Me, Inc. v. Taylor</u>, 157 F.3d 139, 142 (2d Cir. 1998)). "When considering the evidence associated with a Rule 50(b) motion, the trial court may not weigh evidence, assess credibility, or substitute its opinion of the facts for that of the jury," <u>Rosioreanu v. City of New York</u>, 526 F. App'x 118, 119 (2d Cir. 2013) (internal quotation marks and citation omitted), and must view the evidence "in the light most favorable to the nonmoving party," <u>Houston v. Cotter</u>, No. 07-CV-3256, 2016 WL 1253391, at *1 (E.D.N.Y. Mar. 30, 2016) (internal quotation marks omitted).

B.  <u>Analysis</u>

The Court considers whether the evidence established the two claims on which the jury found liability: private nuisance and trespass.

1.  <u>Private Nuisance</u>

As this Court charged the jury, private nuisance requires "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." <u>Copart Indus., Inc. v. Consol. Edison of N.Y., Inc.</u>, 41 N.Y.2d 564, 570, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 173 (1977); <u>see also</u> New York Pattern Jury Instructions 3:16.  The Court finds that there was sufficient evidence to support the jury's finding that Plaintiffs

suffered a substantial interference with their right to use and enjoy their land, and that it was caused in part by the jetties, or, at the very least, exacerbated by them.  However, the Court agrees with the Town that no reasonable juror could have found that the Town intentionally interfered with that right, or that the injury was caused by the Town's conduct in acting or failing to act.[3]  As will be discussed, the causation and intent elements of private nuisance are impacted by the Town's lack of control over the jetties.

a.  Control and Conduct

The parties are exceedingly familiar with the history of the jetties, first built by a private businessman with a federal permit in 1926 to facilitate Montauk's economy and growth.  The documentary evidence at trial demonstrates that in 1939, the Chief of Engineers of the United States Army recommended the adoption of a federal project for Lake Montauk Harbor to continue and expand the jetties.  (See Letter from the Sec'y of War, June 1939, Defs.' Tr. Ex. A-1, D.E. 210-1.)  That report concluded that "[r]epair of the jetties and dredging of the basin and entrance channel [were] justified at the expense of the Federal Government in the interest

---

[3] Because the Court finds that Plaintiffs did not establish the elements of private nuisance, it need not wade into whether the erosion was caused exclusively by the jetties or rather, as the Town contends, by natural erosion processes, storm impacts, and bulkheads.  Suffice it to say, "these waters aren't what they used to be."  The Downeaster "Alexa," Billy Joel (1990).

of safety and convenience to navigation and in view of other general benefits." (D.E. 210-1 at ECF p. 6.)  The jetties and the Lake Montauk Harbor inlet were subsequently made a Federal Navigation Project ("FNP") by the Rivers and Harbors Act of 1945. (See Rivers and Harbors Act of 1945, Defs.' Tr. Ex. H-1, D.E. 210-2.)  This Act "adopted and authorized [the project] in the interest of national security and stabilization of employment." (D.E. 210-2 at ECF p. 4.)  FNPs are subject to the Rivers and Harbors Act of 1899 (33 U.S.C. § 401 et seq.), which essentially gives the Federal Government and the Army Corps exclusive control over navigable waters of the United States.

In 1962, the Town granted the federal government an "absolute and indefeasible easement in the body of water known as Lake Montauk Harbor and in the shores and bed thereof as may be necessary to insure its permanent dedication to the uses and purposes of a public navigable waterway." (See "Correction Deed", 1962, Pls.' Tr. Ex. 10, D.E. 210-22, at ECF p. 2.)  The Deed recognized that the federal government was "about to enter upon the improvement of Lake Montauk Harbor . . . [including] the extension shoreward of the west jetty." (Correction Deed at ECF p. 2.)  It conveyed "the lands and lands under water together with the structures thereon to the United States for the purpose of conveying to the said United States all rights and easements." (Correction Deed at ECF pp. 2-3.)  The "title to the said lands

under the waters of Lake Montauk Harbor . . . remain[ed] in the Town of East Hampton, subject to all the rights and easements to insure the permanent dedication of the Harbor to the uses and purposes of a public navigable waterway." (Correction Deed at ECF p. 5.) As a result of the Deed, the Town became the servient owner and the federal government became the dominant owner.

The Court is mindful that in prior orders, it stated that Plaintiffs had "at least plausibly suggested that [the Town] can maintain the Jetties without creating a nuisance or trespass by remedial actions." Cangemi I at 198. However, the evidence at trial has convinced this Court that the Town simply could not and did not exercise control over the jetties sufficient to impose liability on it.

