UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
THOMAS CANGEMI and JODI
CANGEMI, MARIANN COLEMAN,
FRANCIS J. DEVITO and LYNN R.
DEVITO, LEON KIRCIK and ELIZABETH
KIRCIK, CAROL C. LANG and TERRY S.
BIENSTOCK, DANIEL LIVINGSTON and
VICTORIA LIVINGSTON, ROBIN
RACANELLI, JAMES E. RITTERHOFF
and  GALE H. RITTERHOFF, ELSIE V.
THOMPSON TRUST, JOHN TOMITZ, and
THELMA WEINBERG, TRUSTEE OF
THE THELMA WEINBERG REVOCABLE
LIVING TRUST,

**REPORT AND RECOMMENDATION**

12-CV-3989 (JS) (SIL)

                            Plaintiffs,
   -against-

THE TOWN OF EAST HAMPTON,

                            Defendant.
----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this Federal Tort Claims Act and property damages action, on referral from the Honorable Joanna Seybert for report and recommendation, is Plaintiffs' Thomas Cangemi, Jodi Cangemi, Mariann Coleman, Francis J. Devito, Lynn R. Devito, Leon Kircik, Elizabeth Kircik, Carol C. Lang, Terry S. Bienstock, Daniel Livingston, Victoria Livingston, Robin Racanelli, James E. Ritterhoff, Gale H. Ritterhoff, Elsie V. Thompson Trust, John Tomitz, and Thelma Weinberg, Trustee of the Thelma Weinberg Revocable Living Trust (collectively "Plaintiffs") motion to vacate and annul or otherwise reduce the Clerk of the Court's March 4, 2022 Taxation of Costs in the amount of $60,201.19 pursuant to Federal

1

Rule of Civil Procedure ("Fed. R. Civ. P.") 54(d)(1). *See* Plaintiffs' Motion to Set Aside Costs Taxed ("Pls.' Mot."), Docket Entry ("DE") [230]; Declaration in Support of Motion to Review and Vacate Clerk's Taxed Costs ("Pls.' Decl."), DE [230-1].

By way of Complaint dated June 14, 2012, followed by an Amended Complaint dated September 14, 2012, Plaintiffs commenced this action against the United States ("the Government"), the U.S. Army Corps of Engineers ("USACE"), Col. John R. Boule II ("Col. Boule"), individually and in his official capacity (the "Federal Defendants"), the Town of East Hampton, Williams J. Wilkinson ("Wilkinson"), individually and in his official capacity (the "Town Defendants"), County of Suffolk (the "County"), State of New York (the "State"), Joe Martens ("Martens"), Commissioner of the New York State Department of Environmental Conservation, and Cesar A. Perales ("Perales"), Secretary of the New York Department of State (the "State Defendants") under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), Administrative Procedure Act ("APA") 5 U.S.C. § 702, 42 U.S.C. § 1983 ("Section 1983") and state tort law for negligence, public and private nuisance, unjust enrichment, denial of due process, denial of equal protection, appropriation of resource, trespass, and federal and state takings to redress damage to Plaintiffs' real property that had been caused by the Lake Montauk Harbor Jetties (the "Jetties").[1] *See* Complaint ("Compl."), DE [1]; Amended Complaint ("AC"), DE [18]. On November 12, 2021, Defendant Town of East Hampton ("Defendant" or the "Town") sought costs taxed against Plaintiffs totaling $60,201.19 in its Bill of Costs after

---

[1] As explained below, the Town of East Hampton was the sole remaining Defendant in this action after dispositive motions were filed in this case.

judgment was entered for the Town and affirmed on appeal. *See* DEs [220], [224]; Defendant's Bill of Costs, DE [226]. The Clerk of the Court entered costs taxed against Plaintiffs for $60,201.19 on March 4, 2022. *See* March 4, 2022 Electronic Order. Plaintiffs then filed the instant motion to vacate and annul or reduce the costs taxed on March 28, 2022. *See* Pls.' Mot.; Plaintiffs' Reply in Support of Motion to Set Aside Costs Taxed ("Pls.' Reply"), DE [232]. The Town opposes. *See* Town of East Hampton's Declaration in Opposition to Plaintiffs' Motion to Vacate the Clerk's Bill of Costs ("Def. Opp."), DE [231]. For the reasons set forth below, the Court respectfully recommends denying Plaintiffs' motion in its entirety.