The jetties were not built by the Town. Decades ago, and well before all Plaintiffs here bought their homes, the Town asked the federal government to take over the maintenance and care of the jetties to keep the inlet open. This was to benefit the public. While the Town may own the jetties and the land the jetties sit upon, its agreement with the Army Corps bars it from changing the jetties. Thus, the only action the Town has taken to "control" the jetties was to relinquish control over them. Further, it is clear from the evidence at trial that while the Town wanted the Army Corps to maintain the inlet, it did not

mandate how the Army Corps should do so.  The Army Corps was given the discretion and control to accomplish the ongoing project.

Thomas Pfeifer, retired from the Army Corps, testified that the jetties and the navigation channel were a federal navigational project.  (See Trial Tr. 1688.)  "[F]ederal responsibilities for the jetties . . . occurred going back to . . . 1945 or so, because those jetties . . . were lengthened and fortified at the request of the United States Navy."  (Trial Tr. 1692-93.)  "[I]n this case maintenance responsibilities for the federal project are 100 percent federal."  (Trial Tr. 1693.)

The Army Corps had done several studies regarding the "navigation" "problem" and "identified that there was indeed an erosion problem to the west of the jetties" where Plaintiffs' homes are located.  (Trial Tr. 1690.)  It came up with several potential solutions, including "[j]etty rehabilitation," "deepening of [the] federal navigational channel," "[r]emoval of the large shoal at the east jetty," "advance maintenance dredging 50 feet outside of the channel limits to serve as a deposition basin; also, disposal of dredge material on the western shoreline," and "[s]and bypassing the western shoreline."  (Trial Tr. 1691.)  The Court recognizes that the Army Corps was often in communication with the State, the Town, and other local entities.  (Trial Tr. 1718 ("The majority of the studies are done by the Corps.  Sometimes there are contributions from the state and, in fact, the local community,

10

local government").)  However, Pfeifer's testimony demonstrates that the Army Corps ultimately considered the jetties and the channel to be a federal responsibility with federal responses required to solve the erosion problems.  Further, while Pfeifer alluded to an internal "headquarters", (Trial Tr. 1756), desire to move studies faster, the pace of the federal studies and response (or lack thereof) was not something the Town could control.

Dr. Mark Byrnes, a former Army Corps employee and the expert retained by Plaintiffs to prepare an erosion report, explained that the Army Corps extended the west jetty in 1942 (Trial Tr. 515), extended the east jetty in 1968, and rehabilitated the east jetty in 1995 (Trial Tr. 398).  Jay Schneiderman, the former Town Supervisor, testified that the jetties were federal navigation projects maintained by the federal government to stabilize the inlet.  The federal government "performs maintenance and dredging and the other operations with respect to th[e] inlet." (Trial Tr. 1560.)

Considering the above, the evidence at trial showed that the Army Corps expanded and maintained the jetties and "[t]he [Town] was a mere instrumentality for performance of certain plans and improvements."  Ireland v. Suffolk Cty. of N.Y., 2008 WL 11394156, at *9 (E.D.N.Y. Aug. 26, 2008), aff'd 367 F. App'x 234 (2d Cir. 2010).  Ireland is instructive.  There, a plaintiff homeowner sued Suffolk County for negligence and nuisance,

claiming that certain dredging and jetty and groin construction projects accelerated shoreline erosion and caused damage to her home. After a bench trial, the court found that the plaintiff had not adequately established causation. As relevant here, the court additionally found that "the [discretionary] decisions to construct these structures were made primarily by the [Army Corps]." Ireland, 2008 WL 11394168 at *9. The court concluded that "[t]he fact that various interested constituencies . . . gave input to the [Army Corps] as to its decision on how to proceed does not create a duty on the part of those constituencies to account for the consequences of the [Army Corps'] decision" (id.) even where the County agreed to hold the United States government "free from all damages" caused by the construction of the works (id. at *3). The court could "not see how the County assumed a legal duty to construct and maintain or exercise any control over the groins and jetties that the [Army Corps] actually constructed and maintained." Id. at *9. Here, the Town is similarly positioned to the County in Ireland: it is "a mere instrumentality for performance of certain plans and improvements and owed no duty to [P]laintiffs." Id. at *9.[4]

---

[4] Plaintiffs attempt to distinguish Ireland on the basis that the structures there were built to prevent naturally occurring erosion. The Court finds this unpersuasive. In both instances, government actors sought to divert naturally flowing water and sand for the larger public good.