## I. BACKGROUND

### A. Relevant Facts

The following facts are taken from the Court's Orders on dispositive motions in this case and are undisputed except where otherwise noted.

Plaintiffs are property owners in Montauk, New York, which is located within the Town. *Cangemi v. United States*, 12-CV-3989(JS)(SIL), 2017 WL 1274060, at *1 (E.D.N.Y. Mar. 31, 2017), *aff'd*, 13 F.4th 115 (2d Cir. 2021). Private parties first constructed the Jetties in the area in the 1920s to prevent the natural replenishment of sand. *Cangemi v. United States*, 939 F. Supp. 2d 188, 194 (E.D.N.Y. 2013). The Jetties fell into disrepair, and in or about 1939, at the Town's request, the USACE recommended to Congress a repair and extension shoreward of the Jetties. *Id.* at 194. To effectuate the project, the Town obtained a conveyance of title to and over the Jetties and the land under Lake Montauk Harbor in 1941. *Id.* The Town

thereafter granted the USACE a permanent easement over the land and the Jetties, but the Town has always retained ownership and a reversionary interest. *Id.*

Congress approved the project to reconstruct the Jetties under the Rivers and Harbors Act of 1945, which gave the USACE exclusive authority over navigation and safety within the federal channel which runs between the Jetties. *Cangemi v. United States*, 2017 WL 1274060, at *1. The USACE, with the assistance and cooperation of the Town, then redesigned, enlarged and reconstructed the Jetties, lengthening them from 700 feet on the west and 750 on the east to 981 feet and 1100 feet respectively. *Cangemi*, 939 F. Supp. 2d at 194. Congress also directed the USACE to perform periodic dredging to maintain a navigational channel for Lake Montauk Harbor. *Id.* The existing federal project at Lake Montauk Harbor provides for a channel 12 feet deep and 150 feet wide, along with other specifications. *Id.*

Plaintiffs contend that the Jetties have caused accelerated erosion, which has damaged their waterfront properties. *Id.* The Jetties, they allege, prevent the natural replenishment of sand onto their property and leave the properties vulnerable to further loss. *Id.* According to Plaintiffs, they have lost a substantial amount of the upland portions of their properties and suffered millions of dollars in damages, loss and injury. *Id.* Despite these conditions, Plaintiffs allege that the Town has been aware of the state of affairs but refuses to remedy it. *Id.* at 194-95.

### B. Procedural History

Based on the above, Plaintiffs commenced this action by way of Complaint dated June 14, 2012, followed by an Amended Complaint dated September 14, 2012,

against the Government, the USACE, Col. Boule, the Town, Wilkinson, the County, the State, Martens and Perales under the FTCA, APA, Section 1983 and state law for negligence, public and private nuisance, unjust enrichment, denial of due process, denial of equal protection, appropriation of resources, trespass, and federal and state takings.  *See* Compl.; AC.  The Town Defendants and the State Defendants filed motions to dismiss the Amended Complaint on August 27 and November 28, 2012 respectively.  *See* DEs [13], [32].[2]  The Court granted the State Defendants' motion dismissing them as parties to the action, and granted in part and denied in part the Town Defendants' motion, dismissing all claims against Wilkinson as well as the federal causes of action, state takings, negligence, unjust enrichment, and appropriation of resource claims against the Town.  *See Cangemi*, 939 F. Supp. 2d at 207-08.  As a result, the public and private nuisance and trespass claims against the Town remained.  *See id*.

The Federal Defendants moved to dismiss the Amended Complaint on March 6, 2015.  *See* DE [71].  The Court granted in part and denied in part the motion, dismissing all claims against the Federal Defendants, except the FTCA claims against the Government, which were permitted to proceed.  *Cangemi v. United States*, 12-CV-3989(JS)(SIL), 2016 WL 915173, at *10 (E.D.N.Y. Mar. 7, 2016), *on reconsideration,* 12-CV-3989(JS)(SIL), 2017 WL 1274060 (E.D.N.Y. Mar. 31, 2017), *aff'd*, 13 F.4th 115 (2d Cir. 2021).