Plaintiffs argue that they are not asking the Town to change or eliminate the jetties, but rather to address their impact in some other way. They point to Pfeifer's testimony indicating that there was no federal prohibition on the Town performing a sand bypass project. The fundamental problem with this argument is that the Town is not responsible for fixing a problem it did not cause, approve, or exacerbate. That the Town could have done something for these Plaintiffs does not mean it was legally required to do so (see Mangusi v. Town of Mount Pleasant, 19 A.D.3d 656, 657-58, 799 N.Y.S.2d 67, 69 (2d Dept. 2005) ("Although the defendant has a duty to maintain its easement . . . it has no duty to improve the plaintiffs' property. The defendant submitted the affidavit of an engineer, who testified that the work the plaintiffs requested would benefit only the plaintiffs, and was not necessary for drainage--the very purpose of the easement.") (internal citations omitted)).

b.   Causation

Private nuisance occurs when, among other things, an interference is "caused by another's conduct in acting or failure to act." Copart Indus., Inc., 41 N.Y.2d at 570. As explained above, the Town engaged in no conduct that can be considered action. Further, while the Town may have failed to act because it did not address the impact of the jetties, it was under no legal duty to do so. Again, while the jetties may have caused the

13

interference, it does not follow that the <u>Town</u> caused the interference, either by acting or failing to act. "[T]he duty to abate a private nuisance existing on real property arises from the power to possess the property and control the activities that occur on it." <u>Taggart v. Costabile</u>, 131 A.D.3d 243, 247, 14 N.Y.S.3d 388, 392 (App. Div. 2015); <u>see also</u> <u>Sutera v. Go Jokir, Inc.</u>, 86 F.3d 298, 302 (2d Cir. 1996) ("As a corollary to the rule that an easement imposes no affirmative duty on the servient owner, it developed that the duty to maintain and repair structures or facilities existing under an easement rests on the dominant, not the servient, owner" and "the duties on the servient owner are negative--to refrain from interfering with the use granted.") (citing New York state cases).

The servient owner owes a duty to third parties along with the dominant owner if "'an injury occurs in a place where the dominant owner is exercising its rights and the servient owner is also able, for its own purpose, to use the granted property.'" <u>Cardinal v. Long Island Power Auth.</u>, 309 F. Supp. 2d 376, 385 (E.D.N.Y. 2004) (quoting <u>Sutera</u>, 86 F. 3d at 303). However, if the dominant owner's "rights in the property subject to the easement are so exclusive that [the] servient owner retains no rights whatever over the subject easement, and an injury occurs where the dominant owner has such exclusive control[,]" then only the dominant owner owes a duty to third parties. <u>Id.</u> (internal

quotation marks and citation omitted).  Here, under the easement,
the Town was unable, for its own purpose, to use the granted
property, even though it retained ownership of the land underneath
the jetties.  The agreement was that the Army Corps would exercise
exclusive control over the area.  Thus, no duty was owed from the
Town to third parties.

c.  Intent

In the context of nuisance, interference is intentional
if the defendant acts for the purpose of interfering with the
owners' use and enjoyment of their property, or knows that such
interference will result or is substantially certain to result
from the conduct, or becomes aware that the conduct is causing
substantial interference and nevertheless continues it.  See N.Y.
Pattern Jury Instrs. 3:16; Copart Indus., Inc., 41 N.Y.2d at 571,
362 N.E.2d at 972-73.  Again, the issues of control, causation,
and intent intertwine.

In a prior order denying the Town's motion to dismiss,
this Court found that Plaintiffs' claims regarding the Town's
actions could amount to intentional conduct.  See Cangemi I at
204.  In a later order denying the Town summary judgment, this
Court found there were "genuine issues of material fact concerning
the Town's alleged acts or omissions" and that "[t]he issue of
whether a use constitutes a private nuisance ordinarily turns on
questions of fact."  Cangemi III at *8; *10 (internal quotation

15

marks and citation omitted). However, after presiding over the trial and hearing all the evidence, the Court finds that the evidence does not establish that the Town had the requisite intent, primarily because it did not act or engage in conduct. Further, its failure to act is not a basis for imposing liability because it had no control over the jetties and thus no legal responsibility to act.

Clearly, under the three possible theories of intentional private nuisance, the Town did not (1) act for the purpose of interfering with the Plaintiffs' use and enjoyment of their property, (2) know that the interference would result or was substantially certain to result from the conduct, or (3) become aware that the conduct was causing substantial interference and nevertheless continue it. As to the second two prongs, while the Town may have been aware of what was happening to Plaintiffs' properties, it engaged in no conduct such that it would be aware that it had a responsibility to fix it.