---

[2] Plaintiffs and the Town Defendants agreed that the motion to dismiss at DE [13] applied to the Amended Complaint, although technically filed before Plaintiffs amended.  *See* DEs [19]-[21].

5

After discovery concluded, Town and the Government moved for summary judgment on the remaining claims, and Plaintiffs moved for partial summary judgment on the issue of causation, *i.e.*, whether the Jetties caused accelerated erosion.  *See* DEs [107], [111], [114].  Judge Seybert granted the Government's motion and denied the Town's and Plaintiffs' motions.  *See Cangemi*, 2017 WL 1274060, at *12.  As a result, the Government was dismissed as a party to the case, and Plaintiffs' claims of public and private nuisance and trespass against the Town proceeded to trial.  *See id*.

The Court held a jury trial beginning on June 4 through June 29, 2018 where eighteen witnesses testified.  *See* Def. Opp. at 7.  The jury found for the Plaintiffs on private nuisance and trespass and for the Town on public nuisance and awarded $355,961.27 in compensatory damages to Plaintiffs.  *See* DE [200].  The Town filed a motion for judgment as a matter of law or new trial on July 30, 2018, which Plaintiffs opposed.  *See* DEs [207]-[217].  The Court granted the Town's motion concluding that the verdict was against the weight of the evidence on which the jury found liability and vacated the award of compensatory damages.  *See* DE [219].  Ultimately, Judge Seybert concluded that the evidence did not establish the causation and intent elements of private nuisance and trespass because of the Town's lack of control over the Jetties.  *See generally* DE [219].  The Clerk of the Court then entered judgment for Defendant and vacated the award of compensatory damages.  *See* DE [220].  Plaintiffs appealed, and the Second Circuit affirmed.  *See* DE [224].

On November 12, 2021, the Town filed its Bill of Costs pursuant to 28 U.S.C. §§ 1920 and 1923, Fed. R. Civ. P. 54(d) and Local Civil Rule 54.1 seeking costs taxed against Plaintiffs totaling $60,201.19 and attached a declaration in support and corresponding invoices broken down by date, amount and description of each charge. *See* Bill of Costs, Exs. H-L.  The costs included: (i) $33,546.24 for the expedited trial transcript; (ii) $22,894.11 for General Municipal Law § 50-h ("50-h") hearing and deposition transcripts; (iii) $130.84 for testifying witness fees; (iv) $2,750 for title searches of Plaintiffs' properties; (v) $330 in docketing and process server fees; and (vi) $550 for costs from the appeal.  *See* Bill of Costs at 4-9.  Defendant claims that the trial transcript was expedited for use during the four-week trial to synthesize testimony which was sometimes piecemeal; for instance, Plaintiff Francis Devito gave direct testimony on June 7, but the Town did not cross-examine him until June 13, 2018, and another witness, Brian Frank, testified on June 20, and again on June 25, 2018.  *See* Def. Opp. at 5-7.  Moreover, Defendant contends the transcript was used by both sides in identifying exhibits and to provide information during jury deliberations as well as during post-trial briefing.  *See id.*  The Town further claims that the 50-h hearing and deposition transcripts were used in preparation for trial, during cross-examinations, and read from during trial for unavailable witnesses.  *Id.*

Plaintiffs objected to the Bill of Costs on November 26, 2021.  *See* DE [227].  The Clerk of the Court entered costs taxed totaling $60,201.19 against Plaintiffs on March 4, 2022.  *See* March 4, 2022 Electronic Order.  Plaintiffs filed the instant motion to vacate and annul or otherwise reduce the Clerk's taxation of costs on March