2. Negligent Nuisance

Under New York private nuisance law, a plaintiff may show that the defendant's interference was either "(1) intentional and unreasonable" or "(2) negligent or reckless." Copart Indus., Inc., 41 N.Y.2d at 569, 362 N.E.2d at 972. As already discussed, interference is "intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is

16

substantially certain to result from his conduct." <u>Id.</u> at 571, 362 N.E.2d at 972–73 (internal quotation marks and citation omitted). On the other hand, "whenever a nuisance has its origin in negligence, negligence must be proven." <u>Id.</u> at 569, 362 N.E.2d at 972 (internal quotation marks and citations omitted). "A nuisance based on negligence is but a single wrong, whether characterized as negligence or nuisance." <u>Trulio v. Vill. of Ossining</u>, 153 A.D.3d 577, 579, 59 N.Y.S.3d 449, 452 (2d Dept. 2017).

The jury was instructed not to consider negligent nuisance if it found intentional nuisance. In considering the elements of negligent nuisance as an alternative theory of liability, the Court finds that the evidence did not establish negligent nuisance either.

"Duty is an essential element of negligence." <u>Sunlight Clinton Realty, LLC v. Gowanus Indus. Park, Inc.</u>, 165 A.D.3d 866, 867, 86 N.Y.S.3d 617, 619 (2d Dept. 2018). In <u>Sunlight</u>, the Appellate Division found that a neighboring defendant's conduct in allowing its bulkhead to fall into disrepair, which allegedly caused "the ebb and flow of the tides through the failed portions" to create sinkholes in the plaintiff's property, was not negligent nuisance. The court held that "the defendant had no duty to prevent the natural encroachment of public waters upon [the plaintiff's] property." <u>Id.</u> at 867, 86 N.Y.S. 3d at 620; <u>see also</u>

Chaikin v. Karipas, 162 A.D.3d 842, 843, 80 N.Y.S.3d 108, 110-11 (2d Dept. 2018) (where the defendant's property damaged the plaintiff's adjacent retaining wall, in addition to not alleging conduct, "the complaint [also] did not allege facts which, if proven, would establish that the defendants breached a duty of care to maintain their property, so as to set forth a cognizable cause of action alleging negligence."). In the context of an easement, "the imposition of a duty on an owner depends on whether--in light of the rights granted under the easement, as well as the activities undertaken pursuant to those rights--the dominant owner[, here, the federal government,] has sufficient control to warrant treatment as a landowner for tort purposes. This notion is consistent with New York decisions imposing liability on easement holders and with the general rule governing the imposition of a duty for premises liability." Sutera, 86 F. 3d at 305 (collecting New York state cases).

As discussed above, the Town had no control over the jetties and thus it had no duty to prevent the jetties from damaging or interfering with Plaintiffs' properties. The easement was granted to the federal government to "insure the permanent dedication [of the Harbor] to the uses and purposes of a public navigable waterway." (Correction Deed at ECF p. 2.) Thus, as the dominant owner, the federal government is required to exercise control to effectuate the purpose of the easement. The Town's

18

corresponding lack of control over the jetties eliminates any duty to address their impact on Plaintiffs' property.

### 3. Trespass

"Under New York law, trespass is the intentional invasion of another's property." Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996). "The invasion of, or intrusion upon, the property interest 'must at least be the immediate or inevitable consequence of what the defendant willfully does, or which he does so negligently.'" Behar v. Quaker Ridge Golf Club, Inc., 118 A.D.3d 833, 835, 988 N.Y.S.2d 633, 635 (2d Dept. 2014) (quoting Phillips v. Sun Oil Co., 307 N.Y. 328, 331, 121 N.E.2d 249, 251 (1954)); see also Chaikin, 162 A.D.3d at 843, 80 N.Y.S.3d at 111 ("the plaintiffs failed to allege an intentional entry onto the plaintiffs' property, as the complaint merely claimed that the defendants' property was causing the plaintiffs' wall to lean"). This Court has already explained that the Town did not act intentionally and willfully or negligently; for the same reasons, no reasonable fact-finder could have found it liable for the intrusion of water upon Plaintiffs' property.

## II. Rule 59 Motion[5]

---

[5] Under Federal Rule of Civil Procedure 50(c), the Court is required to address the Town's motion for a new trial despite its ruling that the Town is entitled to judgment as a matter of law. See FED. R. CIV. P. 50(c)(1).