7

28, 2022. *See* Pls.' Mot. They argue that costs should not be awarded because this was a close, complex and protracted litigation that they brought in good faith, prevailing at all stages including securing a jury verdict, and that the Town won on a largely technical defense. Pls.' Decl. 4-7. Plaintiffs contend that the trial transcript costs are excessive and were a mere convenience for counsel rather than necessarily obtained. *See id.* at 7-10. Finally, they argue that the remaining costs for 50-h hearing and deposition transcripts, title searches, and process server fees should be denied or reduced as excessive and unnecessary. *See id.* at 10-11. The Town opposes the motion. *See* Def. Opp. Judge Seybert referred the motion to this Court for report and recommendation on October 31, 2022. *See* October 31, 2022 Electronic Order. For the reasons set forth below, the Court respectfully recommends denying Plaintiffs' Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54 provides that a prevailing party in an action is generally entitled to recover certain costs, unless "a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). Under 28 U.S.C. § 1920 and Local Civil Rule 54.1, a party must file a bill of costs for expenses that are taxable, which include "printed or electronically recorded transcripts necessarily obtained for use in the case" and "disbursements for printing." 28 U.S.C. § 1920. Moreover, Local Civil Rule 54.1 provides for taxation of costs for "the expenses of searches made by title insurance, abstract or searching companies." Local Civil Rule 54.1(c)(9); *see Close-Up Int'l, Inc. v. Berov*, No. CIVA 02CV-2363 DGT, 2007 WL 4053682, at *11 (E.D.N.Y.

Nov. 13, 2007) ("As plaintiffs note, costs for title searches are specifically permitted under Local Rule 54.1(c)(9)."). Courts also generally allow a prevailing party to "recover the costs of deposition transcripts not used at the trial where they 'appear to have been reasonably necessary to the litigation at the time they were taken.'" *Bauta v. Greyhound Lines, Inc.*, 14-CV-3725 (RER), 2019 WL 8060181, at *4 (E.D.N.Y. June 17, 2019) (quoting *Marchesi*, 285 F.R.D. at 235).

Further, costs for daily expedited trial transcripts are awarded when necessary for use at trial, rather than when "merely a convenience for counsel." *See Williams v. Colatosi*, 2001 WL 913922, at *3 (S.D.N.Y. Aug. 13, 2001); *cf. Bucalo v. E. Hampton Union Free Sch. Dist.*, 238 F.R.D. 126, 129 (E.D.N.Y. 2006) (denying costs for trial transcripts where such an award would be inequitable due to financial hardship to the plaintiff). "[C]osts for daily transcripts generally are awarded in long and complicated cases," however, as they are "necessarily obtained." *Bauta*, 2019 WL 8060181, at *4 (awarding daily trial transcript costs for five-week trial with more than thirty different witnesses) (citing *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 285 F.R.D. 225, 234 (E.D.N.Y. 2012) (awarding the cost of daily transcripts for a four-week trial with sixteen witnesses)); *Perks v. Town of Huntington*, No. 99-CV-4811 JS, 2008 WL 8091034, at *4 (E.D.N.Y. Mar. 31, 2008), *aff'd,* 331 F. App'x 769 (2d Cir. 2009) (awarding daily transcript costs for a four-week trial where plaintiff's credibility was at issue and the presentation by plaintiff's attorneys was confusing and muddled). The party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine*

9

*Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)).

"A court need not award costs to the prevailing party if it finds that such an award would be inequitable." *Wisniewski v. Claflin*, CV 05-4956 (JS)(ETB), 2008 WL 11412045, at *1 (E.D.N.Y. Dec. 10, 2008) (citation and quotation omitted). In determining equitability, the court may consider factors such as "plaintiff's indigence or financial hardship and plaintiff's good faith in bringing the action." *Thompson v. Clark*, 357 F. Supp. 3d 224, 226 (E.D.N.Y. 2019) (citing cases). Moreover, where the litigation was "close, difficult, and protracted" there are valid reasons to deny a defendant's costs. *Id.* (citations omitted); *see in re Ciprofloxin Hydrochloride Antitrust Litig.*, 00-MDL-1383 FB, 2012 WL 293560, at *3 (E.D.N.Y. Jan. 31, 2012) (citing cases); *AXA Versicherung AG v. New Hampshire Ins. Co.*, 769 F. Supp. 2d 623, 626 (S.D.N.Y. 2011) (concluding it would be inequitable to award costs to the defendant when a jury found for the plaintiff in a fraud case but the defendant prevailed on a statute of limitations defense on appeal). Nevertheless, the district court "'retains broad discretion on whether to tax costs against a losing party.'" *Wisniewski*, 2008 WL 11412045, at *1 (quoting *Culp v. Zaccagnino*, No. 96 Civ. 3280, 2000 WL 35861, at *1 (S.D.N.Y. Jan. 18, 2000) (citing cases)).