In the alternative, the Town moves for a new trial pursuant to Rule 59. If this Court's decision to grant the Town's Rule 50 motion for judgment as a matter of law is later reversed or vacated on appeal, the Court would grant the motion for a new trial.

A.    Standard

A district court may grant a new trial under Federal Rule of Civil Procedure 59 when the "court is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Kogut v. Cty. of Nassau, Nos. 06-CV-6695, 06-CV-6720, 2013 WL 3820826, at *2 (E.D.N.Y. July 22, 2013) (quoting Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 190 F. Supp. 2d 430, 440 (E.D.N.Y. 2002)). On a Rule 59 motion, the district court is permitted to "weigh the evidence" and, unlike a motion under Rule 50, "need not view the evidence in the light most favorable to the verdict winner." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012) (citation omitted). Courts in this Circuit have characterized the Rule 59(a) standard as "'less stringent'" than the standard for granting judgment as a matter of law under Rule 50, because, among other reasons, the district court may grant a new trial "'even if there is substantial evidence supporting the jury's verdict.'" Tatum v. Jackson, 668 F. Supp. 2d 584, 598 (S.D.N.Y. 2009) (quoting Manley v. AmBase Corp., 337 F.3d 237, 244 (2d Cir. 2003)).

B.    Analysis

For the same reasons already discussed with respect to the Rule 50 motion, the Court finds that the verdict was against the weight of the evidence. The Town did not control the jetties, could not and did not engage in conduct, and lacked the requisite intent. See Burris v. Nassau Cty., 332 F. Supp. 3d 596, 610 (E.D.N.Y. 2018) ("If [the court] did not grant the Rule 50 motion, at the very least, [the court] would grant a new trial . . . because the jury's finding is against the weight of the evidence and a manifest injustice.") (citations omitted). In weighing the evidence, moreover, the Court is permitted to address an additional factor typically reserved to the fact-finder: whether the Town's behavior was reasonable. Whether the Town acted reasonably is an element of private nuisance. Copart Indus., Inc., 41 N.Y.2d at 570, 394 N.Y.S.2d at 173.

The jetties themselves, which Plaintiffs argue are the private nuisance, are reasonable. They are necessary to keep the inlet open for navigational purposes. The inlet is the only harbor of refuge for 50 miles. (See Trial Tr. 904.) The United States Coast Guard's operations could be jeopardized without the inlet. (Trial Tr. 514.) In addition to providing a safe navigational waterway, the inlet is a crucial component of the East End's fishing industries and economy.

Though it did not control the jetties, the Town did make many attempts to remedy the situation that were rejected by landowners. As early as 1975, residents lodged "strenuous objections" to the Army Corps placing dredge spoils "on the eastern side of the jetties." (Letter from Town Supervisor Judith Hope to Army Corps Chief Louis W. Pinata, Defs.' Trial Ex. V-1, D.E. 210-5.) Later residents expressed that they did not want the Army Corps to perform a project if it required them to allow public access to the beach. (see, e.g. Trial Tr. 220-22, 1746-47, 1758.) Proposals to truck sand from the east side to the west side were voted down by the Town Board after public comment. (see Trial Tr. 719-20.) The Court finds that because (1) the jetties were necessary and served a greater public good, (2) Plaintiffs bought their homes long after the jetties were built, and (3) the Town attempted to work with the Plaintiff landowners to address the erosion situation, the Town's actions were reasonable.[6]

---

[6] While the Court does not find the amount of compensatory damages themselves to be excessive, the Court finds they are excessive as to the Town. As the Court has already explained at length why the Town is not liable here, it follows that any damages against it are excessive. Any amount is too high for a non-responsible party. The Court found the Plaintiff homeowners to be credible witnesses and does not doubt that their submitted expenses were accurate. However, the Town should not be responsible for these expenses, and the Court would also order a new trial based on damages. See Frank Sloup and Crabs Unlimited, LLC v. Loeffler, 745 F. Supp. 2d 115, 136 (E.D.N.Y. 2010) (Rule 59 discretion to order a new trial "'includes overturning verdicts for excessiveness'" and "if the trial judge identifies a specific error, 'the court may set aside the

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's Rule 50 motion for judgment as a matter of law is GRANTED and the compensatory damages award is VACATED. Alternatively, the Court conditionally GRANTS Defendant's Rule 59 motion for a new trial.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March   15  , 2019
           Central Islip, New York

---

resulting award even if its amount does not shock the conscience'") (quoting <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 416, 433, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996); <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 165 (2d Cir. 1998).