### III. DISCUSSION

Defendant sought costs taxed against Plaintiffs totaling $60,201.19 and attached a declaration in support and corresponding invoices broken down by date,

10

amount and description of each charge. *See* Bill of Costs, Exs. H-L. The costs include: (i) $33,546.24 for the trial transcript; (ii) $22,894.11 for 50-h hearing and deposition transcripts; (iii) $130.84 in testifying witness fees; (iv) $2,750 for title searches of Plaintiffs' properties; (v) $330 in docketing and process server fees; and (vi) $550 in costs from the Second Circuit appeal. *See* Bill of Costs at 4-9.

Applying the standards outlined above, the Court concludes that Defendant met its burden of adequately documenting and itemizing the costs requested, which were appropriately sought under Section 1920 and Local Civil Rule 54.1, and, therefore, recommends declining to exercise its discretion to vacate or otherwise reduce the costs. This was a complex and protracted litigation, but the Town ultimately prevailed entitling it to costs taxed against Plaintiffs. Defendant submitted a Bill of Costs, declaration in support, and invoices for each cost sought broken down by date, amount and description of each charge. While Plaintiffs brought the action in good faith, other factors that weigh against equitability in imposing costs, such as financial hardship to the losing party, do not apply here.

As to the trial transcript, while the cost for an expedited transcript is high, it was necessarily obtained for use at trial and for post-trial briefing. This was a complex, four-week trial with eighteen witnesses whose testimony often spanned multiple days or was conducted piecemeal. *See* Def. Opp. at 5-7. Further, the parties consulted the transcript during the trial in identifying exhibits and to provide information during jury deliberations as well as used during post-trial briefing. *See*

11

*id.* Accordingly, the Court concludes that the trial transcript cost totaling $33,546.24 was necessarily obtained and should be taxed.

As to the 50-h hearing and deposition transcripts, the Court concludes again, that these costs should be awarded. Even if all transcripts may not have been used at trial or certain witnesses did not testify at trial as Plaintiffs contend, *see* Pls.' Decl. at 10-11, the testimony was reasonably necessary to the litigation at the time it was taken. Taking testimony in a 50-h hearing or deposition can establish who is a relevant witness for trial, and, often equally as important, who is not. In addition, the Town claims that these transcripts were used at length to prepare for trial, during cross-examinations, and read from during trial for unavailable witnesses. *See* Def. Opp. at 7. Accordingly, obtaining the 50-h hearing and deposition transcripts totaling $22,894.11 was reasonably necessary and should be taxed against Plaintiffs.

Finally, the Court concludes that the costs of the title searches are permitted under Local Rule 54.1 and reasonably related to Plaintiffs' claims in this action. Plaintiffs owned the properties at issue and alleged that the Town created a nuisance and trespassed on their properties because erosion diminished their beach, so it was reasonable for the Town to ascertain the ownership of the properties and chain of title. *See* Def. Opp. at 8. Moreover, the witness expenses, docketing expenses and process server fees, which were $130.84, $20 and $310 respectively, are all recoverable under Local Rule 54.1(c), and the Town met its burden of adequately documenting and itemizing the costs requested. Last, the Second Circuit authorized costs taxed in the amount of $550 for the appeal, which Defendant also met its burden

in adequately documenting, and which Plaintiffs do not contend should be reduced. Accordingly, the Court concludes that the Clerk's entry of costs taxed totaling $60,201.19 against Plaintiffs was proper and recommends denying Plaintiffs' motion in its entirety.

### IV.  CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiffs' motion to vacate and annul or reduce the costs taxed be denied in its entirety.

### V.  OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. 22 Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
December 12, 2022

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge